1
BROWNE GEORGE ROSS LLP
Eric M. George (State Bar No. 166403)
2
  egeorge@bgrfirm.com
Noah S. Helpern (State Bar No. 254023)
3
  nhelpern@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
4
Los Angeles, California 90067
Telephone: (310) 274-7100
5
Facsimile: (310) 275-5697

6
Attorneys for Defendants Lisa Bloom and
The Bloom Firm
7

8

9                    UNITED STATES DISTRICT COURT

10     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12 | ROSE MCGOWAN,                    | Case No. 2:19-cv-9105

13 |              Plaintiff,          | The Hon. Otis D. Wright, II

14 |      vs.                         | **DEFENDANTS LISA BLOOM AND THE BLOOM FIRM'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT [Fed. R. Civ. P. 12(b)(6)]; MEMORANDUM OF POINTS AND AUTHORITIES**

15 | HARVEY WEINSTEIN, DAVID
16 | BOIES, BOIES SCHILLER FLEXNER LLP, LISA BLOOM, THE BLOOM FIRM, B.C. STRATEGIES LTD.
17 | D/B/A BLACK CUBE,

18 |              Defendants.         | *[Request for Judicial Notice and [Proposed] Order Submitted Concurrently Herewith]*

19

20 |                                  | Date:    May 11, 2020
   |                                  | Time:    1:30 p.m.
21 |                                  | Courtroom: 5D

22 |                                  | Complaint Filed: Oct. 23, 2019
   |                                  | Trial Date:  None Set
23

24

25

26

27

28

## NOTICE OF MOTION TO DISMISS COMPLAINT

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 11, 2020, at 1:30 p.m., or as soon thereafter as may be heard in Courtroom 5D of the above-entitled Court, located at 350 West 1st Street, Los Angeles, CA 90012, Defendants Lisa Bloom and The Bloom Firm (the "Bloom Defendants") will and hereby do move for an Order dismissing Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that each purported claim for relief stated therein fails to state a claim upon which relief can be granted.

This Motion is based on the following grounds, which are discussed more fully in the concurrently-filed Memorandum of Points and Authorities:

1.  Plaintiff has not stated claims under the federal RICO laws because Plaintiff has not alleged two predicate acts as to the Bloom Defendants; Plaintiff cannot show a pattern of racketeering activity; Plaintiff fails to sufficiently allege the existence of an enterprise or the Bloom Defendants' role within the alleged enterprise; and Plaintiff has not alleged fraud with the required specificity under Rule 9.

2.  Plaintiff lacks standing to sue under the federal RICO laws.

3.  Plaintiff has failed to state a claim under the Federal Wiretap Act.

4.  Plaintiff has failed to state a claim under any of her state-law theories against the Bloom Defendants, whether pleaded under theories of vicarious or primary liability.

The Motion is made following a conference between counsel for Plaintiff and counsel for the Bloom Defendants pursuant to Local Rule 7-3 begun on December 3, 2019 and continued thereafter.

The Motion is based on this Notice of Motion and Motion, the pleadings on file in this matter, the Memorandum of Points and Authorities filed concurrently

1  herewith, the Request for Judicial Notice filed concurrently herewith, and any

2  further argument the Court might allow.

3

4  DATED:  January 31, 2020          BROWNE GEORGE ROSS LLP
                                     Eric M. George
5                                    Noah S. Helpern

6

7

8                                    By:   _/s/ Eric M. George_
                                           Eric M. George
9                                    Attorneys for Defendants
                                     Lisa Bloom and The Bloom Firm
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

PRELIMINARY STATEMENT ................................................................................1

RELEVANT FACTS AS ALLEGED IN COMPLAINT .........................................2

    A.    Prefatory Statement ...................................................................................2

    B.    Plaintiff Publishes A Book Discussing Her Alleged Rape By Weinstein...............................................................................................3

    C.    Weinstein Attempts To Avoid Publication Of *Brave* And Minimize Negative Publicity And Legal Exposure ...............................3

    D.    Weinstein Engages Lisa Bloom And Her Law Firm .............................4

    E.    Black Cube Allegedly Engages In Work On Weinstein's Behalf .........5

    F.    Plaintiff Releases Her Book But Cancels Her Book Tour.....................6

ARGUMENT .............................................................................................................6

    A.    Legal Standard .........................................................................................6

    B.    Plaintiff Fails To Plead A Cognizable Civil RICO Claim....................7

        1.    Plaintiff Has Not Pleaded A Pattern Of Racketeering Activity ..........................................................................................8

        2.    Plaintiff Lacks Standing To Assert Purported RICO Claims Based On The Alleged Injury..........................................9

        3.    Plaintiff Has Not Pleaded Wire Fraud With Particularity .........12

        4.    The Complaint Lacks Sufficient Allegations Regarding The Existence Of An Enterprise and Bloom's Supposed Involvement .................................................................................13

        5.    Plaintiff's RICO Conspiracy Claim (Count II) Fails.................15

    C.    Plaintiff Has Failed To Sufficiently Plead A Claim Under The Federal Wiretap Act .............................................................................16

    D.    None Of The State Law Claims Has Merit ...........................................17

        1.    The State Law Claims Based On A Vicarious Liability Theory Must Be Dismissed ........................................................18

        2.    Plaintiff Has Failed To State A Claim Against Bloom For Fraud (Counts IV and V) ............................................................19

# TABLE OF CONTENTS
## (Continued)

Page

3. Plaintiff Has Failed To State A Claim For Violations Of The Bane Act (Count VI) ........................................................... 20

4. Plaintiff Has Failed To Allege A Claim Against Bloom For Invasion Of Privacy (Count VII) ........................................ 21

5. Plaintiff Has Failed To State A Claim Against Bloom For Computer Crimes (Count VIII) .................................... 21

6. Plaintiff Has Failed To State A Claim Against Bloom For Conversion (Count IX) .......................................... 22

7. Plaintiff Has Failed To State A Claim Against Bloom For Intentional Infliction Of Emotional Distress (Count X) ............. 23

8. Plaintiff Has Failed To State A Claim Against Bloom For Negligent Hiring And Supervision (Count XI) ......................... 24

CONCLUSION ................................................................................ 25

BLOOM'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................... 6, 7

*Baumer v. Pachl*,
   8 F.3d 1341 (9th Cir. 1993) ............................................................... 15

*Cabesuela v. Browning-Ferris Indus. of Cal., Inc.*,
   68 Cal. App. 4th 101 (1998) .............................................................. 21

*Camarillo v. City of Maywood*,
   No. CV 07-3469 ODW, 2008 WL 4056994 (C.D. Cal. Aug. 27,
   2008) (Wright, J.) ....................................................................... 11, 12

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988) ......................................................................... 18

*Chaudhry v. City of Los Angeles*,
   751 F.3d 1096 (9th Cir. 2014) ........................................................... 20

*Craigslist, Inc. v. Mesiab*,
   No. C 08-05064 CW (MEJ), 2009 WL 10710286 (N.D. Cal. Sept.
   14, 2009) .......................................................................................... 22

*Crest Constr. II, Inc. v. Doe*,
   660 F.3d 346 (8th Cir. 2011) ............................................................. 14

*Diaz v. Gates*,
   420 F.3d 897 (9th Cir. 2005) ............................................................. 12

*Doe v. Federal Democratic Republic of Ethiopia*,
   189 F.Supp.3d 6 (D.D.C. 2016), *aff'd*, 851 F.3d 7 (D.C. Cir. 2017) ................ 17

*Dorris v. Absher*,
   179 F.3d 420 (6th Cir. 1999) ............................................................. 16

*Eaves v. Designs for Fin., Inc.*,
   785 F. Supp. 2d 229 (S.D.N.Y. 2011) ............................................... 15

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Eclectic Prop. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) .............................................................................. 14

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2004) ............................................................................ 7

