Phyllis Kupferstein, Esq. [SBN 105898]
pk@kupfersteinmanuel.com
Kupferstein Manuel LLP
865 South Figueroa Street
Suite 3338
Los Angeles, California 90017
Telephone: (213) 988-7531
Facsimile: (213) 988-7532

Attorneys for Defendant
Harvey Weinstein

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE MCGOWAN,<br><br>           Plaintiff,<br><br>     vs.<br><br>HARVEY WEINSTEIN, DAVID BOIES, BOIES SCHILLER FLEXNER LLP, LISA BLOOM, THE BLOOM FIRM, B.C. STRATEGIES LTD, D/B/A BLACK CUBE,<br><br>          Defendants. | Case No. 2:19-cv-09105-ODW-GJS<br>Honorable Otis D. Wright<br><br>**DEFENDANT HARVEY WEINSTEIN'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:   July 31, 2020<br>Time:  9:00 a.m.<br>Place:  Courtroom SD<br><br>Trial Date: None Set |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................... 1

II.     ARGUMENT ................................................................................. 2

    A.      McGowan's RICO Claims Fail Because She Has Not Alleged A
        "Pattern of Racketeering Activity" ...................................... 2

        1.      McGowan Does Not Properly Allege "Closed-Ended
            Continuity" ................................................................. 2

        2.      McGowan's Does Not Properly Plead "Open-Ended
            Continuity" ................................................................. 4

    B.      McGowan Has Not Alleged That She Has RICO Standing. ................ 5

    C.      McGowan's ECPA Claim Is Incurably Deficient .............................. 7

    D.      McGowan's State Law Fraud Claims Fail Because She Does
        Not Allege Compensable Damages Caused by the Alleged
        Fraud ................................................................................ 7

    E.      McGowan's Bane Act Claim Fails ......................................... 8

    F.      McGowan's CDAFA Claim Fails........................................... 8

    G.      McGowan's Conversion Claim Fails....................................... 9

    H.      McGowan's Time-Barred IIED Claim Fails ......................................... 9

III.    CONCLUSION ............................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Allwaste, Inc. v. Hecht*,
  65 F.3d 1523, 1526-27 (9th Cir. 1995) ...................................................4

*California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*,
  818 F.2d 1466, 1469 (9th Cir. 1987)......................................................4

*Carter v. County of Alameda*,
  No. 08-cv-5349-PLH, 2008 WL 5234092, at *2 (N.D. Cal. Dec. 15, 2008)........8

*Compare Harmoni Int'l Spice, Inc. v. Hume*,
  914 F.3d 648 (9th Cir. 2019)...............................................................6, 7

*Diaz v. Gates*,
  420 F.3d 897, 900 (9th Cir. 2005)...........................................................5

*Doe v. Roe*,
  958 F.2d 763, 770 (7th Cir. 1992)...........................................................5

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
  48 F.3d 1260, 1265 (D.C. Cir. 1995) .......................................................3

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229, 241-42 (1989)..................................................................4

*Howard v. Am. Online*,
  208 F.3d 741, 750 (9th Cir. 2000) ..........................................................2

*In re Well Point, Inc. Out-of-Network UCR Rates Litigation*,
  865 F. Supp. 2d 1002, 1038 (C.D. Cal. 2011) ...........................................3

*Jackson v. BellSouth Telecoms.*,
  372 F.3d 1250, 1267 (11th Cir. 2004).......................................................3

*Kearney v. Foley & Lardner, LLP*,
  607 Fed. Appx. 757 (9th Cir. 2015) .........................................................4

*Kelly v. United States*,
  No. 18-1059, Slip. Op. at 6 (S. Ct. May 7, 2020) .....................................2

*McNally v. United States*,
  483 U.S. 350, 358 (1987)......................................................................2

*Medallion Television Enterprise v. SelecTV of California, Inc.*,
  833 F.2d 1360, 1362-64 (9th Cir. 1987) ...................................................3

*Nagy v. Nagy*,
  210 Cal. App. 3d 1262, 1268–69 (1989)...............................................7, 8

*Painters and Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co.*,
  943 F.3d 1243, 1251 (9th Cir. 2019)........................................................5

*Religious Tech. Ctr. v. Willersheim,*
    971 F.2d 364, 366 (9th Cir. 1992) ............................................................... 3

