**O**

# United States District Court
# Central District of California

| | |
|---|---|
| ROSE MCGOWAN, | Case № 2:19-cv-09105-ODW (GJSx) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [34] [35] [43] [48]** |
| HARVEY WEINSTEIN et al., | |
| Defendants. | |

## I.   INTRODUCTION

Plaintiff Rose McGowan is an artist and activist who has starred in feature films and acclaimed television shows.  (Compl. ¶ 10, ECF No. 1.)  She has also gained recognition for her work in exposing sexual assault and harassment in the media industry.  (*Id.*)  Her published memoir, *Brave*, details how Defendant Harvey Weinstein raped McGowan many years ago.  (*Id.* ¶¶ 6, 17.)  This case concerns Defendants'[1] alleged efforts to prevent McGowan from publicly disclosing in *Brave* that Weinstein raped her.  (*Id.* ¶ 7.)

Presently before the Court are four motions to dismiss the Complaint (collectively, the "Motions") under Federal Rule of Civil Procedure ("Rule") 12(b)(6),

---

[1] "Defendants" include: Harvey Weinstein; Lisa Bloom; The Bloom Firm (together with Bloom, the "Bloom Defendants"); David Boies; Boies Schiller Flexner, LLP (together with Boies, the "Boies Defendants"); and B.C. Strategy Ltd d.b.a. Black Cube ("Black Cube").

filed respectively by: (1) the Bloom Defendants; (2) the Boies Defendants; (3) Black Cube; and (4) Weinstein.  (Bloom Defs.' Mot. Dismiss ("Bloom MTD"), ECF No. 34; Boies Defs.' Mot. Dismiss ("Boies MTD"), ECF No. 35; Black Cube's Mot. Dismiss ("Black Cube MTD"), ECF No. 43; Weinstein's Mot. Dismiss ("Weinstein MTD"), ECF No. 48.)   For the reasons that follow, the Motions are each **GRANTED IN PART** and **DENIED IN PART**.[2]

## II.  BACKGROUND

For purposes of these Rule 12(b)(6) Motions, the Court takes all of McGowan's well-pleaded allegations as true.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

### A.  Defendants' Interrelationship

For many years, Weinstein used his power in the movie industry to victimize vulnerable women, and Boies helped Weinstein protect his public image by working to kill negative stories and discredit Weinstein's victims.  (Compl. ¶¶ 20–26.)   In 2016, Weinstein learned that McGowan planned to expose him as her rapist in *Brave*, so he and Boies mobilized a "team of fixers" to foil her plan.  (*Id.* ¶¶ 7, 31–35.)

Black Cube is a private intelligence agency based in England, Israel, and Spain, that "provides intelligence and advisory services to clients internationally."  (*Id.* ¶ 16.)   On October 24, 2016, Weinstein and the Boies Defendants hired Black Cube "to identify the entities behind the negative campaign against [Weinstein] and support [Weinstein]'s efforts to put a stop to it," in exchange for $200,000 plus incentive bonuses if Black Cube succeeded in "putting a stop to the negative campaign." (*Id.* ¶¶ 36–39.)   On October 28, 2016, the Boies Defendants "sent Black Cube $100,000 by interstate wire transfer, as payment on the contract."  (*Id.* ¶ 40.)

Bloom is a well-known civil rights attorney and victims' advocate.  (*Id.* ¶ 48.)   The Bloom Defendants primarily represent women who accuse celebrities and other

---

[2] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

prominent men of sexual harassment and assault.  (*Id.* ¶ 49.)  In December 2016, Bloom "pitched her reputation-management services in a letter to [Weinstein]," outlining a plan to protect Weinstein's public image by, among other things, damaging McGowan's reputation.  (*Id.* ¶ 51.)  Following Bloom's pitch, in December 2016, Weinstein hired the Bloom Defendants to join the Boies Defendants in overseeing Black Cube's work.  (*Id.* ¶¶ 48, 53–54.)

On July 11, 2017, the Boies Defendants entered into a second contract with Black Cube, on Weinstein's behalf, to (1) help Weinstein "completely stop the publication of a new negative article in a leading NY newspaper," and (2) obtain additional content of *Brave*, which was then being written and included harmful negative information about Weinstein.  (*Id.* ¶¶ 99, 101.)  In that contract, Black Cube also "promised to devote a full-time agent by the name of Anna to the project for four months, as well as avatar operators, intelligence analysts, and others."  (*Id.* (internal quotation marks omitted).)

**B.    Defendants' Conduct Against McGowan**

The Complaint details a veritable multitude of efforts by Defendants to harm McGowan's reputation and business interests by influencing her and those she trusted. For instance:

- On January 20, 2017, McGowan noticed her wallet was missing after a flight to Washington, D.C.  (*Id.* ¶ 55.)  Although she did not possess drugs on the flight, she later received an anonymous message telling her that her wallet had been found on the plane with drugs inside of it.  (*Id.* ¶ 57.)  A warrant was issued for McGowan's arrest on drug-possession charges, and at the time, she argued that Weinstein may have caused the drugs to be planted in her wallet.  (*Id.* ¶ 59.)  After being formally indicted in June 2018, McGowan hired Jose Baez as defense counsel, who convinced her to drop the defense relating to Weinstein and to plead no contest.  (*Id.* ¶ 60.)

However, Baez was also Weinstein's attorney, and Weinstein had influenced the advice that Baez gave McGowan. (*Id.* ¶ 61.)

- In January 2017, McGowan's literary agent, Lacy Lynch, connected McGowan with Seth Freedman, a freelance journalist who claimed to be working on a story about men in Hollywood. (*Id.* ¶ 64.) When Freedman spoke to McGowan over the phone, many of his statements "seemed designed to intimidate her" against publicly exposing Weinstein. (*Id.* ¶¶ 64–66.) Freedman was being paid by Black Cube to obtain information about McGowan and her book, and he recorded their conversation without McGowan's consent. (*Id.* ¶ 67.) Freedman also contacted other journalists who were working on stories about Weinstein, in order to obtain information at Black Cube's direction. (*Id.* ¶ 68.)

- In March 2017, Lynch told McGowan that Bloom wanted an opportunity to convince McGowan that Weinstein was a changed man who wanted to make amends. (*Id.* ¶ 69.) McGowan declined to speak with Bloom. (*Id.*)

- On April 4, 2017, a Black Cube agent posing as "Diana Filip" contacted Lynch asking for an introduction to McGowan. (*Id.* ¶¶ 69–70, 73.) Filip claimed to work for a London-based investment firm that advocated for women's rights. (*Id.* ¶ 71.)

- On May 12, 2017, McGowan met Filip for the first time in Beverly Hills, California. (*Id.* ¶ 75.) Filip spoke with an accent, used a UK cell phone number, and offered McGowan $60,000 for a speaking event related to combating discrimination against women in the workplace. (*Id.*) Trusting Filip, McGowan read aloud to Filip excerpts from *Brave*, which McGowan had not shared with anyone else. (*Id.* ¶ 77.) The next morning, McGowan accepted Filip's invitation to meet for breakfast. (*Id.* ¶ 76.) McGowan brought her laptop with her, and Filip convinced McGowan to let her read an excerpt of *Brave* on the laptop. (*Id.* ¶ 77.) Unbeknownst to McGowan at the

time, Filip recorded their meetings and later shared the recorded information with Defendants. (*Id.* ¶ 78.)