*Encarnacao v. Phase Forward Inc.*,
    No. CV 11-05090 ODW (PLA), 2012 WL 404971 (C.D. Cal. Feb.
    7, 2012) ................................................................................................................ 11

*Giron v. Hong Kong & Shanghai Bank Co.*,
    No. 2:15-cv-08869-ODW-JC, 2016 WL 6662726 (C.D. Cal. June
    29, 2016) .............................................................................................................. 13

*Grimmett v. Brown*,
    75 F.3d 506 (9th Cir. 1996) ................................................................................ 8

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y 2009) ............................................................... 9

*GSI Tech. v. United Memories, Inc.*,
    No. 5:13-cv-01081-PSG, 2014 WL 1572358 (N.D. Cal. Apr. 18,
    2014) .................................................................................................................... 9

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) ........................................................................................... 8

*Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*,
    955 F. Supp. 248 (S.D.N.Y. 1997) .................................................................... 15

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) ............................................................................................... 10

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994) ............................................................................................. 21

*Hill v. Opus Corp.*,
    841 F. Supp. 2d 1070 (C.D. Cal. 2011) ............................................................. 13

*Howard v. Am. Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) .................................................................... 8, 9, 16

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Jarvis v. Regan*,
   833 F.2d 149 (9th Cir. 1987) .................................................................. 8

*Kaldis v. Wells Fargo Bank, N.A.*,
   263 F. Supp. 3d 856 (C.D. Cal. 2017)................................................... 25

*Lazar v. Super. Ct.*,
   12 Cal. 4th 631 (1996) ......................................................................... 19

*Maheu v. CBS, Inc.*,
   201 Cal. App. 3d 662 (1988) ............................................................... 22

*Mattel, Inc. v. MGA Entm't, Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011) ................................................. 15

*Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*,
   833 F.2d 1360 (9th Cir. 1987) ............................................................... 9

*Milligan v. County of Orange*,
   No. SACV 10-1874 JVS (RNBx), 2011 WL 13225139 (C.D. Cal.
   Mar. 14, 2011) ...................................................................................... 21

*Nally v. Grace Cmty. Church*,
   47 Cal. 3d 278 (1988) .......................................................................... 23

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*,
   790 F. Supp. 2d 1134 (C.D. Cal. 2011) ............................................... 12

*Perez v. DirecTV Grp. Holdings, LLC*,
   No. 16-cv-1440, 2019 WL 6362471 (C.D. Cal. July 23, 2019) ............ 8

*Phillips v. TLC Plumbing, Inc.*,
   172 Cal. App. 4th 1133 (2009) ............................................................ 24

*Prime Partners IPA of Temecula, Inc. v. Chaudhuri*,
   No. 5:11-cv-01860-ODW, 2012 WL 1669726 (C.D. Cal. May 14,
   2012) ........................................................................................ 10, 11, 14

*Religious Tech. Ctr. v. Wollersheim*,
   971 F.2d 364 (9th Cir. 1992) ................................................................. 9

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ................................................................ 15

*Reynolds v. Spears*,
   93 F.3d 428 (8th Cir. 1996) ................................................... 16

*Rice v. U.S. Bank Nat'l Ass'n*,
   No. CV 11-6214-GW, 2012 WL 10423291 (C.D. Cal. Jan. 23,
   2012) ........................................................................................ 7

*Richards v. Cty. of Los Angeles*,
   No. CV 17-400 BRO, 2017 WL 7411159 (C.D. Cal. Mar. 31, 2017) ................ 8

*Rood v. County of Santa Clara*,
   113 Cal. App. 4th 549 (2003) ...................................... 18, 19

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ................................................ 12

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*,
   806 F.2d 1393 (9th Cir. 1986) ........................................ 7, 13

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) ............................................................. 10

*Stewart v. Wachowski*,
   No. CV 03-2873-MMM-(VBKx), 2005 WL 6184235 (C.D. Cal.
   June 14, 2005) ....................................................................... 16

*Sullivan v. Oracle Corp.*,
   51 Cal. 4th 1191 (2011) ....................................................... 22

*Sunbelt Rentals, Inc. v. Victor*,
   43 F. Supp. 3d 1026 (N.D. Cal. 2014) ................................. 22

*Sussman v. Am. Broad. Co., Inc.*,
   971 F. Supp. 432 (C.D. Cal. 1997), *aff'd*, 186 F.3d 1200 (9th Cir.
   1999) ...................................................................................... 17

*Tatung Co. v. Shu Tze Hsu*,
   217 F. Supp. 3d 1138 (C.D. Cal. 2016) ............................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*In re Toyota Motor Corp.*,
    785 F. Supp. 2d 883 (C.D. Cal. 2011)....................................................7

*In re Toys R Us, Inc., Privacy Litig.*,
    No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001)......................17

*Turner v. Cook*,
    362 F.3d 1219 (9th Cir. 2004) ...............................................................9

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*,
    931 F.3d 966 (9th Cir. 2019) ................................................................20

*United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.*,
    837 F.2d 356 (9th Cir. 1988) ................................................................9

*United Food & Commercial Workers Unions & Emp'rs Midwest
    Health Benefits Fund v. Walgreen Co.*,
    719 F.3d 849 (7th Cir. 2013) ...............................................................14

*Vega v. Ocwen Fin. Corp.*,
    No. 2:14-cv-04408-ODW, 2015 WL 1383241 (C.D. Cal. Mar. 24,
    2015) ........................................................................................10

*Voris v. Lampert*,
    7 Cal. 5th 1141 (2019) .......................................................................23

*Wassmann v. S. Orange Cty. Cmty. Coll. Dist.*,
    24 Cal. App. 5th 825 (2018).................................................................24

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011)....................................................8

*Western Sugar Co-op. v. Archer-Daniels-Midland Co.*,
    No. CV 11-3473CBM (MANx), 2012 WL 3101659 (C.D. Cal. July
    31, 2012)....................................................................................18

*Yau v. Santa Margarita Ford, Inc.*,
    229 Cal. App. 4th 144 (2014) ..............................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**
### (Continued)

**Page**

**Statutes**

18 U.S.C. Chapter 96 (RICO)................1, 2, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18

18 U.S.C. § 1962(c)(d) ...................................................................7, 12, 16

18 U.S.C. § 2511(2)(d) ..........................................................................17

18 U.S.C. § 2520(e) ..............................................................................17

Cal. Civ. Code § 52.1(Tom Bane Civil Rights Act).....................................20, 21

Cal. Civ. Code § 2295 ...........................................................................18

Cal. Penal Code §502 ...........................................................................22

Federal Wiretap Act........................................................................16, 17, 18

**Other Authorities**

Fed. R. Civ. Proc. 9(b) .................................................................2, 7, 12, 18, 22

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

This action is a prime example of misuse of civil RICO by an overreaching plaintiff who seeks to gain leverage by invoking the extraordinary remedy Congress enacted to combat organized crime.  Federal courts firmly reject the use of RICO in this way and require plaintiffs to plead and prove facts that adhere strictly to RICO's precise elements or face dismissal.  The instant case shows exactly how civil RICO can be abused.  The Complaint shoehorns myriad unrelated and unsupported claims against numerous individuals together under the umbrella of civil RICO.  Plaintiff's attempt to fit dozens of square pegs into a single round hole fails, and the Complaint should be dismissed with prejudice.

Plaintiff Rose McGowan, an activist and actress, alleges she was raped by Hollywood executive Harvey Weinstein in 1997.  Those allegations are not at issue in this case.  Rather, the Complaint alleges that, twenty years later, Weinstein directed attorneys and investigators to try to prevent mention of Weinstein in a book by McGowan and minimize the potential impact to him of any such mention.  Even taking the Complaint's allegations at face value, defendants Lisa Bloom and The Bloom Firm (collectively, "Bloom") played a peripheral role that did not include hiring or contracting with Weinstein's investigators on whose conduct the Complaint focuses.  The Complaint therefore falls far short of stating any cognizable claim for relief against Bloom.