*Sever v. Alaska Pulp Corp.,*
    978 F.2d 1529, 1535 (9th Cir. 1992) ........................................................... 3

*SIL-FLO, Inc. v. SFHC, Inc.,*
    917 F.2d 1507, 1516 (10th Cir. 1990) ..................................................... 3-4

*Socheat Chy v. Lam Sin Yam,*
    2017 WL 10676596 * 9 (9th Cir. Nov. 7, 2017) ....................................... 4

*Steam Press Holdings, Inc. v. Hawaii Teamsters,*
    302 F.3d 998, 1011 (9th Cir. 2002) ............................................................ 5

*Sun Savings and Loan Ass'n v. Dierdorff,*
    825 F.2d 187, 194 (9th Cir. 1987) .............................................................. 4

*Sussman v. ABC, Inc.,*
    186 F.3d 1200, 1202-03 (9th Cir. 1999) ................................................... 7

*Turner v. Cook,*
    362 F.3d 1219, 1230 (9th Cir. 2004) .......................................................... 5

*United Energy Owners Committee, Inc. v. United States Energy Management
    Systems, Inc.,*
    837 F.2d 356, 361 (9th Cir. 1988) .............................................................. 4

*Voris v. Lampert,*
    7 Cal. 5th 1141, 1151 (2019) ..................................................................... 9

**Statutes**

Cal. Civ. Code § 52.1(a) .................................................................................. 8

Cal. Code Civ. Proc. § 335.1 ........................................................................... 8

**WEINSTEIN'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

McGowan's Opposition (Dkt. 55) ("Opp.") fails to demonstrate why her claims against Weinstein should not be dismissed with prejudice.  Plaintiff cannot allege the continuity of conduct a RICO claim requires, nor can she establish standing to sue.  Her ECPA claim ignores both that Weinstein would have had to violate the ECPA himself, which is nowhere alleged, and that the alleged recording of conversations is not proscribed by the ECPA, which instead explicitly permits such recording.  McGowan's conclusory allegation that Weinstein "used" or "disclosed" the conversations with the intent to commit a crime or tort is devoid of any factual allegation or basis.

McGowan's Opposition also fails to resurrect her state law claims, as explained in the reply memoranda filed by the Boies Defendants (Dkt. 53) ("BSF Reply"), the Bloom Defendants (Dkt. 54) ("Bloom Reply"), and Black Cube (Dkt. 56) ("BC Reply").  Her fraud claims fail because they do not (and cannot) allege any compensable damages caused by the asserted fraud.  Her speech-based Bane Act claim fails to allege explicitly threatened physical violence—allegations she cannot make against Weinstein.  California's computer crimes statute does not apply extraterritorially, and McGowan alleges no conduct within California covered by this statute.  Her conversion claim misstates and misconstrues dispositive case law recognizing that taking a copy of a manuscript does not constitute a conversion where, as is indisputably the case here, a defendant's actions do not result in the complete dispossession of the property at issue.  Finally, her IIED claim fails because her allegations cannot satisfy the two-year statute of limitations.  These fundamental legal flaws cannot be cured by amendment, and each claim against Weinstein should be dismissed with prejudice.

## II.   ARGUMENT

### A.   McGowan's RICO Claims Fail Because She Has Not Alleged A "Pattern of Racketeering Activity"

As the Supreme Court reaffirmed just weeks ago, "[t]he wire fraud statute. . . prohibits only deceptive 'schemes to deprive the victim of money or property.'" *Kelly v. United States*, No. 18-1059, Slip. Op. at 6 (S. Ct. May 7, 2020) (quoting *McNally v. United States*, 483 U.S. 350, 358 (1987)).  McGowan is not free to label every instance of alleged wrongdoing, be it "deception, corruption, [or] abuse of power," as statutory wire fraud.  *Id.*   Rather, the <u>only</u> allegations in the Complaint that could conceivably be part of the wire fraud scheme she alleges are the alleged deceptive acts aimed at obtaining McGowan's property—*i.e.*, her unpublished book manuscript.  (*See* BSF Reply at 1-3; BC Reply at 1-2).  These are the only allegations relevant to whether McGowan has properly pleaded the requisite "pattern of racketeering activity" to support her wire fraud-based RICO claims.  *Howard v. Am. Online*, 208 F.3d 741, 750 (9th Cir. 2000) (rejecting argument that a showing of closed-ended continuity can be based on "*all* allegations of improper activity in the complaint, not just the [racketeering activity]") (emphasis in original)).  McGowan therefore has not properly alleged a "pattern of racketeering activity" sufficient to sustain her RICO claims.