- On July 19, 2017, McGowan met with Filip again, in New York. (*Id.* ¶ 103.) During that meeting, McGowan excused herself to the restroom several times, and Filip used this opportunity to steal a copy of *Brave* from McGowan's laptop. (*Id.*)

- In the spring and early summer of 2017, Defendants monitored journalists to ascertain what information they had obtained about McGowan and other Weinstein victims. (*Id.* ¶¶ 82–88, 96, 115.) Defendants tried to prevent media outlets from running the stories, and when those efforts proved unsuccessful, they tried to discredit McGowan as "crazy." (*Id.* ¶¶ 119, 127–28.)

- Through attorneys, Weinstein offered McGowan $1 million to drop publication of *Brave* and enter into a non-disclosure agreement with Weinstein. (*Id.* ¶ 113.)

- Throughout all of this, Defendants engaged in numerous conversations and meetings regarding Black Cube's progress in trying to obtain a copy of *Brave*. (*Id.* ¶¶ 90, 92, 94–95.) The unauthorized recordings and copy of the manuscript were shared with and reviewed by Weinstein, the Boies Defendants, and the Bloom Defendants. (*Id.* ¶¶ 98, 102, 112.)

**C.   McGowan's Discovery of Defendants' Conduct**

On November 6, 2017, *The New Yorker* published an article titled "Harvey Weinstein's Army of Spies" (the "Article"), which detailed the concerted efforts of Weinstein, the Boies Defendants, and Black Cube "to defraud [McGowan], use deception to steal portions of her book, and discredit and humiliate her." (*Id.* ¶ 123.) McGowan claims it was "only in connection with the [Article]" that she learned she had been recorded without her consent, or that Weinstein had stolen a copy of *Brave* with the Boies Defendants' and Black Cube's help. (*Id.* ¶ 124.) McGowan learned of

the Bloom Defendants' roles much later, in September 2019, when it was reported by *New York Times* journalists Megan Twohey and Jodi Kantor.  (*Id.* ¶ 125.)

**D.   McGowan's Claims**

Based on the above allegations, McGowan brings eleven claims against Defendants for: (1) civil violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (2) civil RICO conspiracy, 18 U.S.C. § 1962(d); (3) violation of the Federal Wiretap Act, 18 U.S.C. § 2520; (4) fraudulent deceit under California Civil Code section 1709; (5) common law fraud; (6) violation of California Civil Code section 52.1 ("Bane Act"); (7) invasion of privacy under article 1, section 1 of the California Constitution;[3] (8) computer crimes under California Penal Code section 502(e)(1) ("Computer Data Access and Fraud Act" or "CDAFA");[4] (9) conversion; (10) intentional infliction of emotional distress ("IIED"); and (11) negligent hiring and supervision.[5]   (*See* Compl. ¶¶ 133–225.) Defendants move to dismiss McGowan's claims under Rule 12(b)(6) for failure to state a claim.  (*See* Bloom MTD; Boies MTD; Black Cube MTD; Weinstein MTD.)

## III.    LEGAL STANDARD

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)"—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also* Fed. R. Civ. P. 8(a)(2).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The

---

[3] McGowan brings her seventh claim against only the Bloom Defendants.  (Compl. ¶¶ 181–88.)

[4] McGowan references "Cal. Civ. Code section 502(e)(1)" in the Complaint, but it is clear from the parties' briefs that she meant to reference section 502(e)(1) of the California Penal Code.

[5] McGowan brings her eleventh claim against only the Bloom Defendants and the Boies Defendants. (Compl. ¶¶ 214–25.)

"complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee*, 250 F.3d at 688 (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV.   DISCUSSION

Defendants move to dismiss all claims under Rule 12(b)(6) for failure to state a claim. The Court addresses each of McGowan's claims in turn.

### A.   Civil RICO, 18 U.S.C. § 1962(c) (Claim One)

McGowan brings her first claim under the civil RICO statute, 18 U.S.C. § 1962(c). (Compl. ¶¶ 133–45.) Defendants all move to dismiss this claim on

generally the same grounds, that McGowan (1) fails to allege a pattern of racketeering activity, and (2) lacks standing to assert her RICO claims. (Bloom MTD 7–12; Boies MTD 4–15; Black Cube MTD 5–9; Weinstein MTD 5–13.)[6]

"The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Brotherhood. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (quoting *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)). "'[R]acketeering activity' includes, *inter alia*, 'any act which is indictable' under the Hobbs Act, 18 U.S.C. § 1951, or 'any act or threat involving . . . extortion, . . . which is chargeable under State law.'" *Id.* (quoting 18 U.S.C. § 1961(1)(A), (B)).

"A 'pattern of racketeering activity' requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), within a period of ten years." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (quoting 18 U.S.C. § 1961(5)). Further, "the term pattern itself requires the showing of a relationship between the predicates, and of the threat of continuing activity. It is this factor of *continuity plus relationship* which combines to produce a pattern." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (citations, brackets, and internal quotation marks omitted) ("RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.").

"'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241–42 ("It is, in either case, centrally a

---

[6] The Bloom Defendants and Boies Defendants offer several other arguments for dismissing this claim. (*See* Bloom MTD 12–14; Boies MTD 14–15.) However, because Defendants' common arguments are dispositive, the Court need not reach these additional arguments and declines to do so.

temporal concept . . . ."). Because continuity can be either closed- or open-ended, it does not necessarily "require a showing that the defendants engaged in more than one 'scheme' or 'criminal episode.'" *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987). "The circumstances of the case, however, must suggest that the predicate acts are indicative of a threat [of] continuing activity." *Id.*

Here, before the Court can assess whether McGowan adequately alleges closed- or open-ended continuity, it must be noted that McGowan's Complaint contains broad, conclusory pattern allegations supported by narrow, specific facts. (*Compare* Compl. ¶ 135, *with id.* ¶¶ 137–39.) This juxtaposition has resulted in the parties arguing past each other, so to speak. On the one hand, Defendants argue that McGowan fails to allege closed-ended continuity because her allegations relate to a single scheme to defraud a single victim—namely, a scheme to obtain a copy of *Brave* that involved committing acts of wire fraud against McGowan. (Bloom MTD 8–9; Boies MTD 6–8; Black Cube MTD 7; Weinstein MTD 6–8.) Defendants further argue that McGowan fails to allege open-ended continuity because there is no threat of further activity, as the alleged enterprise's purpose became moot once *Brave* was published. (Bloom MTD 9; Boies MTD 8–9; Black Cube MTD 6–7; Weinstein MTD 8–9.) McGowan, on the other hand, maintains she alleges *both* closed- and open-ended continuity because what she alleges is a decades-long pattern of racketeering activity targeting countless victims. (Opp'n Bloom MTD 4, ECF No. 50; Opp'n Boies MTD 4–8, ECF No. 51; Opp'n Black Cube MTD 6–9, ECF No. 52; Opp'n Weinstein MTD 5–9, ECF No. 55.)