Instead, the Complaint lumps Weinstein together with over a dozen people and entities allegedly associated with him (including Bloom) into a supposed racketeering enterprise Plaintiff dubs the "Weinstein-Protection Enterprise." Plaintiff makes sweeping, vague, and conclusory allegations that members of the supposed enterprise committed wire fraud to protect Weinstein.  Plaintiff's "shotgun" pleading approach makes it impossible to discern what allegations relate to which defendants, which claims are asserted based on primary versus secondary

1  liability theories, and what supposed misconduct is purportedly actionable.

2  Plaintiff's allegations do not meet basic pleading standards, let alone the heightened

3  standards that apply to fraud claims.

4       As detailed below, Plaintiff's RICO claims should be dismissed for the

5  following reasons:

6  •     The Complaint fails to properly allege a RICO enterprise or pattern.

7  •     As to Bloom in particular, the Complaint fails to identify two predicate acts, a

8        basic requirement for any RICO claim.

9  •     Plaintiff lacks standing to bring this claim because she does not allege

10       causation or damages under the RICO statute.  Indeed, to the extent Plaintiff

11       alleges an injury to her professional reputation, that occurred as a result of her

12       choice to cancel her book tour based on a suspicion that Weinstein had placed

13       hecklers at her events, not on any of the supposed RICO predicates.

14 •     Plaintiff fails to allege the wire fraud predicate acts with the specificity

15       required by Rule 9(b).

16 •     The Complaint does not allege that Bloom occupied the operational and

17       management role required of each RICO defendant.

18       Plaintiff also fails to sufficiently plead her federal wiretap claim, which is

19 improperly based on a vicarious liability theory and fails to allege any underlying

20 criminal or tortious conduct.

21       Finally, each state law claim should be dismissed by the Court for lack of

22 merit.

23            **RELEVANT FACTS AS ALLEGED IN COMPLAINT**

24       **A.     Prefatory Statement**

25       Bloom briefly represented Weinstein as his attorney, beginning in December

26 2016.  She believed at the time that he was innocent of any illegal conduct and that

27 the only credible allegations against him were for improper language, for which he

28 was willing to apologize and refrain from using in the future.  At that time, no

woman had publicly accused him of sexual assault.  In early October 2017, Bloom learned that several women (none of whom was Plaintiff) had spoken with reporter Ronan Farrow and accused Weinstein of sexual assault.  Bloom immediately and publicly resigned and expressed regret for ever having been associated with Weinstein.  Now faced with this lawsuit, Bloom has no choice but to defend herself.

Bloom flatly denies nearly all of the allegations and insinuations in the Complaint relating to her.  Plaintiff has a history of public misstatements—she and her attorneys are currently defendants in a defamation lawsuit based on claims repeated in the Complaint (*see* Request for Judicial Notice filed concurrently herewith ("RFJN"), Ex. 1), and Plaintiff has previously had to retract false statements about Bloom.  However, solely for the purpose of this Motion and only to the extent mandated by the Federal Rules of Civil Procedure, Plaintiff's baseless allegations are accepted at face value (subject to applicable pleading standards).

### B.   Plaintiff Publishes A Book Discussing Her Alleged Rape By Weinstein

Plaintiff alleges that Weinstein raped her in 1997.  (Compl., ¶¶ 4, 17.) Plaintiff and Weinstein reached a settlement with respect to those allegations.  (*Id*., ¶¶ 4, 19.)  In 2016, nearly two decades after the alleged rape, Plaintiff began work on a book about her life called *Brave*, which included her experience with Weinstein.  (*Id*., ¶ 6.)  Plaintiff publicly announced she was writing this book in June 2016.  (*Id*., ¶ 31.)  *Brave* was published in January 2018.  (*Id*., ¶ 6.)

### C.   Weinstein Attempts To Avoid Publication Of *Brave* And Minimize Negative Publicity And Legal Exposure

When Weinstein learned of the impending publication of Plaintiff's book, he sought to avoid mention of him in the book and to minimize the negative impact to him.  (*Id*., ¶ 7.)  Weinstein was concerned that his misconduct would be revealed and that women other than Plaintiff might "potentially report his sexual assault." (*Id*.)  As a result, Weinstein hired several professionals to assist him with

1  minimizing potential damage.  (*Id*., ¶ 8.)

2      In October 2016, Weinstein engaged defendants David Boies and his law

3  firm, Boies Schiller Flexner LLP (collectively, "Boies"), with respect to Weinstein's

4  potential exposure from Plaintiff's expected disclosures.  (*Id*., ¶ 34.)  Boies has

5  worked with Weinstein in various capacities since 2001.  (*Id*., ¶¶ 23-26.)

6      Also in October 2016, Boies, on Weinstein's behalf, allegedly engaged

7  defendant Black Cube, an intelligence firm that conducts investigations on behalf of

8  its clients.  (*Id*., ¶¶ 36-37.)  Black Cube's "agreements with clients stated that

9  attorneys vetted its tactics and that it would conduct itself lawfully."  (*Id*., ¶ 37.)

10  Boies allegedly made an initial payment to Black Cube on October 28, 2016, and

11  Black Cube's work on Weinstein's behalf started "within days."  (*Id*., ¶ 40-41.)  A

12  second contract between Black Cube and Boies (again, on Weinstein's behalf) was

13  allegedly entered into in July 2017.  (*Id*., ¶ 99.)  Boies allegedly made additional

14  payments on Weinstein's behalf to Black Cube in May and June of 2017.  (*Id*., ¶¶

15  90, 92.)

16      **D.    Weinstein Engages Lisa Bloom And Her Law Firm**

17      In December 2016, well after Boies and Black Cube were already defending

18  Weinstein against Plaintiff's allegations, Weinstein engaged Bloom, "a well-known

19  civil-rights attorney and a self-proclaimed women's advocate."  (*Id*., ¶ 48.)  Bloom

20  was not engaged until after Black Cube had begun working on Weinstein's behalf.

21  (*Id*.)  Bloom's engagement was facilitated by Boies.  (*Id*., ¶ 53.)

22      Also in December 2016, Bloom allegedly emailed a letter to Weinstein

23  describing the services that she might provide on his behalf if engaged by him.  (*Id*.,

24  ¶ 51.)  Bloom proposed taking steps to bolster Weinstein's reputation and minimize

25  the impact of Plaintiff's disclosures as part of Bloom's representation of Weinstein.

26  (*Id*.)  Plaintiff, while not disputing that Bloom is a practicing attorney, alleges

27  conclusorily that Bloom did not provide legal advice, but offers no facts to support

28  that conclusion.  (*Id*.)

1    Plaintiff does not allege that Bloom signed, negotiated, paid for, or was a
2  party to any agreement with Black Cube.  At various points, Plaintiff claims that
3  Bloom (a) received information and records about Plaintiff from Black Cube (*id.*, ¶¶
4  78, 98, 111), (b) met *on a single occasion* with a Black Cube representative and
5  "discussed [the representative's] activities" (*id.*, ¶ 102), and (c) generally "oversaw
6  and guided" Black Cube's work (*id.*, ¶ 140(c)).  The Complaint contains no factual
7  allegations (but only speculation and conclusion) suggesting that Bloom hired,
8  directed, or instructed Black Cube to engage in any of the conduct alleged in the
9  Complaint, or that Bloom exercised any control over Black Cube.