### 1.   McGowan Does Not Properly Allege "Closed-Ended Continuity"

McGowan tries to establish a pattern of racketeering based on only a single scheme (a purported plot to surreptitiously obtain information about her book prior to its publication), a single goal (stopping the publication of her book), and a single victim (McGowan herself).  Moreover, this purported wire fraud scheme involved only sporadic efforts by the defendants and spanned less than one year.[1]  As the

---

[1] Although McGowan asserts that the wire fraud scheme she alleges spanned 15 months and lasted until at least January 2018, the facts she includes in her Complaint say otherwise.  All of the alleged contacts between McGowan and the Black Cube personnel who purportedly

Ninth Circuit has recognized in a number of cases, there is no pattern of racketeering activity by virtue of "closed-ended continuity" when the plaintiff alleges merely a single scheme, with a single goal, and involving a single victim that takes place over a short period of time. *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (demonstrating a pattern of racketeering activity requires more than showing the existence of one scheme with a "single purpose which happen[s] to involve more than one act taken to achieve that purpose"); *Medallion Television Enterprise v. SelecTV of California, Inc.*, 833 F.2d 1360, 1362-64 (9th Cir. 1987) (finding that the plaintiff failed to establish RICO's pattern requirement when the case involved "a single alleged fraud with a single victim"); *Religious Tech. Ctr. v. Willersheim*, 971 F.2d 364, 366 (9th Cir. 1992) ("We have found no case in which a court has held the requirement [for closed-ended continuity] to be satisfied by a pattern of activity lasting less than a year."); *see also Jackson v. BellSouth Telecoms.*, 372 F.3d 1250, 1267 (11th Cir. 2004) ("[W]here the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer [than ninth months]"); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (holding that it is "virtually impossible" to show a pattern of racketeering activity for a "single scheme" with a "single injury" and a "few victims"); *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990) (holding that multiple predicate acts failed to show a pattern where the acts "constituted a single scheme to accomplish 'one

---

"defrauded" her took place intermittently between January 2017 and October 2017, and her last meeting with anyone from Black Cube allegedly occurred on September 22, 2017.  (Compl. ¶¶ 65-66, 72, 75-77, 97, 103-04, 107-110, 122).  Indeed, by early November 2017, Defendants' alleged efforts to deceive McGowan had been reported in an article published in *The New Yorker* which cited McGowan as a source (Compl. ¶¶ 123–24), and McGowan could not plausibly have been victimized by an ongoing fraud involving anyone associated with Black Cube attempting to deceive her by that point.  *See In re Well Point, Inc. Out-of Network UCR Rates Litigation*, 865 F. Supp. 2d 1002, 1038 (C.D. Cal. 2011) (recognizing that civil RICO claims based on mail or wire fraud require a showing of actual reliance).

**WEINSTEIN'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

discrete goal,' directed at one individual with no potential to extend to other persons").

McGowan has not asserted a RICO claim that threatens continued illegal acts due to the longevity and varied nature of the Defendants' past racketeering acts. Thus, McGowan has failed to plead a pattern of racketeering activity by virtue of closed-ended continuity.[2]

## 2. McGowan Does Not Properly Plead "Open-Ended Continuity"

McGowan also has not pleaded open-ended continuity – racketeering activity that "by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989). The only goal of the racketeering conduct McGowan alleges was obtaining "her unpublished *Brave* manuscript." (Compl. ¶ 137). This objective – stopping the publication of McGowan's book – faced a limited and finite timetable, and it became moot once McGowan published her book in January 2018. There can be no open-ended