Thus, the Court must first determine what McGowan actually alleges to support her civil RICO claim. McGowan alleges Defendants were engaged in an enterprise with the broad, "common purpose . . . to protect [Weinstein]'s reputation, prevent negative public disclosures about him, and discredit those who might accuse him of wrongdoing or expose that wrongdoing." (Compl. ¶ 135.) She further alleges that

Defendants' enterprise "has existed . . . since no later than the late 1990s, has continued to the present, and will continue into the future until someone stops [them]. [The enterprise] has set its sights on countless victims . . . ." (*Id.*)  Notwithstanding these general allegations, McGowan unambiguously claims that Defendants engaged in "a pattern of racketeering activity and for the unlawful purpose of defrauding [McGowan] and other victims and obtaining property, namely, McGowan's unpublished *Brave* manuscript.  The pattern of racketeering activity here is based on numerous instances of wire fraud . . . ." (*Id.* ¶ 137.)  And notably, every alleged predicate act of wire fraud identified in the Complaint was committed between October 28, 2016, and October 23, 2017, in furtherance of a scheme to discredit McGowan and/or stop her from exposing Weinstein in *Brave*.  (*See id.* ¶¶ 141(a)–(x).)

McGowan's allegations that Defendants' enterprise "has set its sights on countless victims, including but not limited to [McGowan], Ashley Judd, Ambra Battilana Gutierrez, Ronan Farrow, Ben Wallace, Jodi Kantor, and Megan Twohey," are conclusory.  (*See id.* ¶ 135.)  And as previously mentioned, the Court need not accept merely conclusory allegations as true.  *Sprewell*, 266 F.3d at 988.  Nevertheless, the many other factual allegations in the seventy-two-page Complaint clearly set forth a more-narrow pattern and scheme: to obtain a copy of McGowan's then-forthcoming book via a series of wire frauds and deceit, with the ultimate goal of protecting Weinstein's public image.  (*See id.* ¶¶ 141(a)–(x)).  Thus, here, the Court assesses the sufficiency of McGowan's pattern allegations based only on the well-pleaded facts—namely, the twenty-four instances of alleged wire fraud identified in her first cause of action.

### 1. *Closed-Ended Continuity*

Closed-ended continuity is established by "a series of related predicates extending over a substantial period of time."  *H.J. Inc.*, 492 U.S. at 242.  When determining whether a plaintiff adequately alleges a pattern of activity with closed-ended continuity, courts in this Circuit often consider: "(1) the number and

variety of predicate acts; (2) the presence of separate schemes; (3) the number of victims; and (4) the occurrence of distinct injuries." *NSI Tech. Servs. Corp. v. Nat'l Aeronautics & Space Admin.*, No. 95-20559 SW, 1996 WL 263646, at *3 (N.D. Cal. Apr. 13, 1996) (citing cases); *see also, e.g.*, *Stewart Title Guar. Co. v. 2485 Calle Del Oro, LLC*, No. 15-cv-2288-BAS-WVG, 2018 WL 3222610, at *17 (S.D. Cal. June 19, 2018). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc.*, 492 U.S. at 242. But in any event, "the mere passage of time does not necessarily indicate the existence of a closed-ended pattern." *Richardson v. Reliance Nat'l Indem. Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *9 (N.D. Cal. Mar. 9, 2000).

Significantly, "a single alleged fraud with a single victim" does not constitute a closed-ended pattern of racketeering activity. *Medallion Television Enters.*, 833 F.2d at 1364 (affirming summary judgment for defendant where the alleged predicate acts included "wire fraud, in the form of telephone calls . . . and mail fraud and interstate transportation of stolen property" but did not amount to a closed-ended pattern); *accord NSI Tech. Servs. Corp.*, 1996 WL 263646, at *3 ("A single plan with a singular purpose and effect does not constitute a [closed-ended] 'pattern' of racketeering activity."); *Buran Equip. Co., Inc. v. Hydro Elec. Constructors, Inc.*, 656 F. Supp. 864, 866 (N.D. Cal. 1987) ("It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a 'pattern of racketeering activity.'").

Here, Defendants argue that McGowan fails to allege closed-ended continuity because her allegations reflect only a singular plan and purpose—to prevent McGowan from speaking out about Weinstein and publishing *Brave*. (Bloom MTD 8; Boies MTD 6–8; Black Cube MTD 7; Weinstein MTD 6–8.) For reasons already discussed above, the Court agrees. Though the Complaint sets out a long and winding story of fraud and deceit, it is marked with guideposts leaving no question that the

allegations relate to a singular plan and purpose regarding McGowan and her book. For instance, the section headers in the Complaint clearly concern McGowan as they are entitled: "The rape"; "David Boies: [Weinstein]'s enabler"; "[McGowan] speaks out"; "Hiring [Black Cube]"; "[McGowan]'s script and early efforts to record [McGowan]"; "[Lisa Bloom] and [The Bloom Firm] join the conspiracy"; "[Weinstein] seeks to discredit [McGowan]"; "The conspirators' efforts to obtain information and to pressure [McGowan] not to publish her book"; "The news articles are published"; "Backlash and blacklisting"; and "Impact on [McGowan]." (*See* Compl.)

McGowan nevertheless contends that "[t]here is simply no requirement that a RICO claim must allege multiple fraudulent schemes in order to show continuity of conduct." (Opp'n Weinstein MTD 8 (citing cases).) Although it is true that "[e]vidence of multiple schemes is not required to show a threat of continued criminal activity," *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004), that is mostly because a threat of continued criminal activity can also be shown by evidence of *open-ended* criminal conduct, *see H.J. Inc.*, 492 U.S. at 240–41.

For the purposes of determining *closed-ended* continuity, Defendants' arguments are persuasive. Defendants' scheme as alleged in the Complaint had a single victim and a single goal—to protect Weinstein's reputation by silencing and/or discrediting McGowan via wire fraud. (*See* Compl. ¶ 138.) "That [D]efendants used several different tactics to achieve their single goal does not turn [D]efendants' scheme into one with multiple goals and/or victims, and does not mandate a finding of [closed-ended] continuity sufficient to support a RICO claim." *Richardson*, 2000 WL 284211, at *9 (alterations omitted) (quoting *Pier Connection, Inc. v. Lakhani*, 907 F. Supp. 72, 78 (S.D.N.Y. 1995)). Thus, the Court finds that McGowan fails to allege a closed-ended pattern of racketeering activity.

### 2. Open-Ended Continuity

As to open-ended continuity, Defendants argue that the alleged scheme—to prevent McGowan from publishing *Brave*—presents no risk of future criminal conduct because it was finite in nature and became moot when *Brave* was published. (Bloom MTD 9; Boies MTD 8–9; Black Cube MTD 6–7; Weinstein MTD 8–9.)  The Court agrees.

Open-ended continuity requires "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241; *see also Turner*, 362 F.3d at 1229 (emphasis added) ("[P]roof of a single scheme can be sufficient *so long as the predicate acts involved are not isolated* or sporadic.").  "A plaintiff cannot demonstrate open-ended continuity if the racketeering activity has a built-in ending point." *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 319 (4th Cir. 2010) (internal quotation marks omitted) (collecting cases).  This is so "even if the purported scheme takes several years to unfold, involves a variety of criminal acts, and targets more than one victim." *Gamboa v. Velez*, 457 F.3d 703, 709 (7th Cir. 2006) (collecting cases).