10    **E.    Black Cube Allegedly Engages In Work On Weinstein's Behalf**

11    Black Cube—retained by Boies prior to Bloom's involvement—was allegedly
12  engaged to help Weinstein "bury" Plaintiff's book and put "a stop to the negative
13  campaign" against Weinstein.  (*Id.*, ¶¶ 35, 39.)  Black Cube allegedly engaged in a
14  variety of tactics to gather information about Plaintiff and her book.  These tactics
15  allegedly included recording communications between Black Cube representatives
16  and Plaintiff without Plaintiff's knowledge (*id.*, ¶ 67); contacting Plaintiff through
17  intermediaries to learn information about the book (*id.*, ¶¶ 63-67, 97, 103-104, 107-
18  110); befriending Plaintiff through an undisclosed agent to learn information about
19  the book (*id.*, ¶¶ 70-78); speaking to media outlets and journalists (*id.*, ¶¶ 80, 105);
20  and monitoring journalists (*id.*, ¶¶ 85-89).  Plaintiff also insinuates that Weinstein
21  and/or Black Cube planted drugs in her wallet, caused her to be arrested, and then
22  manipulated her criminal defense attorney (who is not a defendant but is himself
23  alleged to be part of the supposed RICO enterprise).  (*Id.*, ¶¶ 55-62.)  A pending
24  defamation lawsuit against Plaintiff and her attorneys contends this allegation it
25  belied by Plaintiff's sworn admission of guilt with respect to the drug charges.
26  (RFJN, Ex. 1).  Plaintiff advances no factual allegations that Bloom controlled or
27  directed Black Cube's alleged activities on behalf of Weinstein.
28

**F.** **Plaintiff Releases Her Book But Cancels Her Book Tour**

Plaintiff's book *Brave* was released in January 2018. (*Id*., ¶ 127.) Plaintiff planned a book tour to promote sales of *Brave*. (*Id*., ¶ 128.) Plaintiff claims she experienced "odd and disturbing encounters" at the beginning of that tour but does not describe those encounters. (*Id*.) Plaintiff suspected Weinstein was "planting hecklers" at her book tour events, although she does not allege her suspicion was founded on any information or that she ever learned it to be true. (*Id*.) Plaintiff does not allege that she ever took any steps to confirm that suspicion. (*Id*.) Plaintiff alleges that these events "took a substantial toll" on her "mental health and wellbeing." (*Id*.) After these "odd and disturbing encounters," Plaintiff decided to cancel her book tour. (*Id*.)

As a result of the cancellation, Plaintiff alleges she has suffered "concrete economic losses, including interruption and termination of [her] relationships with commercial partners; fees and costs paid to [her] literary agents; legal fees and costs associated with the criminal drug-possession case and with WEINSTEIN's efforts to prevent *Brave*'s publication; decreased book sales; lost employment opportunities; lost commercial opportunities including film, television, book, and other media projects; and harm to [her] business reputation." (*Id*., ¶ 131.)

## ARGUMENT

**A.** **Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It requires "more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks and citation omitted). "[M]ere conclusory statements" or "legal conclusions" do not

suffice—"they must be supported by factual allegations." *Id*. at 678–79.

The heightened pleading standard of Federal Rule 9(b) applies to civil RICO claims when the predicate offenses involve fraud. *See Edwards v. Marin Park, Inc*., 356 F.3d 1058, 1065–66 (9th Cir. 2004). Critically, "[a] plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." *In re Toyota Motor Corp*., 785 F. Supp. 2d 883, 919 (C.D. Cal. 2011) (dismissing RICO claims where allegations failed to specify each defendant's role in the predicate acts). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation mark and citation omitted). In addition, the allegations must set forth "what is false or misleading about [a] statement, and why it is false." *Id.* Claims made "on information and belief" are usually insufficient under Rule 9(b). *Rice v. U.S. Bank Nat'l Ass'n*, No. CV 11-6214-GW (SSx), 2012 WL 10423291, at *5 (C.D. Cal. Jan. 23, 2012) (holding that plaintiff's "upon information and belief" allegations were insufficient to plead fraud).

A court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**B.     Plaintiff Fails To Plead A Cognizable Civil RICO Claim**

To properly plead a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege facts supporting the following elements with the required specificity: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (internal quotation marks omitted). Plaintiff fails to adequately plead (1) a pattern of racketeering; (2) standing/causation; (3) wire fraud; or (4) the existence of an enterprise.

1.     Plaintiff Has Not Pleaded A Pattern Of Racketeering Activity

A "pattern" is defined as "at least two acts of racketeering activity" within a ten-year period that are "related" and "amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 237-39 (1989).  A RICO plaintiff "must allege at least two predicate acts by each defendant" to show a "pattern" of "racketeering" activity.  *In re WellPoint, Inc. Out-of-Network UCR Rates Litig*., 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) (emphasis omitted); *Perez v. DirecTV Grp. Holdings, LLC*, No. 16-cv-1440, 2019 WL 6362471, at *3 (C.D. Cal. July 23, 2019) (plaintiff must adequately plead two predicate acts as to each defendant); *Richards v. Cty. of Los Angeles*, No. CV 17-400 BRO, 2017 WL 7411159, at *5-6 (C.D. Cal. Mar. 31, 2017) (dismissing RICO claim where "Plaintiff has not alleged facts that describe how each of the Defendants . . . committed two predicate acts in furtherance of that enterprise").  Here, paragraph 141 of the Complaint lists all the alleged RICO predicate acts.  **Only one of these alleged predicate acts involves Bloom (the email referenced in Paragraph 141(c)).  This alone is fatal to Plaintiff's RICO claims against Bloom.**

Even if Plaintiff had alleged that Bloom engaged in at least two predicate acts of "racketeering" (which Plaintiff has not), the pattern allegations are still insufficient as matter of law.  Multiple RICO offenses, if arising from a single event or for a single purpose, are insufficient to establish a *pattern* of racketeering.  *See Howard v. Am. Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000) (a "'flurry' of false and misleading advertising" and other "repeated fraudulent schemes" were insufficient to show a pattern of racketeering because it all related to AOL's flat-fee program, a single business campaign); *Jarvis v. Regan*, 833 F.2d 149, 152-53 (9th Cir. 1987) (affirming dismissal of a RICO claim where the alleged pattern consisted of three acts of mail and wire fraud committed by legal aid organizations in obtaining a single federal grant); *United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc*., 837 F.2d 356, 360 (9th Cir. 1988) ("RICO's continuity

1 requirement is not satisfied if plaintiffs have merely alleged 'a single fraud

2 perpetrated on a single victim'") (citations omitted); *GSI Tech. v. United Memories,*

3 *Inc*., No. 5:13-cv-01081-PSG, 2014 WL 1572358, at *5 (N.D. Cal. Apr. 18, 2014)

4 (alleged series of predicate acts of mail and wire fraud were all operated with a

5 single goal—the acquisition of a contract to design a memory chip).  Here, Plaintiff

6 alleges the wires were done for a single goal: to protect Weinstein from allegations

7 in Plaintiff's book.  (Compl., ¶¶ 138, 141.)  This is insufficient.

8       The alleged "scheme" here was finite in nature.  Plaintiff alleges that the goal

9 of the racketeering activity was to defraud her and obtain a copy of her unpublished

10 manuscript, both of which goals the Complaint alleges were achieved.  *See Turner v.*

11 *Cook*, 362 F.3d 1219, 1230 (9th Cir. 2004) (affirming dismissal where alleged

12 actions "were finite in nature" and the alleged enterprise had ceased activity);

13 *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992) (where the

14 only "goal" of the defendants was the successful prosecution of a state court tort

15 suit, "there was no threat of activity continuing beyond the conclusion of that suit");

16 *id.* at 367 ("A pattern of activity lasting only a few months does not reflect the 'long

17 term criminal conduct' to which RICO was intended to apply."); *Medallion*

18 *Television Enters., Inc. v. SelecTV of Cal., Inc*., 833 F.2d 1360, 1364 (9th Cir. 1987)

19 (where fraud was a joint venture to obtain broadcast rights, the threat ended once the

20 rights were obtained); *Howard*, 208 F.3d at 750 ("Activity that lasts only a few

21 months is not sufficiently continuous.").  Bloom's actions (as opposed to others in

22 the enterprise) only took place over an extremely brief period—less than even a few

23 months (Compl. ¶ 141)—and that is what is relevant.  *See Gross v. Waywell*, 628 F.

24 Supp. 2d 475, 495 (S.D.N.Y 2009) (complaint must demonstrate the RICO elements

25 as to each defendant individually).  Plaintiff's RICO claim against Bloom should

26 therefore be dismissed.