---

[2] Although McGowan claims to cite authority supporting the idea she properly alleged closed-ended continuity, all of the cases she cites are readily distinguishable from her case because none involve, as this case does, a single scheme, employed to accomplish a single goal, involving a single victim, that features racketeering conduct spanning less than one year. *Socheat Chy v. Lam Sin Yam*, 2017 WL 10676596 * 9 (9th Cir. Nov. 7, 2017) (closed-ended continuity properly alleged where the plaintiff alleged the commission of numerous different violations of multiple federal laws over a 22-month period); *Kearney v. Foley & Lardner, LLP*, 607 Fed. Appx. 757 (9th Cir. 2015) (closed-ended continuity properly alleged where the plaintiff alleged predicate acts that occurred "consistently, without break" for more than two and one-half years); *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1526-27 (9th Cir. 1995) (recognizing that multiple plaintiffs claiming harm at the hands of multiple defendants could show closed-ended continuity where they alleged multiple bribes and kickbacks in violation of a number of state and federal laws over a period of no less than 13 months); *United Energy Owners Committee, Inc. v. United States Energy Management Systems, Inc.*, 837 F.2d 356, 361 (9th Cir. 1988) (closed-ended continuity properly alleged where the plaintiff alleged "multiple fraudulent acts involving multiple victims over more than one year"); *Sun Savings and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 194 (9th Cir. 1987) (recognizing that the predicate acts alleged "did pose a threat of continuing activity because they covered up a whole series of alleged kickbacks and receipts of favors, occurred over several months, and in no way completed the criminal scheme"); *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1469 (9th Cir. 1987) (closed-ended continuity properly alleged where the defendant made "multiple fraudulent sales" to "multiple victims").

1   continuity under these circumstances, where the alleged RICO predicate offense
2   relates to an event of only limited duration that cannot be repeated in the future.
3   *Turner v. Cook*, 362 F.3d 1219, 1230 (9th Cir. 2004) (no open-ended continuity
4   where objective of racketeering activity was "finite in nature" and would cease
5   when objective was achieved); *Steam Press Holdings, Inc. v. Hawaii Teamsters*,
6   302 F.3d 998, 1011 (9th Cir. 2002) (no open-ended continuity where RICO
7   predicate acts were limited to an event of finite duration).

8   **B.    McGowan Has Not Alleged That She Has RICO Standing**

9   Every one of the injuries that McGowan asserts, *see* Compl. ¶ 145, fails to
10  support her RICO standing.  Each of her asserted injuries is either admittedly
11  derivative of emotional injury, bears no plausible "direct relation" to the claimed
12  RICO violation, or both.  As McGowan acknowledges, even at the pleading stage,
13  a RICO plaintiff must assert concrete injuries to business or property and plausibly
14  articulate how each asserted injury "has a direct relation to" the claimed RICO
15  violation.  Opp. at 12 (quoting *Painters and Allied Trades Dist. Council 82 Health
16  Care Fund v. Takeda Pharm. Co.*, 943 F.3d 1243, 1251 (9th Cir. 2019), *cert. filed*,
17  No. 19-1069 (Feb. 26, 2020)).  McGowan has failed to do so.

18  Take, for example, the alleged "interruption and termination of McGowan's
19  relationships with commercial partners."   Compl. ¶ 145.   McGowan now
20  acknowledges that this asserted injury "result[ed]" from the "interruption of her
21  book tour," which she had planned to promote *Brave* upon its release.  Opposition
22  to Boies Defendants' Motion (Dkt. 51) ("Opp. to BSF Mot.") at 10.   In the
23  Complaint, McGowan admits that she decided to "cancel[] the tour" as a result of
24  "a mental breakdown."  Compl. ¶ 128.  That admission clarifies that any alleged
25  injuries resulting from the cancellation of McGowan's book tour resulted from her
26  emotional distress.  Such an injury is "not compensable under RICO."   *Diaz v.
27  Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc) (quoting *Doe v. Roe*, 958 F.2d
28  763, 770 (7th Cir. 1992)).

McGowan fares no better in pointing to the "fees and costs paid to [her] literary agents" and "decreased book sales." Compl. ¶ 145. McGowan has not offered any plausible theory of how she could have paid literary agents, or lost book sales, as a direct result of the claimed RICO violation: Defendants' alleged efforts to learn the contents of her book through deception. In fact, McGowan expressly admits that these injuries had a *different* cause: "the literary agents that she hired to promote her book . . . undermined her efforts" to promote it. Opp. to BSF Mot. at 10.