Here, McGowan contends that "[w]hile [Defendants'] conduct may now have stopped with Weinstein's conviction and incarceration, the caselaw makes clear that interruption of ongoing conduct does not undermine open-ended continuity."[7]  (Opp'n Black Cube MTD 7 (citing *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1530 (9th Cir. 1995)).)  To be sure, fortuitous interruption of racketeering conduct does not preclude a finding of open-ended continuity, but the relevant question here is whether Defendants would pose a risk of continued criminal activity if presented with the opportunity in the future. *See Allwaste*, 65 F.3d at 1529–30 (explaining that fortuitous interruption does not preclude a finding of open-ended continuity if, "[e]xamining the

---

[7] McGowan also attempts to rely on her general allegations that Weinstein and Boies had been working together to silence victims since 2001.  (*See, e.g.*, Opp'n Black Cube MTD 7).  But as explained above, such conclusory allegations do not establish a RICO pattern because the Court need not accept merely conclusory allegations as true. *Sprewell*, 266 F.3d at 988.

1  totality of the circumstances, . . . the manner in which the predicate acts occurred
2  could recur indefinitely whenever the defendant [has a reason to repeat crimes]."
3  (citing *United States v. Busacca*, 936 F.2d 232, 238 (6th Cir. 1991))).

4  In this case, Defendants operated with a singular goal, to protect Weinstein's
5  reputation by stopping the publication of *Brave* and attempting to discredit
6  McGowan.[8]  (*See* Compl. ¶¶ 137–38.)  The Bloom Defendants articulate it differently,
7  arguing that "the goal of the racketeering activity was to defraud [McGowan] and
8  obtain a copy of her unpublished manuscript, both of which goals the Complaint
9  alleges were achieved."  (Bloom MTD 9.)  Ultimately, it matters not whether
10 Defendants failed in their goal of protecting Weinstein's reputation or succeeded in
11 their goal of fraudulently obtaining a copy of *Brave*, as in either case the Court finds
12 no risk that "the manner in which the predicate acts occurred could recur indefinitely."
13 *See Allwaste*, 65 F.3d at 1529–30.  Neither of Defendants' purported goals—keeping
14 Weinstein's misconduct secret from the public or obtaining a copy of *Brave* before it
15 was published—could be pursued anew.  For these reasons, the Court finds that
16 McGowan also fails to allege a racketeering pattern with open-ended continuity.

17 In short, McGowan's RICO claim fails because she has not alleged facts that
18 show either a closed- or open-ended pattern of racketeering activity.  The Court
19 cannot say, however, that *any* amendment would be futile.  *See Manzarek*, 519 F.3d
20 at 1031.  Thus, McGowan's first claim is **DISMISSED with leave to amend**.

21 **B.    Civil RICO Conspiracy, 18 U.S.C. § 1962(d) (Claim Two)**

22 Because McGowan fails to plead the elements of a substantive RICO offense,
23 her RICO conspiracy claim under 18 U.S.C. § 1962(d) fails as well.  *See Howard v.*
24 *Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("[T]he failure to adequately
25 plead a substantive violation of RICO precludes a claim for conspiracy.").  Thus,
26 McGowan's second claim is also **DISMISSED with leave to amend**.

---

27 [8] Defendants arguably failed in that goal, as McGowan acknowledges Weinstein has been convicted
28 and incarcerated for the very conduct that Defendants tried to keep secret from the public.  (*See*
Opp'n Black Cube MTD 7.)

**C.      Wiretap Act, 18 U.S.C. § 2520 (Claim Three)**

With her third claim, McGowan alleges Defendants violated the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511(1)(a), (c), and (d), when they recorded McGowan and shared and used the recordings without her consent. (Compl. ¶¶ 150–51.)   Defendants argue this claim should be dismissed because the recordings were made by a person who was party to the communication, and McGowan fails to establish that the recordings were created for the purpose of committing a criminal or tortious act.[9]   (Bloom MTD 17; Boies MTD 17–18; Black Cube MTD 10–11; Weinstein MTD 15–16.)   The Court agrees.

The ECPA creates liability for:

[A]ny person who--

> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
>
> [. . .]
>
> (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; [or]
>
> (d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection[.]

18 U.S.C. § 2511(1); *see also* 18 U.S.C. §§ 2520, 2707.

---

[9] The Bloom Defendants, the Boies Defendants, and Weinstein also argue that the ECPA does not create secondary liability.   (*See* Bloom MTD 16–17; Boies MTD 16–17; Weinstein MTD 14–15.) However, because McGowan's ECPA claim fails on other grounds, the Court need not reach this question and declines to do so.

Significantly, though, the ECPA also clarifies:

> It shall not be unlawful . . . for a person . . . to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act[.]

18 U.S.C. § 2511(2)(d).   Under this provision, "the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious."   *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999).   "Where the taping is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, [§] 2511 applies.   Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere."   *Id.* at 1202–03.

Here, McGowan argues that Defendants simply ignore her many "specific allegations about the [D]efendants' illegal and tortious acts."   (Opp'n Black Cube MTD 13;  *see also*  Opp'n Bloom MTD 14–15;  Opp'n Boies MTD 15–16;  Opp'n Weinstein MTD 16–17.)   But in her Complaint, McGowan merely asserts that "Defendants [recorded McGowan] with the purpose and intent of committing criminal and tortious acts, including the acts described in other counts of this Complaint." (Compl. ¶ 154.)   Aside from this conclusory statement, McGowan's Complaint does not set forth any allegations that Defendants intended to or did blackmail, intimidate, or commit any tortious act against McGowan *with* the recordings that Black Cube created.   Rather, McGowan's allegations are, in essence, that Defendants committed various tortious acts for the ultimate purpose of preserving Weinstein's public reputation.   (*See* Compl. ¶ 7.)   As the Ninth Circuit explained in *Sussman*, McGowan cannot seek redress for such claims through the ECPA.   186 F.3d at 1202–03.

For these reasons, the Court concludes that McGowan fails to state a claim under the ECPA.   The Court cannot say, however, that *any* amendment would be

futile.  *See Manzarek*, 519 F.3d at 1031.   Accordingly, McGowan's third claim is **DISMISSED with leave to amend**.

**D.      Fraud (Claims Four & Five)**

With her fourth and fifth claims, McGowan alleges fraudulent deceit under California Civil Code section 1709 and common law fraud, respectively.  (Compl. ¶¶ 156–73.)  The Bloom Defendants, the Boies Defendants, and Weinstein argue that the fraud claims should be dismissed against them because Black Cube committed the alleged acts, not them.  (Bloom MTD 18–19; Boies MTD 19; Weinstein MTD 17.) And all Defendants move to dismiss the fraud claims on grounds that McGowan fails to articulate a plausible theory of concrete damages caused by Black Cube's deceit. (Bloom MTD 20;  Boies MTD 18–19;  Black Cube MTD 12–14;  Weinstein MTD 16–17.)  But Defendants' arguments are untenable.