27          2.      Plaintiff Lacks Standing To Assert Purported RICO Claims

28

BLOOM'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

Based On The Alleged Injury

     a.    *Plaintiff Fails To Allege Both But-For And Proximate Causation*

"Statutory standing under RICO is narrower than injury-in-fact standing under Article III." *Vega v. Ocwen Fin. Corp.*, No. 2:14-cv-04408-ODW (PLAx), 2015 WL 1383241, at \*11 (C.D. Cal. Mar. 24, 2015) (Wright, J.).  RICO confers standing on a plaintiff only if the alleged predicate offenses were both the "but for" *and* proximate cause of an injury to plaintiff's business or property. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("[P]laintiff only has standing if . . . he has been injured in his business or property by the conduct constituting the violation."); *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) ("[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a "but for" cause of his injury, but was the proximate cause as well.'") (quoting *Holmes v. Sec. Inv'r Prot. Corp.,* 503 U.S. 258, 268 (1992)).  The causation requirement is "stringent." *Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, No. 5:11-cv-01860-ODW (FMOx), 2012 WL 1669726, at \*8 (C.D. Cal. May 14, 2012) (Wright, J.).

Plaintiff fails to allege a causal link between Bloom's supposed RICO predicate acts and any claimed injury.  Accordingly to Plaintiff, the chain of causation is: (1) Weinstein hires an investigator; (2) through the investigator, Weinstein obtains a copy of Plaintiff's unpublished manuscript and other information about Plaintiff; (3) news articles are published about Weinstein; (4) Plaintiff's book is released in January 2018; (5) Weinstein releases a statement the same day as the book's release disputing Plaintiff's account of events; (6) Plaintiff begins her book tour; (7) Plaintiff experiences some unspecified "odd and disturbing encounters right at the tour's beginning," though she does not describe those encounters; (8) Plaintiff becomes "concerned that WEINSTEIN was planting hecklers" at her book tour events (although she does not allege that this actually

took place, only that she was "concerned"); (9) Plaintiff takes no steps to determine if that concern was merited; (10) Plaintiff cancels her book tour; and, finally, (11) *as a result of Plaintiff's decision to cancel her book tour*, her book-related income and relationships in the literary community suffer.  (Compl., ¶¶ 120-124, 128, 145.)

This attenuated chain of causation is far more remote than what is recognized under RICO .  *Prime Partners*, 2012 WL 1669726, at *10 ("'[T]he general tendency of the law, in regard to damages at least, is not to go beyond the first step,' and that 'general tendency' applies with full force to proximate cause inquiries under RICO.").  Plaintiff's alleged injuries resulted from *her decision* to cancel her book tour, not from anything Bloom did.  Any connection between the alleged interstate use of wires and her subsequent claimed injuries resulting from that cancellation is simply "too remote" to satisfy proximate causation.  *Encarnacao v. Phase Forward Inc.*, No. CV 11-05090 ODW (PLA), 2012 WL 404971, at *3–4 (C.D. Cal. Feb. 7, 2012) (Wright, J.) (dismissing RICO claim with prejudice because it did "not appear that Plaintiff could plead any set of facts plausibly establishing the requisite causal relationship between Plaintiff's alleged fraud claim and his resulting injury to constitute a viable RICO claim").

b.    *Plaintiff Fails To Sufficiently Allege Any Concrete Financial Loss*

Plaintiff also lacks standing because the Complaint fails to allege facts demonstrating a "concrete financial loss."  "[A] RICO injury must be a concrete financial loss, and not mere injury to a valuable intangible property interest.  A plaintiff cannot maintain a RICO claim where the loss he has suffered is purely speculative."  *Camarillo v. City of Maywood*, No. CV 07-3469 ODW (SHx), 2008 WL 4056994, at *2 (C.D. Cal. Aug. 27, 2008) (Wright, J.) (citations and quotation marks omitted).  Here, Plaintiff has only alleged purported injury to intangible property interests.

Plaintiff alleges that her damages consist of, for example, "interference with

-11-

1  her relationships with her publisher and the many retailers involved in [her] book

2  tour" that she cancelled.  (Compl., ¶ 145.)  Plaintiff complains of "decreased book

3  sales," "lost commercial opportunities," and "fees and costs paid to [her] literary

4  agents."  (*Id*.)  None of these complaints suffices to establish a cognizable RICO

5  damages claim.  It is true that, under certain circumstances, loss of employment

6  opportunities may form the basis of a RICO claim.  *See Diaz v. Gates*, 420 F.3d 897,

7  901 (9th Cir. 2005).  However, that general rule does not save Plaintiff's claim,

8  given that she offers no facts that support any claimed concrete financial loss.  *See*

9  *Camarillo*, 2008 WL 4056994, at *2 (dismissing RICO claim with prejudice

10  because, *inter alia*, plaintiff "offer[ed] no *facts* capable of supporting his property

11  injury").  Plaintiff does not identify any supposed "lost employment opportunities,"

12  and all alleged economic loss derives from Plaintiff's claimed reputational damage

13  resulting from her decision to cancel her book tour based on suspicions about

14  Weinstein.  (Compl., ¶ 145.)

3.  Plaintiff Has Not Pleaded Wire Fraud With Particularity

15  To satisfy Rule 9(b) on a wire fraud claim, a plaintiff must allege when the

16  wires were used and how that use furthered a scheme to defraud.  *See Nunag-*

17  *Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134, 1148-49 (C.D. Cal.

18  2011).  A plaintiff must also identify the parties to the misrepresentations

19  constituting the fraud.  *See Sanford v. MemberWorks, Inc*., 625 F.3d 550, 558 (9th

20  Cir. 2010) (wire fraud allegations failed because plaintiffs did not allege which of

21  the defendants made the telephone calls to purchase alleged bait products).  In

22  assessing if a pleading sufficiently pleads a claim under section 1962(c), courts

23  "have been particularly sensitive to [Rule] 9(b)'s pleading requirements in RICO

24  cases in which the 'predicate acts' are mail fraud and wire fraud, and have further

25  required specific allegations as to which defendant caused what to be mailed (or

26  made which telephone calls), and when and how each mailing (or telephone call)

27  furthered the fraudulent scheme."  *Hill v. Opus Corp*., 841 F. Supp. 2d 1070, 1089

-12

1   (C.D. Cal. 2011) (citation omitted).  Applied here, Plaintiff's allegations fail to

2   plead wire fraud because she has not alleged with specificity that *Bloom* "formed a

3   scheme" to defraud, used the wires in furtherance of a scheme, sent particular

4   documents via wire, or had the "specific intent to deceive or defraud."  *Schreiber*,

5   806 F.2d at 1400.

6           Rather, the Complaint alleges only a single purported improper use of the

7   wires by Bloom.[1]  (Compl., ¶ 141(c).)  That allegation is pleaded on information and

8   belief and is generally alleged to have occurred in December 2016.  (*Id.*)  Plaintiff

9   fails to allege any way in which this alleged email was fraudulent, or even who was

10  supposedly defrauded—this email was not sent to Plaintiff and is not alleged to

11  contain any false or illegal content.  Nor does Plaintiff factually allege that Bloom

12  had any specific intent to deceive or defraud Plaintiff at the time of her December

13  2016 email.  Accordingly, Plaintiff has not satisfied her pleading requirements.

14  *Giron v. Hong Kong & Shanghai Bank Co.*, No. 2:15-cv-08869-ODW-JC, 2016 WL

15  6662726, at *6 (C.D. Cal. June 29, 2016) (Wright, J.) (dismissing RICO claim

16  without leave to amend because, *inter alia*, plaintiff failed to sufficiently allege "any

17  specific intent to deceive or defraud").