Nor has McGowan explained how the alleged RICO violation caused her to incur "legal fees and costs." Compl. ¶ 145. McGowan says that some of her legal costs were "associated with the criminal drug-possession case" against her. *Id.* The Court should not take seriously the allegation that Weinstein played some unspecified role in McGowan pleading no-contest to drug possession charges. *See id.* ¶¶ 59–62. But regardless, that allegation has nothing to do with the claimed RICO violation, which involved an alleged wire fraud aimed at learning the contents of McGowan's book.

Nor can McGowan point to legal fees and costs associated with Weinstein's alleged offer to pay her not to publish her book. *See id.* ¶¶ 113–14 (describing offer of payment); Opp. to BSF Mot. at 10 (asserting that some of McGowan's claimed legal fees arise from this offer of payment). Any such legal costs were not a direct result of Defendants' alleged fraudulent conduct. *Compare Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648 (9th Cir. 2019) (plaintiff's costs in responding to a sham administrative complaint resulted *directly* from the filing of the complaint, which was the RICO predicate).

Finally, McGowan cannot establish standing by pointing to "lost employment opportunities" and "commercial opportunities." Compl. ¶ 145. The only specific loss in this category that McGowan identifies is her "business relationship with Amazon studios." Opp. to BSF Mot. at 11. But McGowan's

allegations on this topic, *see* Compl. ¶¶ 42–44, have nothing to do with the alleged RICO violation. McGowan also claims she lost commercial opportunities because of Weinstein's alleged public relations efforts upon the release of her book. *See* Opp. at 12. McGowan has not pleaded sufficient facts to support standing on this theory. *See Harmoni*, 914 F.3d at 654 (explaining that RICO plaintiff failed to allege, "for example, the circumstances under which its customers learned of the defendants' false accusations and, in reliance on that false information, canceled purchases they were otherwise planning to make"). Regardless, any such lost commercial opportunities did not result directly from the RICO predicate in this case—Defendants' alleged acts in deceiving McGowan to obtain the contents of her book.

### C.   McGowan's ECPA Claim Is Incurably Deficient

As explained in Weinstein's motion to dismiss, McGowan's ECPA claim fails because (1) the only non-conclusory allegation she makes to support her ECPA claim is that Weinstein engaged Boies, who in turn hired Black Cube, which recorded communications between McGowan and its personnel, but there is no ECPA civil liability for procuring violations of the ECPA; and (2) McGowan fails to allege that the conversations, which were recorded by a party to those conversations, were made "for the purpose of facilitating some further impropriety, such as blackmail . . . ." *Sussman v. ABC, Inc.*, 186 F.3d 1200, 1202-03 (9th Cir. 1999) (emphasis added). Weinstein joins in and adopts the analysis and arguments set forth in the BSF Reply at 6-8, as they apply equally to all Defendants.

### D.   McGowan's State Law Fraud Claims Fail Because She Does Not Allege Compensable Damages Caused by the Alleged Fraud

"An allegation of a definite amount of damage is essential to stating a cause of action" for fraud. *Nagy v. Nagy*, 210 Cal. App. 3d 1262, 1268–69 (1989). "In addition, for a viable cause of action for fraud, the pleading must show a cause and

1    effect relationship between the fraud and damages sought, otherwise no cause of
2    action is stated." *Id.* at 1269.

3            In her fraud claims, as in her RICO claims, McGowan fails to articulate a
4    plausible theory of how she suffered a definite amount of damage as a direct result
5    of Defendants' alleged acts in deceiving her.  She alleges that she "had a mental
6    breakdown" upon learning of those acts (Compl. ¶ 128), but emotional damages
7    can be recovered in a fraud case "only as an aggravation of other damages." *Nagy*,
8    210 Cal. App. 3d at 1269.  McGowan also alleges that she was damaged by
9    Weinstein's efforts, on the day that *Brave* was released, to publicly dispute that he
10   sexually assaulted her.  Compl. ¶¶ 127–28.  Even if McGowan had adequately
11   pleaded that these efforts injured her, which she has not, her injuries are too
12   attenuated from the alleged fraud to be compensable.

13           **E.    McGowan's Bane Act Claim Fails**

14           For all of the reasons that other Defendants already explained, McGowan
15   fails to plead that she was the subject of "threat[s], intimidation, or coercion"
16   within the meaning of the Bane Act.  Cal. Civ. Code § 52.1(a); *see* BSF Reply at 9;
17   BC Reply at 7–8; Bloom Reply at 9–10.  Weinstein joins in and adopts the analysis
18   and arguments set forth therein, as they apply equally to all Defendants.
19   McGowan therefore fails to state a claim under the Bane Act against Weinstein.