***1.     Vicarious Liability***

First, McGowan sufficiently alleges a plausible theory under which the Bloom Defendants, the Boies Defendants, and Weinstein are vicariously liable for the fraud perpetrated by Black Cube's agents.   "A principal or employer who is not at fault directly for the tortious conduct of his employee or agent in the commission of a fraud may become liable in any event."  *Clark Equip. Co. v. Wheat*, 92 Cal. App. 3d 503, 521 (1979) ("[C]ases do not always distinguish between the agency theories of actual or ostensible authority and the tort doctrine of respondeat superior.").    Here, McGowan alleges that Weinstein and the Boies Defendants hired Black Cube on October 24, 2016.  (*Id.* ¶ 36.)  And she alleges Weinstein hired the Bloom Defendants in December 2016 to join the Boies Defendants in overseeing Black Cube's work. (*Id.*  ¶¶ 48,  53–54.)    She also alleges that Defendants engaged in numerous conversations and meetings regarding Black Cube's progress in trying to obtain a copy of *Brave*, and that the unauthorized recordings and copy of the manuscript were shared with Weinstein, the Boies Defendants, and the Bloom Defendants for their review.  (*Id.* ¶¶ 90, 92, 94–95, 98, 102, 112.)  Thus, taking McGowan's allegations as

true, the Court finds that McGowan adequately alleges a theory of vicarious liability for Black Cube's fraud.

### 2.    *Concrete Damages*

Second, McGowan sufficiently pleads concrete damages caused by Defendants' fraud.  Under Rule 9(b), each element of fraud must be pleaded with particularity.  *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).   The elements of both statutory and common law fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996).  The last element, resulting damage, requires "a complete causal relationship between the fraud or deceit and the plaintiff's damages."  *City Sols., Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 840 (9th Cir. 2004) (brackets omitted).  And in California, a plaintiff "must suffer actual monetary loss to recover on a fraud claim."  *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995); *accord Abbot v. Stevens*, 133 Cal. App. 2d 242, 247 (1955) ("Fraudulent representations which work no damage cannot give rise to an action at law, and an allegation of a definite amount of damage is essential to stating a cause of action." (internal citation omitted)).

Here, McGowan alleges that because of Defendants' actions, she "ended up revealing sensitive information that prepared Defendants to discredit and malign her publicly, undermining her book, commercial projects, and reputation, causing her damages." (Compl. ¶ 164.)  More specifically, she claims:

> Defendants' conduct . . . caused her concrete economic losses, including interruption and termination of [McGowan]'s relationships with commercial partners; fees and costs paid to [McGowan]'s literary agents; [and] legal fees and costs associated with the criminal drug-possession case[.]  [A]nd with [Weinstein]'s efforts to prevent *Brave*'s publication[:] decreased book sales; lost employment opportunities; lost commercial opportunities including film, television, book, and other media projects; and harm to [McGowan]'s business reputation.  Defendants' conduct has

also severely affected [McGowan]'s mental health, relationships, and living conditions.  She sold her home in Hollywood to pay fees and costs associated with recovering from the trauma Defendants caused . . . .

(Compl. ¶ 131.)  Based on these allegations, the Court finds that McGowan adequately alleges she suffered concrete damages as a result of Defendants' fraudulent conduct.

The Court has considered the remainder of Defendants' arguments with respect to McGowan's fraud claims and finds them unpersuasive.  Accordingly, Defendants' requests to dismiss McGowan's fourth and fifth claims for fraud are **DENIED**.

**E.     Bane Act (Claim Six)**

With her sixth claim brought under the Bane Act, McGowan alleges that Defendants coerced her into sharing details about her unpublished manuscript of *Brave*, thereby interfering with her right of privacy.  (Compl. ¶¶ 174–80.)  Defendants argue that McGowan's Bane Act claim must be dismissed because she fails to allege the element of coercion.  (*See* Reply ISO Bloom MTD ("Bloom Reply") 9–10, ECF No. 54; Reply ISO Boies MTD ("Boies Reply") 9, ECF No. 53; Reply ISO Black Cube MTD ("Black Cube Reply") 7–8, ECF No. 56; Reply ISO Weinstein MTD ("Weinstein Reply") 8, ECF No. 60.)  On this point, Defendants are correct.

The Bane Act was enacted to address hate crimes; it "civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out '*by threats, intimidation, or coercion.*'"  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (emphasis added) (quoting *Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230, 1238 (2007)).  A plaintiff that asserts a Bane Act claim must allege both a constitutional violation and a specific intent to violate the plaintiff's constitutional right.  *Id.* at 1043.

Here, McGowan alleges a theory of *deception* while calling it *coercion*, but the two concepts are distinct.  Black's Law Dictionary defines "deception" as "[t]he act of deliberately causing someone to believe that something is true when the actor knows it to be false."  *Deception*, Black's Law Dictionary (11th ed. 2019).  Coercion, on the

other hand, is defined as "[c]ompulsion of a free agent by physical, moral, or economic force or threat of physical force." *Coercion*, Black's Law Dictionary (11th ed. 2019).  In this case, McGowan alleges many things, but she does not allege that Defendants *coerced* her into handing over a copy of her unpublished manuscript, nor does she allege that Defendants obtained a copy through threat or intimidation.  Thus, McGowan fails to state a claim under the Bane Act.  The Court cannot say, however, that *any* amendment would be futile.  *See Manzarek*, 519 F.3d at 1031.  Accordingly, McGowan sixth claim under the Bane Act is **DISMISSED with leave to amend**.

**F.    Invasion of Privacy (Claim Seven)**

McGowan's seventh claim is for invasion of privacy under article 1, section 1 of the California Constitution.  (*See* Compl. ¶ 182.)  Specifically, McGowan seeks to hold the Bloom Defendants vicariously liable for Black Cube's invasion of her right to privacy over her unpublished manuscript of *Brave*.  (*Id.* ¶¶ 185–88.)  The Bloom Defendants move to dismiss this claim as barred by a one-year statute of limitations for invasion of privacy claims.[10]  (Bloom MTD 21.)  McGowan argues the statute of limitations has not run with respect to the Bloom Defendants because she did not discover their conduct until September 2019.  (Opp'n Bloom MTD 24–25.)

"The right to privacy in the California Constitution sets standards similar to the common law tort of intrusion."  *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009).  A plaintiff asserting a claim under this provision must: (1) "possess a legally protected privacy interest"; (2) have expectations of privacy that are reasonable; and (3) "show that the intrusion is so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms."  *Id.* (internal quotation marks omitted) (collecting cases).  These principles are similarly reflected in the common law tort of intrusion, which requires a showing that the defendant (1) "penetrated some zone of physical or sensory privacy . . . or obtained unwanted

---

[10] The Bloom Defendants offer additional arguments for dismissing this claim.  (*See* Bloom MTD 21; Opp'n Bloom MTD 19–20.)  However, because McGowan's invasion of privacy claim is time-barred, the Court need not reach these additional arguments and declines to do so.

access to data by electronic or other covert means, in violation of the law or social norms"; and (2) did so in a manner that is "highly offensive" to a reasonable person. *Id.* (internal quotation marks omitted) (collecting cases); *see also Shulman v. Grp. W. Prods., Inc.*, 18 Cal. 4th 200, 232 (1998).

Courts have applied "[a] one-year statute of limitations . . . to claims related to a violation of the California Constitutional right to privacy." *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1104 (C.D. Cal. 2009).[11]  "Generally speaking, a cause of action accrues at the time when the cause of action is complete with all of its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) (internal quotation marks omitted).  "An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id.* at 807.  For the discovery rule to apply, "a plaintiff whose complaint shows on its face that h[er] claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808 (brackets and internal quotation marks omitted).