18              4.      The Complaint Lacks Sufficient Allegations Regarding The

19                      Existence Of An Enterprise and Bloom's Supposed Involvement

20          To properly plead a RICO claim, a plaintiff must also allege the existence of

21  an enterprise, *i.e.*, she "must plead that the enterprise has (A) a common purpose,

22  (B) a structure or organization, and (C) longevity necessary to accomplish the

---

[1] Plaintiff must specifically allege that each named defendant committed the alleged RICO
predicate acts.  General allegations that a defendant was involved in a supposedly fraudulent
enterprise as a "conspirator" are not sufficient.  *Tatung Co. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138,
1169-70 (C.D. Cal. 2016) (plaintiff's allegations that defendant was "the architect of many facets
of fraud," and another party "took direction" from the defendant, were insufficient to infer that this
defendant actually committed the predicate acts).  Therefore, to the extent Plaintiff purports to
plead claims against Bloom based on the alleged conduct of other Defendants, those allegations as
a matter of law do not support a RICO claim.

purpose*." Eclectic Prop. E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 997 (9th Cir. 2014).  The commonality and coordination must go beyond the level of cooperation inherent in typical commercial relationships.  *See*, *e.g.*, *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co*., 719 F.3d 849, 854-55 (7th Cir. 2013) ("enterprise" allegations failed to show that the defendants involved themselves in each other's business beyond their usual commercial relationship).  A RICO enterprise must also exist separately from the purported pattern of racketeering activity.  *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 354-55 (8th Cir. 2011) ("In deciding whether an alleged RICO enterprise has an ascertainable structure distinct from the pattern of racketeering activity, we must determine if the enterprise would still exist were the predicate acts removed from the equation.") (citation and internal quotation marks omitted).

Here, Plaintiff lumps all defendants (plus other non-defendant individuals) into an amorphous entity she calls the "Weinstein-Protection Enterprise."  (Compl. ¶ 135.)  This falls far short of what is required.  *See Crest*, 660 F.3d at 355 (holding that bare allegations of interrelation and association between companies was insufficient to plead a RICO enterprise).  Absent from Plaintiff's Complaint are factual allegations showing "the requisite *connection* between [Bloom's] association with the enterprise and [Bloom's] participation in the alleged criminal activity.  That missing connection is how each individual Defendant exploited his or its participation in the criminal activity as a means *to participate in the operation or management* of the enterprise with which each Defendant was associated." *Prime Partners*, 2012 WL 1669726 at *12.

The absence of these allegations is particularly significant here, where Bloom is a licensed and practicing attorney.  In order to "participate, directly or indirectly, in the conduct of [an] enterprise's affairs, one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (internal quotation marks omitted).  Because Bloom provided professional services to

Weinstein, Plaintiff's generalized allegations of some kind of association are insufficient. *See Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (attorney's legal work spanning multiple years was insufficient to impute RICO liability because, *inter alia*, the attorney's work did not begin until after the inception of the enterprise, the attorney held no "formal position" in the organization, and the attorney did not play a part in "directing the affairs of the enterprise"); *see also Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248, 254 (S.D.N.Y. 1997) ("[I]t is well established that the provision of professional services by outsiders, such as accountants, to a racketeering enterprise, is insufficient to satisfy the participation requirement of RICO, since participation requires some part in directing the affairs of the enterprise itself.").  Taken to its logical conclusion, Plaintiff's theory would expose all attorneys who had ever represented a client to RICO liability simply because their former clients decided to engage in a pattern of racketeering.

Plaintiff has not alleged any ascertainable structure or decision-making process distinct from the acts that allegedly constitute a pattern of racketeering activity.  Merely repeating the word "enterprise" does not convert various individuals and organizations into a structure that falls under RICO.  *See Mattel, Inc. v. MGA Entm't, Inc*., 782 F. Supp. 2d 911, 1041 (C.D. Cal. 2011) (enterprise allegations failed due to absence of allegations regarding a shared common purpose or operation as a continuing unit); *Eaves v. Designs for Fin., Inc*., 785 F. Supp. 2d 229, 263 (S.D.N.Y. 2011) (dismissing RICO claim where plaintiff failed to "allege any details regarding the hierarchy or organization of the alleged enterprise, or to advance any facts suggesting that the constituent members of the alleged enterprise functioned as a unit").  Plaintiff's RICO claim should therefore be dismissed.

### 5.   Plaintiff's RICO Conspiracy Claim (Count II) Fails

Because Plaintiff fails to state a claim for primary violations of RICO under section 1962(c), her RICO conspiracy claim under section 1962(d) must also be

dismissed.  *See Howard*, 208 F.3d at 751 ("Even if Plaintiffs properly claimed that the defendants agreed to be a part of an enterprise, the failure to allege substantive violations precludes their claim that there was a conspiracy to violate RICO.").  But even assuming *arguendo* that Plaintiff properly pleaded a primary RICO violation, she has still insufficiently alleged a RICO conspiracy pursuant to 18 U.S.C. § 1962(d).  To plead a RICO conspiracy, a plaintiff must allege either an agreement to violate the substantive provisions of RICO, or that the defendants agreed to commit or participate in the commission of two or more predicate offenses.  *See id.* at 751 (affirming dismissal of RICO conspiracy claim).  Conclusory statements that all defendants conspired to engage in all the substantive offenses fail to state a claim. *See Stewart v. Wachowski*, No. CV 03-2873-MMM-(VBKx), 2005 WL 6184235, at *14 n.73 (C.D. Cal. June 14, 2005).  Plaintiff's conclusory allegations (Compl., ¶¶ 147-148) do not satisfy these requirements.

### C. Plaintiff Has Failed To Sufficiently Plead A Claim Under The Federal Wiretap Act

Count III of the Complaint is styled as a "Federal Wiretap Act" claim against all Defendants.  However, absent from the Complaint is any factual allegation that Bloom directly engaged in any such violation.  (Compl., ¶¶ 149-155.)[2]  The basis for this claim is apparently a supposed secondary liability theory, *i.e.*, that Bloom is liable for acts committed by Black Cube.  As a matter of law, no such remedy exists; the Wiretap Act "does not provide a cause of action against aiders and abetters, and . . . plaintiffs may not proceed against [defendants] on such theory."  *In re Toys R Us, Inc., Privacy Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *7 (N.D. Cal. Oct. 9, 2001); *see also Doe v. Federal Democratic Republic of Ethiopia*, 189

---

[2] To the extent Plaintiff alleges supposed "use" by Bloom, there are no facts in the Complaint that support such an allegation.  *Dorris v. Absher*, 179 F.3d 420, 426 (6th Cir. 1999) ("[L]istening alone is insufficient to impose liability for 'using' illegally intercepted communications."); *Reynolds v. Spears*, 93 F.3d 428, 432-33 (8th Cir. 1996) (listening does not constitute "use").

F.Supp.3d 6, 15 (D.D.C. 2016) ("[T]he 'person or entity' subject to suit must be the same 'person or entity' that violated the statute."), *aff'd*, 851 F.3d 7 (D.C. Cir. 2017).  Therefore, Bloom cannot be vicariously liable for a Wiretap Act violation.

Moreover, because the Federal Wiretap Act is a "one-party consent" law, Plaintiff's claim fails for the independent reason that at least one party to every allegedly "intercepted" communication consented.  *See* 18 U.S.C. § 2511(2)(d). Plaintiff does not dispute that one party to every "intercepted" communication consented.  Nor does Plaintiff allege that Bloom (or any other Defendant) recorded any communications for the purpose of committing any criminal or tortious act, an additional required element.  *Sussman v. Am. Broad. Co., Inc*., 971 F. Supp. 432, 435 (C.D. Cal. 1997) ("Plaintiffs may only recover if they can show that the recordings were made for the purpose of committing a criminal or tortious act."), *aff'd*, 186 F.3d 1200 (9th Cir. 1999).  As the Ninth Circuit explained, "the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman*, 186 F.3d at 1202 (citation and internal quotation marks omitted).  Plaintiff has pleaded no facts demonstrating an unlawful purpose, and this claim must be dismissed.