20           Even if McGowan had stated a Bane Act claim, it is time-barred for the
21   same reasons previously discussed in connection with McGowan's IIED claim.
22   *See* Weinstein Mot. at 21.  A claim under the Bane Act, like a claim for IIED, is
23   subject to a two-year statute of limitations.  *See* Cal. Code Civ. Proc. § 335.1;
24   *Carter v. County of Alameda*, No. 08-cv-5349-PLH, 2008 WL 5234092, at *2
25   (N.D. Cal. Dec. 15, 2008).

26           **F.    McGowan's CDAFA Claim Fails**

27           To save her flawed CDAFA claim, McGowan's Opposition simply repeats,
28   albeit more briefly, the debunked arguments she made in opposition to the BSF

Motion to Dismiss. But, as the Motion to Dismiss and the other Defendants' Reply Briefs plainly show, McGowan's CDAFA claim fails for many reasons and her attempts to rescue it here fail just as they fail against the other pending Motions to Dismiss. *See* BSF Reply at 9-10; BC Reply at 8-9; Bloom Reply at 10-11. Weinstein joins in and adopts the analysis and arguments set forth therein. McGowan continues to promote an inverted reading of the statute; she continues to rely on a purely speculative allegation that Filip accessed the computer to "view or remove files," while acknowledging she has no factual support for this assertion; and she continues to attempt, without basis, to extend the reach of California criminal law to New York conduct. Opp. at 20. These arguments do not save her flawed claim.

## G.    McGowan's Conversion Claim Fails

McGowan argues that her conversion claim is based upon alleged "interference with exclusive possession" of her intangible property – her *Brave* manuscript. Opp. at 23. But it is not sufficient to allege that someone else *also* possessed a piece of intangible property, thereby interfering with McGowan's "exclusive possession." *Id.* Rather, to sustain a conversion claim based on intangible property, McGowan needed to allege interference with her *own* possession of a "specific thing," even if the thing is intangible. *Voris v. Lampert*, 7 Cal. 5th 1141, 1151 (2019). McGowan has not alleged any sort of "disposition of [her] property" by Defendants that interfered with her own right to possess it and do with it as she pleased. *Id.* Accordingly, she has failed to state a claim for conversion.

## H.    McGowan's Time-Barred IIED Claim Fails

Trying to save her time-barred IIED claim, McGowan repeats the debunked claim that she made in opposition to the BSF and Black Cube Motions to Dismiss, that she "first learned of the facts giving rise to her claims when *The New Yorker* published 'Harvey Weinstein's Army of Spies' in November 2017." Opp. at 23.

1    But as both the BSF and Black Cube replies show, that is not what McGowan

2    alleged in her Complaint and it is not true.  *See* BSF Reply at 11-12; BC Reply at

3    11-12.  Weinstein joins in and adopts the arguments set forth in those briefs.

4            In two carefully worded allegations, McGowan states that she learned of the

5    facts giving rise to her IIED claim "in connection with" *The New Yorker* article.

6    She clearly does not say she learned of the pertinent facts when the article was

7    published.  Compl. ¶¶ 123-24.  And that carefully worded allegation is consistent

8    with what the Black Cube reply shows—McGowan was interviewed as part of the

9    investigation for *The New Yorker* article, and that is when she learned the facts that

10   gave rise to her IIED claim, at the latest.  BC Reply at 11-12 & n.3.  McGowan's

11   attempt to argue around the carefully worded allegations in her Complaint cannot

12   turn what is a clear pleading defect into an issue of fact.  For McGowan to seek

13   refuge in the discovery rule, she must specifically plead facts to show the time and

14   manner of discovery of her IIED claim.  Weinstein Motion to Dismiss at 21.  She

15   did not do so, and so her claim fails as time-barred.

16   **IV.   CONCLUSION**

17           For the reasons set forth in his motion to dismiss and above, McGowan's

18   claims against Weinstein should be dismissed with prejudice.

19   DATED:  June 1, 2020            KUPFERSTEIN MANUEL LLP

20                                            By:  /S/ *Phyllis Kupferstein*

21                                                   Phyllis Kupferstein

22                                                   Attorneys for Defendant Harvey Weinstein