Here, McGowan alleges that various acts of privacy invasion took place on May 12, 2017, May 13, 2017, and July 19, 2017—over two years before she filed her Complaint.  (*See* Compl. ¶¶ 75–78, 103.)  McGowan also states that she "did not learn about [Bloom]'s role until approximately September 2019, when *New York Times* journalists Megan Twohey and Jodi Kantor reported about [Bloom]'s relationship with [Weinstein] and her mission to harm [McGowan]."  (Compl. ¶ 125.)  But this allegation, on its own, is insufficient to invoke the discovery rule.  Even assuming

---

[11] The Ninth Circuit appears to have indicated, however, that the applicable statute of limitations is now two years, under California Civil Procedure Code section 335.1.  *See Quan v. Smithkline Beecham Corp.*, 149 F. App'x 668, 670 (9th Cir. 2005) (indicating that the applicable statute of limitations changed from one year to two years in 2003).  Regardless, a two-year statute of limitations would not affect the Court's disposition on this claim, so the Court need not address the issue further.

McGowan sufficiently alleges the time and manner in which she discovered the Bloom Defendants' conduct, she fails to allege her inability to have discovered the conduct prior to September 2019 despite reasonable diligence.

As previously explained, "[a] plaintiff seeking to utilize the discovery rule must plead facts to show his or her inability to have discovered the necessary information earlier despite reasonable diligence." *Fox*, 35 Cal. 4th at 815. McGowan claims that paragraphs 67, 78, 111, and 123–24 of the Complaint "detail[] why she had no reason to suspect that she had been targeted any earlier" than when she "discover[ed] the torts at issue [in] November of 2017 when *The New Yorker* published the facts." (*See* Opp'n Bloom MTD 24–25). But those cited paragraphs in the Complaint only set forth, at best, why McGowan could not have discovered Defendants' tortious conduct before November 2017; they are not enough to toll the statute of limitations under the discovery rule until September 2019.

In short, McGowan's invasion of privacy claim is barred by the applicable statute of limitations, and McGowan fails to allege facts sufficient to warrant tolling of the statute under the discovery rule. The Court cannot say, however, that *any* amendment would be futile. *See Manzarek*, 519 F.3d at 1031. Consequently, McGowan's seventh claim for invasion of privacy is **DISMISSED with leave to amend**.

## G.    CDAFA, California Penal Code Sections 502(c)(1), (e)(1) (Claim Eight)

With her eighth claim, McGowan alleges that Defendants gained unauthorized access to her laptop to obtain a copy of her unpublished manuscript, as part of a scheme to defraud and deceive her, in violation of the CDAFA. (Compl. ¶¶ 189–97.) Defendants contend this claim should be dismissed because McGowan fails to allege an actionable intrusion under section 502(c)(1), which requires altering, damaging, deleting, or destroying computer data.[12] (Black Cube MTD 17; Boies MTD 21 n.14;

---

[12] Defendants offer several additional arguments for dismissing this claim. (*See* Bloom MTD 22; Boies MTD 21–22; Black Cube MTD 17–18; Weinstein MTD 19.) However, because McGowan

Bloom Reply 10–11; Weinstein Reply 9.)    In opposition, McGowan argues that "taking . . . data and transforming it in order to undermine . . . [her] use of the data to publish her book," as Defendants did here, falls within section 502(c)(1)'s catch-all language creating liability for one who "otherwise uses" data for improper means. (Opp'n Black Cube MTD 19; *see also* Opp'n Bloom MTD 21–22; Opp'n Boies MTD 20; Opp'n Weinstein MTD 20.)  Examination of the relevant statutory language, however, reveals that McGowan overly strains the meaning of the phrase "otherwise uses."  *See* Cal. Penal Code § 502(c)(1).

In general, the CDAFA "prohibits unauthorized access to computers, computer systems, and computer networks, and provides for a civil remedy in the form of compensatory damages, injunctive relief, and other equitable relief."  *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1032 (N.D. Cal. 2014) (citing Cal. Penal Code § 502) ("[It] is an anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose.").    Sections 502(c)(1) and (e)(1), under which McGowan brings her claim, together create a private right of action against any person who "[k]nowingly accesses and without permission alters, damages, deletes, destroys, or *otherwise uses* any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data."    Cal. Penal Code § 502(c)(1) (emphasis added); *see also id.* § 502(e)(1) (creating a private right of action for violations of section 502(c)).

Here, McGowan's CDAFA claim fails because it rests entirely on section 502(c)(1),[13] which "require[s] that the Defendants have altered, damaged,

---

fails to allege conduct in violation of section 502(c)(1), the Court need not reach these additional arguments and declines to do so.

[13] In her Opposition to Black Cube's motion, McGowan suggests that her CDAFA claim against Black Cube is premised on violations of sections 502(c)(1), (c)(2), and (c)(7), even though she only explicitly cites section 502(c)(1).  (Opp'n Black Cube MTD 18.)  However, it is difficult to identify the allegations to which McGowan is referring, and she unambiguously represents in her other three Opposition briefs that "[s]he relies on Section 502(c)(1), which imposes liability for conduct that

deleted, or destroyed the data in some way." *Ticketmaster L.L.C. v. Prestige Ent. West, Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018).  As Defendants note, in *Ticketmaster*, this Court expressly declined to "read the phrase 'or otherwise uses' in section 502(c)(1) as prohibiting anything other than use that is similar to alteration, damage, deletion, or destruction." *Id.* at 1175 n.5 (applying the doctrine of ejusdem generis, which instructs that "when a list of two or more specific terms is followed by a more general term, the otherwise wide meaning of the general term must be restricted to the same class of the specific terms that precede it").

McGowan does not challenge this general approach to interpreting section 502(c)(1); rather, she contends that "taking . . . data and transforming it in order to undermine . . . [her] use of the data to publish her book" *is* akin to altering, damaging, deleting, or destroying data insofar as it constitutes an "injury to th[e] data in some way or another."  (Opp'n Black Cube MTD 19.)  But this argument is unconvincing.  The gravamen of McGowan's claim is that Black Cube looked at and took a digital copy of her unpublished manuscript without authority to do so, in order to bolster Defendants' strategy for protecting Weinstein's public reputation in whatever ways they could with the information.  (*See* Compl. ¶¶ 194–95.)  Based on this alleged conduct, it would require a serious linguistic strain to say Defendants altered, damaged, deleted, or destroyed McGowan's unpublished manuscript, as viewing and copying are categorically distinct from altering and destroying.

Moreover, "[w]hen interpreting a statute, words and phrases must not be read in isolation, but with an eye toward the 'purpose and context of the statute.'"  *United States v. Petri*, 731 F.3d 833, 839 (9th Cir. 2013) (quoting *Dolan v. U.S. Postal Serv.*,

---

occurs as part of a scheme to defraud."  (Opp'n Bloom MTD 21; Opp'n Boies MTD 19; Opp'n Weinstein MTD 20.)  Thus, the Court interprets McGowan's CDAFA claim as it is written, brought under only section 502(c)(1).  To the extent McGowan brings her CDAFA under other provisions within section 502(c), the Court finds that the claim lacks a "short and plain statement" to that effect and, consequently, does not meet the "minimal notice pleading requirements of Rule 8(a)(2)."  *See Porter*, 319 F.3d at 483.