The applicable statute of limitations provides an additional and independent basis for dismissal.  The limitations period for this claim is two years.  18 U.S.C. § 2520(e).  The alleged wiretapping activity took place more than two years prior to filing the Complaint.  (Compl., ¶¶ 72-74).  To the extent Plaintiff contends delayed discovery of the factual basis for this or any other of her claims, the Complaint fails to demonstrate beyond conclusory statements why the relevant facts could not have been discovered sooner.

### D.  <u>None Of The State Law Claims Has Merit</u>

The state law claims for which this Court has supplemental subject matter jurisdiction should be dismissed.

1              1.     The State Law Claims Based On A Vicarious Liability Theory

2                     Must Be Dismissed

3        Plaintiff's various state law claims against Bloom are pleaded primarily on

4 theories of vicarious liability.  As to Bloom, Plaintiff appears to base Counts IV, V,

5 VI, VII, VII, and X on a vicarious liability theory.  Yet, no pleaded facts

6 demonstrate a principal-agent relationship between Bloom and Black Cube (or

7 between Bloom and anyone else) and must therefore be dismissed.[3]

8        "An agent is one who represents another . . . in dealings with third persons."

9 Cal. Civ. Code § 2295.  It "is the relationship which results from the manifestation

10 of consent by one person to another that the other shall act on his behalf and subject

11 to his control, and consent by the other so to act."  *van't Rood v. County of Santa*

12 *Clara*, 113 Cal. App. 4th 549, 571 (2003) (citation and internal quotation mark

13 omitted).  "[F]ormation of an agency relationship is a bilateral matter.  Words or

14 conduct by both principal and agent are necessary to create the relationship."  *Id*.

15 (citation and internal quotation marks omitted).  "In the absence of the essential

16 characteristic of the right of control, there is no true agency."  *Id*. at 572 (citation

17 and internal quotation marks omitted).

18       Here, the Complaint contains no factual allegations that Black Cube acted as

19 Bloom's agent in connection with its actions.  To the contrary, Plaintiff alleges that

20 Black Cube worked on Weinstein's behalf (Compl., ¶¶ 38, 89-90, 94-95); Black

21 Cube was engaged on Weinstein's behalf by Boies (*id*., ¶¶ 36, 38, 89, 99); Black

22 Cube was paid by Boies (*id*., ¶¶ 40, 90, 92); and Black Cube's work began before

23

24 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
[3] For Plaintiff's fraud-based claims, this relationship must be pleaded according to the Rule 9(b)
25 standard.  *See Western Sugar Co-op. v. Archer-Daniels-Midland Co.*, No. CV 11-3473 CBM
  (MANx), 2012 WL 3101659, at *5 (C.D. Cal. July 31, 2012) ("'[W]hen the plaintiff relies upon
26 the same circumstances to establish both the alleged fraud and the agency relationship . . . the
  reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue
27 of agency and to the underlying fraud claim.'") (omission in original) (quoting *Lachmund v. ADM*
  *Investor Servs.*, 191 F.3d 777, 783 (7th Cir. 1999))).
28

1   Bloom had any involvement with Weinstein or Boies (*id.*, ¶¶ 36, 48).  Plaintiff

2   alleges only a single meeting between Bloom and Black Cube, during which Black

3   Cube's work was "discussed" (as opposed to "directed") (*Id.*, ¶ 102.)  Absent are

4   any facts that would show the manifestation of a principal-agent relationship

5   through which Bloom controlled Black Cube's conduct.  Each claim that is based on

6   Bloom's purported liability for Black Cube's actions must be dismissed.

7          Plaintiff also alludes to the possibility of a principal-agent relationship

8   between Bloom and Lacy Lynch (Plaintiff's literary agent)—the entirety of which is

9   that Lynch told Plaintiff "that BLOOM wanted to speak with [Plaintiff] about

10  WEINSTEIN" but that Plaintiff declined to do so.  (Compl., ¶ 69.)  Plaintiff offers

11  no factual allegations that support the existence of an agency relationship between

12  Lynch and Bloom.  (*Id.*)

13                 2.    Plaintiff Has Failed To State A Claim Against Bloom For Fraud

14                       (Counts IV and V)

15          "The elements of fraud, which give rise to the tort action for deceit, are (a)

16  misrepresentation (false representation, concealment, or nondisclosure);

17  (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance;

18  (d) justifiable reliance; and (e) resulting damage." *Lazar v. Super. Ct.*, 12 Cal. 4th

19  631, 638 (1996) (citation and internal quotation marks omitted).  Each element of a

20  fraud claim must be pleaded with specificity. *U.S. Commodity Futures Trading*

21  *Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019).  However, the

22  Complaint does not allege a single false representation made by Bloom to Plaintiff,

23  let alone allege with required specificity the basic facts about misrepresentations for

24  which Bloom is supposedly vicariously liable, such as who made the

25  misrepresentations, when they were made, how they were fraudulent, or in what

26  way Plaintiff supposedly relied.  (*See* Compl., ¶¶ 158, 167.)  Bloom has no way to

27  assess, for example, whether the alleged misrepresentations took place before or

28  after she was engaged by Weinstein—that basic, necessary information is absent

from the Complaint.  Finally, Plaintiff does not allege with specificity any supposed damages proximately caused by the alleged fraud (as opposed to the speculative damages Plaintiff references that may have resulted from her voluntary cancellation of her book tour).  (*Id.*, ¶¶ 164, 173.)  These claims should therefore be dismissed.

### 3.   Plaintiff Has Failed To State A Claim For Violations Of The Bane Act (Count VI)

The Bane Act protects individuals from interference with federal or state rights by way of "threats, intimidation, or coercion."  *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1).  "Speech alone is not sufficient to support an action brought [under the Bane Act], except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat."  Cal. Civ. Code § 52.1(k).

Plaintiff's Bane Act claim fails on its face, as it is based entirely on supposed misstatements by various parties that, according to the Complaint, resulted in an invasion of Plaintiff's privacy.[4]  This is exactly the sort of "speech alone" that is insufficient to support a claim under the language of the statute.  Cal. Civ. Code § 52.1(k); *Cabesuela v. Browning-Ferris Indus. of Cal., Inc.*, 68 Cal. App. 4th 101, 111 (1998) (dismissing Bane Act claim because plaintiff's allegations "in no way show actual violence or intimidation by the threat of violence"); *Milligan v. County of Orange*, No. SACV 10-1874 JVS (RNBx), 2011 WL 13225139, at *4 (C.D. Cal.

---

[4] Bloom's alleged liability for Bane Act violations is premised on a "false and deceptive approach to [Plaintiff] through Lynch." (Compl., ¶ 178.)  The Complaint contains no allegations supporting the existence of *any* relationship between Bloom and Lynch, Plaintiff's literary agent.  (*See supra* Argument Section E.1.)

1  Mar. 14, 2011) ("Absent specific threats of violence, Defendants' words may not
2  form the basis of a § 52.1 claim.").

3        4.     Plaintiff Has Failed To Allege A Claim Against Bloom For
4               Invasion Of Privacy (Count VII)

5        Plaintiff fails to sufficiently plead against Bloom the basic elements of an
6  invasion of privacy claim.  Plaintiff admits that in May 2017 she voluntarily gave
7  Filip (a Black Cube agent) access to the draft *Brave* manuscript on her computer.
8  (Compl., ¶ 194.)  Plaintiff voluntarily spoke with Filip and revealed information.
9  (*Id.*, ¶ 77.)  And all the information at issue was contained in a book that Plaintiff,
10 by 2016, had decided to publish (*i.e.*, to share with the world) and did in fact publish
11 in 2018.  (*Id.*, ¶ 6.)  These circumstances do not support an invasion of privacy
12 claim.  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994) ("[T]he
13 plaintiff in an invasion of privacy case must have conducted himself or herself in a
14 manner consistent with an actual expectation of privacy, i.e., he or she must not
15 have manifested by his or her conduct a voluntary consent to the invasive actions of
16 defendant.") (citation and internal quotation marks omitted).  In addition, and as
17 discussed above, this claim is based on a vicarious liability theory, but Plaintiff has
18 not pleaded factual allegations showing that Black Cube was an agent of Bloom's.