546 U.S. 481, 486 (2006)).   As McGowan herself notes, although section 502(c)(1) concerns only the altering, deleting, or destroying of data, "the very next section of the [CDAFA] describes other proscribed 'uses'—the taking, copying, or making use of computer data."  (Opp'n Black Cube MTD 19 (quoting Cal. Penal Code § 502(c)(2)).)  McGowan contends that the Court should therefore interpret the phrase "otherwise uses" as incorporating into section 502(c)(1) the conduct proscribed in section 502(c)(2).  (*See id.*)  But to do so would be a mistake, as such an interpretation of "otherwise uses" would effectively render section 502(c)(2) redundant.  *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 643 (9th Cir. 2012) ("It is a cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant." (internal quotation marks omitted)).

For these reasons, the Court concludes that McGowan fails to allege Defendants are liable under California Penal Code section 502(c)(1) or any other section of the CDAFA.  The Court cannot say, however, that *any* amendment would be futile.  *See Manzarek*, 519 F.3d at 1031.   Accordingly, McGowan's eighth claim under the CDAFA is **DISMISSED with leave to amend**.

## H.    Conversion (Claim Nine)

With her ninth claim, McGowan alleges Defendants are liable for conversion because they "planned to and did implement a scheme to obtain as much of *Brave* as possible before the book was published, causing interference with [McGowan]'s possession of the confidential manuscript."  (Compl. ¶ 200.)  Defendants move to dismiss on grounds that (1) McGowan fails to allege a complete dispossession of the manuscript; and (2) her claim is preempted by the Copyright Act.  (*See* Bloom MTD 22–23; Boies MTD 22–23; Black Cube MTD 19–21; Weinstein MTD 19–21.)  In opposition, McGowan argues that (1) intangible property can be subject to conversion even if it can be duplicated; and (2) a conversion claim does not require her to have been completely dispossessed of her copy of *Brave*.  (*See* Opp'n Bloom MTD 22;  Opp'n  Boies  MTD 20–23;  Opp'n  Black  Cube  MTD 20–22;  Opp'n

Weinstein MTD 20–23.)   McGowan also clarifies that "her claim is not that Black Cube stole her manuscript and did not leave her a copy.  Her claim is that Black Cube stole a copy of much of her manuscript—and was apparently paid handsomely for that theft—thereby disturbing and disrupting her sole possession of *Brave*."  (Opp'n Black Cube MTD 20.)

"Conversion is the wrongful exercise of dominion over the property of another.  The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  *Hodges v. Cnty. of Placer*, 41 Cal. App. 5th 537, 551 (2019).  That said, a claim for conversion is preempted by the Copyright Act if (1) the rights asserted under state law "are equivalent to those protected by the Copyright Act"; and (2) the work involved "fall[s] within the subject matter of the Copyright Act."  *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 791 (2003) (internal quotation marks omitted).  Consequently, "where a plaintiff is only seeking damages from a defendant's *reproduction* of a work—and not the actual return of a physical piece of property—the claim is preempted."  *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1130 (N.D. Cal. 2001) (emphasis added); *accord Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996) ("Generally, the copying and distribution of literary intangible property does not state a claim for conversion.").

Here, McGowan acknowledges that a claim for mere "unsanctioned copying" would be preempted by the Copyright Act, but she argues that her claim "includes an 'extra element' that makes the asserted right qualitatively different from those protected under the Copyright Act."  (*See* Opp'n Black Cube MTD 21.)  The Court disagrees.  Under the Copyright Act, "the owner of a copyright . . . has the exclusive rights . . . (1) to *reproduce* the copyrighted work . . . [and] (3) to *distribute* copies . . . of the copyrighted work . . . ."  17 U.S.C. § 106 (emphases added).  Despite McGowan's attempt to articulate her claim as one of conversion, the essence of her

claim is that Defendants made an unlawful reproduction of her manuscript of *Brave* and interfered with her right to be the only person in possession of a copy. (*See* Compl. ¶¶ 199–201.) In other words, Defendants violated McGowan's exclusive rights to decide whether a copy could be created or to whom such a copy could be distributed—"the essence of a claim for copyright infringement." *See Firoozye*, 153 F. Supp. 2d at 1130.

Beyond Defendants' unauthorized reproduction and distribution, McGowan fails to allege a theory of conversion because she merely alleges that Defendants "obtain[ed]" a copy of *Brave*. (*See* Compl. ¶ 200.) "Where property is capable of being copied, wrongful possession of copies does not typically give rise to a conversion claim if the rightful owner retains possession of the original or retains access to other copies." *Jurisearch Holdings, LLC v. Lawriter, LLC*, No. CV 08-03068 MMM (VBKx), 2009 WL 10670588, at *7 (C.D. Cal. Apr. 13, 2009). "The reason for this rule is that the possession of *copies* of documents—as opposed to the documents themselves—does not amount to an interference with the owner's property sufficient to constitute conversion." *Id.* (emphasis added) (quoting *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 304 (7th Cir. 1990) (applying California law)). "In cases where the alleged converter has only a copy of the owner's property and the owner still possesses the property itself, the owner is in no way being deprived of the use of h[er] property." *Id.* Here, the only possessory interest McGowan asserts is her "right to possession of her *Brave* manuscript." (Compl. ¶ 199.) Based on the facts alleged, Defendants did not deprive McGowan of possession over her own copy of *Brave*. (*See* Opp'n Black Cube MTD 20 ("Her claim is not that Black Cube stole her manuscript and did not leave her a copy.").) Thus, she fails to state any claim for conversion of any property interests beyond those which are preempted by the Copyright Act—i.e., the right to reproduce or distribute her work.

In sum, "to the extent that [McGowan]'s conversion claim is based on rights in the [manuscript] as intangible property, it is either preempted by the Copyright Act or

fails as a matter of law because it is based on an insufficiently defined interest." *See Jurisearch*, 2009 WL 10670588, at *6. The Court cannot say, however, that *any* amendment would be futile. *See Manzarek*, 519 F.3d at 1031. Consequently, McGowan's ninth claim is **DISMISSED with leave to amend**.

## I.    IIED (Claim Ten)

McGowan's tenth claim for IIED alleges Defendants "psychologically manipulated [McGowan] to their advantage" by lying to her and abusing her trust for the purpose of protecting Weinstein's reputation. (Compl. ¶ 204.) Defendants move to dismiss this claim because it is barred by the applicable two-year statute of limitations, and McGowan fails to allege a basis for tolling the accrual of her claim.[14] (Bloom MTD 24; Boies MTD 23–24; Black Cube MTD 23; Weinstein MTD 21.) Defendants are correct.

A plaintiff alleging IIED must show: "(i) outrageous conduct by defendant, (ii) an intention by defendant to cause, or reckless disregard of the probability of causing, emotional distress, (iii) severe emotional distress, and (iv) an actual and proximate causal link between the tortious conduct and the emotional distress." *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 300 (1988). "Intentional infliction of emotional distress has a two-year statute of limitations." *Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*, 24 Cal. App. 5th 825, 852–53 (2018). "A cause of action for [IIED] accrues, and the statute of limitations begins to run, once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant." *Id.* at 853. And as discussed in Part IV(F), *supra*, the discovery rule tolls the running of the statute of limitations if the plaintiff "specifically plead[s] facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808 (internal quotation marks omitted).