19       Finally, California's one-year statute of limitations for invasion of privacy
20 claims has run.  *See Maheu v. CBS, Inc.*, 201 Cal. App. 3d 662, 676 (1988).  Each
21 alleged invasion of privacy took place more than two years prior to the filing of the
22 Complaint, and Plaintiff acknowledges she learned about the invasions, at the latest,
23 in November 2017.  (Compl., ¶ 123.)  This claim should therefore be dismissed.

24       5.     Plaintiff Has Failed To State A Claim Against Bloom For
25              Computer Crimes (Count VIII)

26       Plaintiff alleges that all defendants engaged in computer crimes in violation of
27 "Cal. Civ. Code § 502(c)(1)."  (Compl., ¶ 192.)  Plaintiff likely intended to
28 reference Section 502 of the Penal Code, not the Civil Code.  The Rule 9(b)

heightened pleading standard applies to this claim. *Craigslist, Inc. v. Mesiab*, No. C 08-05064 CW (MEJ), 2009 WL 10710286, at *10 (N.D. Cal. Sept. 14, 2009) ("Claims for violations of Section 502 are subject to Federal Rule 9(b)'s heightened pleading requirement."), *adopted by*, No. 08-05064 CW, 2009 WL 10710276 (N.D. Cal. Oct. 19, 2009).

Here, Plaintiff's claim fails as a matter of law. This claim requires that improper access was achieved "by circumventing technical or code-based barriers intended to restrict such access." *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1033 (N.D. Cal. 2014). Such allegations are absent from the Complaint. Plaintiff acknowledges that *she gave permission* to access the information in question on her computer in May 2017. (Compl., ¶ 194.) Any other instances of allegedly unauthorized access are pleaded entirely on information and belief without any factual specificity or reference to technical breaches and, as such, they do not satisfy the Rule 9(b) standard. (*Id*., ¶¶ 103, 195.) In addition, the supposed violations that took place in New York (*id*., ¶¶ 103, 195) are outside the territorial reach of this California statute. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) ("[W]e presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.") (omission in original) (citation and internal quotation marks omitted). This claim should therefore be dismissed.

6.  Plaintiff Has Failed To State A Claim Against Bloom For Conversion (Count IX)

"[T]he tort [of conversion] comprises three elements: (a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages." *Voris v. Lampert*, 7 Cal. 5th 1141, 1150 (2019) (internal quotation marks and citation omitted). Here, Plaintiff's purported conversion claim fails as a matter of

1   law since she fails to allege that Bloom dispossessed her of any property.  (Compl.,

2   ¶ 103.)  Plaintiff also fails to allege damages resulting from the supposed

3   conversion.  (Id., ¶ 201).  This claim should therefore be dismissed.

4               7.    Plaintiff Has Failed To State A Claim Against Bloom For

5                     Intentional Infliction Of Emotional Distress (Count X)

6         "The elements of a cause of action for intentional infliction of emotional

7   distress are (i) outrageous conduct by defendant, (ii) an intention by defendant to

8   cause, or reckless disregard of the probability of causing, emotional distress, (iii)

9   severe emotional distress, and (iv) an actual and proximate causal link between the

10  tortious conduct and the emotional distress."  *Nally v. Grace Cmty. Church*, 47 Cal.

11  3d 278, 300 (1988).  Here, Plaintiff's allegations against Bloom are too vague to

12  satisfy even the most basic pleading standard and demonstrate neither "outrageous

13  conduct" nor wrongful intent.

14        Plaintiff alleges Bloom is liable for intentional infliction of emotional distress

15  because she "tried to put on a friendly face toward [Plaintiff], as a supposed ally,

16  when really the approach was part of BLOOM's explicit plan to find out what

17  [Plaintiff] wanted and silence her."  (Compl., ¶ 208.)  It is unclear what interaction

18  Plaintiff is referring to—Plaintiff has never met or communicated with Bloom, and

19  no such meeting is alleged in the Complaint—but putting on a "friendly face," even

20  if disingenuous, is not "outrageous conduct."  *See, e.g.*, *Yau v. Santa Margarita*

21  *Ford, Inc*., 229 Cal. App. 4th 144, 160–61 (2014) ("Conduct, to be outrageous must

22  be so extreme as to exceed all bounds of that usually tolerated in a civilized

23  society . . . [and] the plaintiff must allege with great[] specificity the acts which he

24  or she believes are so extreme as to exceed all bounds of that usually tolerated in a

25  civilized community.") (alteration in original) (citations and internal quotation

26  marks omitted).  Plaintiff's allegation is unsupported by the facts.  In the absence of

27  any contact with Bloom, Plaintiff cannot demonstrate any intent to harm, let alone

28  an actual and proximate link between contact and any claimed damages.

In addition, the two-year statute of limitations has run on Plaintiff's emotional distress claim. *Wassmann v. S. Orange Cty. Cmty. Coll. Dist.*, 24 Cal. App. 5th 825, 852–53 (2018). Plaintiff alleges that an overture to her by a third party took place in March 2017, and that Bloom was mentioned. (Compl., ¶ 69.) That is as close as Plaintiff comes to alleging contact between herself and Bloom. That alleged conversation took place more than two-and-a-half years prior to filing of the Complaint. The claim is therefore time-barred.

### 8. Plaintiff Has Failed To State A Claim Against Bloom For Negligent Hiring And Supervision (Count XI)

Plaintiff alleges that Bloom violated a duty "not to hire or rely upon agents" who acted improperly and to "properly . . . supervise and monitor the activities of agents [she] hired and used." (Compl., ¶¶ 215-216.) But Plaintiff offers no support for the premise that Bloom hired or supervised Black Cube or that she could have reasonably foreseen any injury. *See Phillips v. TLC Plumbing, Inc*., 172 Cal. App. 4th 1133, 1142 (2009) (There are "two elements necessary for a duty to arise in negligent hiring and negligent retention cases—the existence of an employment relationship *and* foreseeability of injury."). According to the Complaint, Black Cube performed work on behalf of Weinstein (Compl., ¶¶ 38, 89-90, 94–95); was hired by Boies on Weinstein's behalf (*id*., ¶¶ 36, 38, 89, 99); was paid by Boies (*id*., ¶¶ 40, 90, 92); began its work before Bloom was engaged (*id*., ¶¶ 36, 48); and had minimal contact with Bloom (*id*., ¶ 102). Plaintiff *does not allege* Bloom entered into contracts with Black Cube or "knew and reasonably foresaw" that Black Cube would use improper tactics. (*Id*., ¶¶ 218-220.) The entire basis for Bloom's purported liability is her allegedly "participating in discussions with BLACK CUBE personnel and speaking with WEINSTEIN about BLACK CUBE's activities and results." (*Id*., ¶ 221.) That is insufficient under California law.

Plaintiff also does not identify any way in which the alleged negligent hiring—as opposed to Plaintiff's choice to cancel her book tour—proximately

caused any injury.  (*Id.*, ¶ 225.)  In addition, the two-year limitations period has run.  *See Kaldis v. Wells Fargo Bank, N.A.*, 263 F. Supp. 3d 856, 867 (C.D. Cal. 2017) (citing Cal. Code Civ. Proc. § 335.1).  This claim, like each of Plaintiff's claims, must therefore be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, Bloom respectfully requests that the Court issue an order dismissing Plaintiff's Complaint in its entirety with prejudice.

DATED:  January 31, 2020         BROWNE GEORGE ROSS LLP
                                 Eric M. George
                                 Noah S. Helpern


                                 By:   */s/Eric M. George*
                                 _____
                                       Eric M. George
                                 Attorneys for Defendants
                                 Lisa Bloom and The Bloom Firm