---

[14] The Bloom Defendants and Black Cube offer several other arguments for dismissing this claim. (*See* Bloom MTD 23; Black Cube MTD 22.) Because the Court finds that McGowan's IIED claim is time-barred, it need not reach these additional arguments and declines to do so.

Here, McGowan filed her Complaint on October 23, 2019.  As McGowan's IIED claim relies on actions that occurred before October 23, 2017, her claim is untimely on its face.  (*See generally* Compl.)  McGowan attempts to save her claim by asserting that she discovered the Bloom Defendants' conduct around September 2019 and the other Defendants' conduct in November 2017.  (*See id.* ¶¶ 123–25.)  Because two different discovery dates are at issue here, the Court addresses them separately.

### 1.   *Discovery of Weinstein, Black Cube, and the Boies Defendants' Conduct*

McGowan argues with respect to Weinstein, Black Cube, and the Boies Defendants: "Paragraphs 123 and 124 of the Complaint . . . mak[e] clear that McGowan first learned of the facts giving rise to her claims when *The New Yorker* published [the Article] in November 2017."  (Opp'n Weinstein MTD 23; *see also* Opp'n Bloom MTD 24–25; Opp'n Boies MTD 23; Opp'n Black Cube MTD 24.)  Defendants point out, however, that (1) paragraphs 123 and 124 of the Complaint do not specify how or when "in connection with" the Article McGowan learned of Defendants' conduct; and (2) McGowan cannot have first discovered Defendants' conduct from reading the Article because the Article itself quotes McGowan discussing Defendants' conduct.  (*See* Boies Reply 11–12; Black Cube Reply 10–12; Weinstein Reply 9–10.)

Defendants' arguments are persuasive.   McGowan claims that "the first occasion that McGowan discovered . . . her causes of action against any of the defendants" was when the Article was published on November 6, 2017.  (Opp'n Weinstein MTD 23–24; Opp'n Black Cube MTD 24; Opp'n Boies MTD 23.)  But Black Cube replies, "It is obvious from the [A]rticle itself that McGowan did not learn the relevant facts when *The New Yorker* published the [A]rticle . . . .  The [A]rticle explains that its author spoke with McGowan about the relevant facts *before* the [A]rticle was published."  (Black Cube Reply 11 (internal quotation marks omitted) (citing Ronan Farrow, *Harvey Weinstein's Army of Spies*, THE NEW YORKER (Nov. 6,

2017)[15] ("When I sent McGowan photos of the Black Cube agent, she recognized her instantly. 'Oh my God,' [McGowan] wrote back. 'Reuben Capital. Diana Filip. No [expletive] way.'")); *see also* Boies Reply 11–12; Weinstein Reply 9–10.)

"Certain written instruments attached to pleadings may be considered part of the pleading." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing Fed. R. Civ. P. 10(c)). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* "[T]he district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*

In this case, McGowan's Complaint extensively refers to the Article in connection with when she first discovered Defendants' conduct (*see* Compl. ¶¶ 123–24); thus, the Court deems the Article incorporated by reference. Moreover, because the Article clearly shows McGowan learned of Defendants' conduct prior to the Article's publication, McGowan "cannot plead contradictory facts to toll the statute of limitations." *Knoell v. Petrovich*, 76 Cal. App. 4th 164, 169 (1999). The Court therefore finds that McGowan fails to allege the time or manner in which she discovered the tortious conduct of Weinstein, Black Cube, and the Boies Defendants.

### 2.     *Discovery of the Bloom Defendants' Conduct*

As discussed in Part IV(F), *supra*, McGowan alleges that she first learned of Bloom's conduct in approximately September 2019, when it was reported by two *New York Times* journalists. (*See* Compl. ¶ 125.) However, even assuming this allegation sufficiently specifies the time and manner in which McGowan discovered the Bloom Defendants' tortious acts, McGowan fails to "plead facts to show . . . her inability to have discovered the necessary information earlier despite reasonable diligence." *Fox*, 35 Cal. 4th at 815. Thus, for the same reasons detailed in Part IV(F), *supra*, the Court

---

[15] The Article is available online at https://www.newyorker.com/news/news-desk/harvey-weinsteins-army-of-spies.

1    finds McGowan fails to allege facts sufficient to invoke the discovery rule for her
2    IIED claim against the Bloom Defendants.

3        In short, the Court finds that McGowan's IIED claim is barred as to all
4    Defendants by the applicable two-year statute of limitations, and McGowan fails to
5    allege facts sufficient to warrant any tolling of the statute under the discovery rule.
6    The Court cannot say, however, that *any* amendment would be futile. *See Manzarek*,
7    519 F.3d at 1031.   Consequently, McGowan's tenth claim for IIED is **DISMISSED**
8    **with leave to amend**.

9    **J.    Negligent Hiring and Supervision (Claim Eleven)**

10       Lastly, McGowan asserts a claim for negligent hiring and supervision against
11   the Boies Defendants and the Bloom Defendants for their hiring and supervision of
12   Black Cube.    (Compl. ¶¶ 214–25.)    These Defendants argue that McGowan's
13   negligent hiring and supervision claim is subject to the same two-year statute of
14   limitations that bars McGowan's IIED claim.[16]    (Bloom MTD 25; Boies MTD 24
15   n.16.)  Defendants are correct.

16       The applicable statute of limitations for McGowan's negligent hiring and
17   supervision claim is indeed two years.   *Kaldis v. Wells Fargo Bank, N.A.*, 263 F.
18   Supp. 3d 856, 867 (C.D. Cal. 2017) (citing Cal. Civ. Proc. Code § 335.1).   As
19   McGowan filed her Complaint on October 23, 2019, any claim that accrued before
20   October 23, 2017, "cannot form the basis of either her IIED claim or her negligence
21   claim." *See id.*  Furthermore, for the same reasons set forth in Part IV(I), *supra*, the
22   Court finds McGowan fails to allege facts sufficient to toll the running of the statute
23   of limitations.  Similarly, the Court cannot say that *any* amendment would be futile.
24   *See Manzarek*, 519 F.3d at 1031.   Accordingly, McGowan's eleventh claim for
25   negligent hiring and supervision is also **DISMISSED with leave to amend**.

26

27   ───────────────────
     [16] The Bloom Defendants and Boies Defendants offer several other arguments for dismissing this
28   claim.  (*See* Bloom MTD 24; Boies MTD 24–25.)  However, because McGowan's negligence claim
     is time-barred, the Court need not reach these additional arguments and declines to do so.

## V.    CONCLUSION

For the reasons discussed above, Defendants' Motions are **DENIED in part**, insofar as they seek to dismiss McGowan's fourth (fraudulent deceit) and fifth (common law fraud) claims.   The Motions are **GRANTED in part** as to the rest of McGowan's claims, which are **DISMISSED with leave to amend**.   If McGowan chooses to file a First Amended Complaint, she must do so no later than **twenty-one (21) days** from the date of this Order.   If McGowan files a First Amended Complaint, Defendants must file their response(s) in accordance with Rule 15(a)(3).

**IT IS SO ORDERED.**

December 7, 2020

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**