**ZUCKERMAN SPAEDER LLP**
CATHERINE S. DUVAL *(Admitted Pro Hac Vice)*
cduval@zuckerman.com
EZRA B. MARCUS *(Admitted Pro Hac Vice)*
emarcus@zuckerman.com
ARIELLA E. MULLER (*Pro Hac Application to be filed*)
1800 M Street NW, Suite 1000
Washington, DC 20036-5807
Telephone:   (202) 778-1800
Facsimile:    (202) 822-8106

**WINSTON & STRAWN LLP**
KATHERINE B. FARKAS (State Bar No. 234924)
kfarkas@winston.com
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071
Telephone: (213) 615-1700
Facsimile:  (213) 615-1750

Attorneys for Defendant B.C. Strategy
Ltd. d/b/a Black Cube

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ROSE MCGOWAN, | CASE NO. 2:19-cv-09105-ODW-JPR |
| Plaintiff, | The Hon. Otis D. Wright II |
| v. | **DEFENDANT B.C. STRATEGY LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |
| HARVEY WEINSTEIN, DAVID BOIES, BOIES SCHILLER FLEXNER LLP, LISA BLOOM, THE BLOOM FIRM, B.C. STRATEGIES LTD. D/B/A BLACK CUBE, | *[Proposed Order Submitted Concurrently Herewith]* |
| Defendants. | Date:   June 14, 2021<br>Time:   1:30 p.m.<br>Place:   Courtroom 5D |
| | Trial Date:        None Set |

### NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 14, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Otis D. Wright II, located at 350 West 1st Street, Los Angeles, California 90012, Defendant B.C. Strategy Ltd. d/b/a Black Cube ("Black Cube") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1367(c)(3), for an order dismissing each cause of action asserted against Black Cube in the instant action. As set forth in detail in the attached Memorandum, this Motion is made on the following grounds:

1.     Plaintiff Rose McGowan fails to state a claim for violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961, *et seq.* McGowan fails to allege facts that could constitute a pattern of racketeering activity or that could establish a RICO conspiracy. McGowan also fails to plead facts sufficient to establish that she has been injured in her business or property by reason of any RICO violation;

2.     If the Court dismisses McGowan's RICO claims, then it should dismiss the entire case under 28 U.S.C. § 1367(c)(3) and decline to exercise supplemental jurisdiction over McGowan's remaining state claims;

3.     McGowan has not pleaded an unlawful computer "access" under the Computer Data Access and Fraud Act ("CDAFA"), California Penal Code § 502, nor has she pleaded that she suffered the requisite damage or loss by reason of a CDAFA violation; and

4.     McGowan fails to plead the elements of intentional infliction of emotional distress, including extreme and outrageous conduct, and any claim for intentional infliction of emotional distress is time-barred.

This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the proposed order submitted herewith; the

pleadings on file herein; all matters of which this Court may take judicial notice; and such further evidence and argument as may be presented at the hearing on this Motion.

### Statement of Local Rule 7-3 Compliance

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on March 12, 2021. Counsel for Plaintiff stated that Plaintiff would oppose this motion.

DATED: March 23, 2021          Respectfully submitted,


By:      */s/ Katherine B. Farkas*

Katherine B. Farkas
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071

Catherine S. Duval
Ezra B. Marcus
Ariella E. Muller
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036-5807

*Attorneys for Defendant B.C. Strategy Ltd. d/b/a Black Cube*

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT .............................................................................1

SUMMARY OF ALLEGATIONS IN THE COMPLAINT ......................................2

LEGAL STANDARD .........................................................................................4

ARGUMENT ....................................................................................................5

I.      McGowan's Complaint Should Be Dismissed in its Entirety..........................5

        A.      McGowan Fails to State a Civil RICO Claim. ........................................5

                1.      McGowan has not alleged a
                        "pattern of racketeering activity." ..............................................6

                2.      McGowan has not alleged economic injury
                        "by reason of a [RICO] violation."..............................................9

        B.      The Court Should Decline to Exercise Supplemental Jurisdiction
                Over McGowan's Remaining State Law Claims...................................12

II.     If the Court Exercises Supplemental Jurisdiction Over McGowan's
        Remaining State Claims, They Should Be Dismissed with Prejudice............13

        A.      McGowan Fails to State a Claim Under CDAFA. ...............................13

        B.      McGowan Fails to State a Claim for Intentional Infliction of
                Emotional Distress. ..................................................................16

CONCLUSION.................................................................................................21

# TABLE OF AUTHORITIES

**CASES**

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................4

*Canyon Cty. v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008). .........................................................................9

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992).........................................................................................14

*Creel v. I.C.E. & Assocs.*,
   771 N.E.2d 1276 (Ind. Ct. App. 2002) ........................................................20

*Diaz v. Gates*,
   420 F.3d 897 (9th Cir. 2005) (en banc) .........................................................9

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004). .......................................................................4

*Facebook, Inc. v. Power Ventures, Inc.*,
   No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010)....................14

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
   492 U.S. 229 (1989).................................................................................5, 6, 8

*Harmoni v. Int'l Spice, Inc. v. Hume*,
   914 F.3d 648 (9th Cir. 2019). .................................................................10, 11

*Howard v. America Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ....................................................................8, 12

*Hughes v. Pair*,
   46 Cal. 4th 1035 (2009). ................................................................................19

*Jennings v. Auto Meter Prods., Inc.*,
   495 F.3d 466 (7th Cir. 2007) ..........................................................................8

*Jolly v. Eli Lilly & Co.*,
   44 Cal. 3d 1103 (1988). ..................................................................................16

*Kaldis v. Wells Fargo Bank, N.A.*,
   263 F. Supp. 3d 856 (C.D. Cal. 2017) .........................................................16

*Karczewski v. DCH Mission Valley LLC*,
    862 F.3d 1006 (9th Cir. 2017). .................................................................. 2

*Kearney v. Foley & Lardner, LLP*,
    747 F. App'x 478 (9th Cir. 2018) .............................................................. 9

*Lateral Link Grp., LLC v. Springut*,
    No. CV14-5696-JAK, 2015 WL 12778396 (C.D. Cal. Sept. 22, 2015) .............. 14

*McMahon v. Craig*,
    176 Cal. App. 4th 1502 (2009) ............................................................... 19

*Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*,
    833 F.2d 1360 (9th Cir. 1987). ............................................................... 7

*Mintz v. Mark Bartelstein and Assocs., Inc.*,
    906 F. Supp. 2d 1017 (C.D. Cal. 2012) ................................................... 14

*Munoz v. Shorter*,
    No. 2:18-cv-9054-ODW, 2019 WL 6310265 (C.D. Cal. Nov. 25, 2019) ............ 12

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
    696 F.3d 849 (9th Cir. 2012). ................................................................. 4

*Norgart v. Upjohn Co.*,
    21 Cal. 4th 383 (1999) .......................................................................... 17

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ..................................................... 15

*Ouderkirk v. People for Ethical Treatment of Animals, Inc.*,
    No. 05-10111, 2007 WL 1035093 (E.D. Mich. Mar. 29, 2007) ...................... 19

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*,
    214 F. Supp. 3d 808 (N.D. Cal. 2016)...................................................... 11

*Plumlee v. Pfizer, Inc.*,
    664 F. App'x 651  (9th Cir. 2016) ........................................................... 16

*Prime Partners IPA of Temecula Inc. v. Chaudhuri*,
    No. 5:11-cv-1860-ODW, 2012 WL 1669726 (C.D. Cal. May 14, 2012) .............. 8

*Religious Technology Center v. Wollersheim*,
    971 F.2d 364 (9th Cir. 1992) .................................................................. 8

*Rosenblatt v. City of Santa Monica*,
    No. 2:16-CV-04481-ODW, 2017 WL 2909404 (C.D. Cal. May 24, 2017),
    *aff'd*, 940 F.3d 439 (9th Cir. 2019) .......................................................................12

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) ..................................................................5, 12

*Stissi v. Bag Fund, LLC*,
    No. 5:17-cv-534-ODW, 2018 WL 354611 (C.D. Cal. Jan. 10, 2018) .................12

*Ticketmaster L.L.C. v. Prestige Entm't West, Inc.*,
    315 F. Supp. 3d 1147 (C.D. Cal. 2018) ................................................14

*Turner v. Cook*,
    362 F.3d 1219 (9th Cir. 2004) ..........................................................6, 8

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003). ..........................................................18

**STATUTES**

18 U.S.C. § 1962...............................................................................5, 6, 12

18 U.S.C. § 1964(c). ..........................................................................6, 9

28 U.S.C. § 1367(c)(3) ....................................................................1, 5, 12

California Penal Code § 502 ...........................................................13, 14

Organized Crime Control Act of 1970 (RICO),
    Pub. L. No. 91-452, 84 Stat. 922, 923 (1970). ....................................5

**RULES**

Federal Rule of Civil Procedure 9(b) ......................................................4

Federal Rule of Civil Procedure 12(b)(6).................................................4

**OTHER AUTHORITIES**

Ronan Farrow, *Catch and Kill* (Little, Brown & Co. 2019). ....................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

This Court previously dismissed nine of Plaintiff Rose McGowan's eleven claims, including seven of the nine claims alleged against Defendant B.C. Strategy Ltd. ("Black Cube"). McGowan has attempted to replead several of her claims, but her Amended Complaint fails to cure the deficiencies that this Court identified in its dismissal order.

Particularly with respect to her claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), McGowan continues to rely on inadequate allegations regarding the same individuals, the same alleged scheme, the same purposes, and over the same time period as in her original complaint. Just as in her original complaint, McGowan alleges that, for more than twenty years, Defendant Harvey Weinstein used his network of powerful enablers to discredit McGowan and derail her career. *See, e.g.*, Am. Compl. ("Compl."), ECF 69, ¶ 156. But just as before, there is a jarring mismatch between this alleged decades-long campaign of misconduct, power, and influence; the harms that McGowan says resulted; and the conduct for which she seeks to hold Black Cube legally responsible.

The conduct alleged in the Complaint, even accepted as true, does not support any of the legal claims that McGowan attempts to allege against Black Cube. McGowan's RICO claims fail because the Complaint does not allege a pattern of racketeering activity, nor does it identify any harm to her "business or property" that could have been proximately caused by Black Cube's investigation. If the Court dismisses McGowan's RICO claims, no federal claims would remain in the case, and the Court should decline to exercise supplemental jurisdiction over the remaining state claims and dismiss the Complaint in its entirety. *See* 28 U.S.C. § 1367(c)(3).

If the Court decides to exercise supplemental jurisdiction over McGowan's remaining state claims, it should dismiss them with prejudice. McGowan's claim

under California's computer crimes statute fails because she never alleges a prohibited "access" of her computer, nor has she alleged any injury that could have been proximately caused by a computer intrusion. Finally, none of Black Cube's alleged conduct supports a claim for intentional infliction of emotional distress ("IIED"), and even if McGowan had stated an IIED claim, it is barred by the statute of limitations.

The Complaint should be dismissed in its entirety.

## SUMMARY OF ALLEGATIONS IN THE COMPLAINT

For purposes of this Motion only, Black Cube "[a]ccept[s] the allegations in the complaint as true, as we must" at this stage. *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1008 (9th Cir. 2017).

McGowan alleges that she was raped by Defendant Weinstein in 1997. Compl. ¶ 17. In the years since, McGowan claims that a network of power brokers collaborated to protect Weinstein's reputation against accusations of sexual misconduct made by her and other victims. *Id.* ¶¶ 21–22, 67.

The Complaint is packed with vivid allegations about how this network operated to the detriment of McGowan's career and reputation: Weinstein caused Amazon Studios to purchase the rights to a script from McGowan and kill it, *id.* ¶¶ 62–64; the *National Enquirer* regularly helped to suppress negative news stories about Weinstein, including about sexual assault, and in 2016 enticed someone to make damaging comments about McGowan, which it secretly recorded, *id.* ¶¶ 65–66; Weinstein enlisted Lisa Bloom to help "destroy McGowan's [reputation]," *id.* ¶ 71; Weinstein caused McGowan to be arrested for possessing drugs, influenced her criminal-defense counsel to plead no contest, and used the drug charges to publicly discredit her, *id.* ¶¶ 75–82; Weinstein, David Boies, and others pressured NBC not to air reporting by Ronan Farrow, *id.* ¶ 107; Weinstein secretly worked with McGowan's literary agents without her knowledge, *id.* ¶ 110; and Weinstein, Lisa Bloom, and

others sought to discredit McGowan to reporters who were about to publish negative news stories about him, *id.* ¶ 138.

McGowan dubs this sprawling network the "Weinstein Protection Enterprise," and asserts that its activities have caused her a litany of losses, including "fees and costs paid to [her] literary agents; legal fees and costs associated with the criminal drug-possession case and with Weinstein's efforts to prevent *Brave*'s publication; decreased book sales; lost employment opportunities; lost commercial opportunities including film, television, book, and other media projects; and harm to [her] business reputation." *Id.* ¶¶ 152, 156.  The vast majority of McGowan's allegations about Weinstein's network of enablers have nothing to do with Black Cube, and many of them are not asserted as a basis for McGowan's claims against any of the Defendants in this case.

The allegations McGowan makes about Black Cube relate to its alleged work gathering information about her book in advance of its publication.  In October 2016, Weinstein's attorneys at Boies Schiller Flexner LLP ("BSF"), including David Boies, allegedly hired Black Cube on Weinstein's behalf.  *Id.* ¶ 46.  Weinstein, BSF, and Black Cube executed an initial engagement agreement in October 2016 and a second agreement in July 2017.  *Id.*  ¶¶ 46, 118.  Although McGowan alleges that Black Cube's engagement "had nothing to do with litigation or anticipated litigation," *id.*, in fact both agreements expressly called for litigation support services, and the second agreement set a specific objective for Black Cube to obtain McGowan's book in "legally admissible format."  *Id.* ¶ 119.

Over several months in 2017, McGowan alleges that she was contacted intermittently by individuals working for Black Cube.  Specifically, in January 2017 McGowan took a call from a British reporter named Seth Freedman, who allegedly had been engaged "to get information about McGowan and her book."  *Id.* ¶ 87.  McGowan did not know the true purpose of Freedman's call.  *Id.*  Later in 2017, McGowan allegedly met several times with a woman who falsely identified herself as

Diana Filip, a representative of a London-based private wealth management firm.  *Id.* ¶ 89–97, 122, 127, 129.  During two meetings in May, McGowan and Filip both read portions of McGowan's book manuscript from her laptop.  *Id.* ¶ 96.  Filip allegedly conveyed the contents of McGowan's draft book to Weinstein, BSF, and Bloom.  *Id.* ¶ 97.

During the time period that Black Cube was conducting its investigation, McGowan alleges that Weinstein and various of his "agents" sought to publicly discredit her and to malign her to reporters.  *See, e.g.*, *id.* ¶¶ 137–38.  McGowan never alleges that Black Cube participated in these activities; her factual allegations about Black Cube are limited to gathering information about her forthcoming book in its role as an investigator.

McGowan's Complaint now contains eight causes of action, of which six are directed at Black Cube: two RICO claims based on alleged wire fraud (Counts I & II), statutory and common law fraud claims (Counts III & IV), a claim under the California Computer Data Access and Fraud Act (Count VI), and a claim for IIED (Count VII).  These claims each should be dismissed.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The facts alleged in the complaint, accepted as true, must "plausibly establish[] each element" of the plaintiff's claims. *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012).

Under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must plead the elements of her claims "with particularity."  Rule 9(b)'s heightened pleading standard applies to civil RICO fraud claims.  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004).

**ARGUMENT**

**I.    McGowan's Complaint Should Be Dismissed in its Entirety.**

The Court should dismiss McGowan's RICO claims with prejudice.  If the RICO claims are dismissed, no federal claims would then remain, and because there is no diversity of citizenship among the parties, there would be no basis for the Court's original jurisdiction.  The Court should decline to exercise supplemental jurisdiction over any remaining state claims and dismiss the Complaint in its entirety.  28 U.S.C. § 1367(c)(3).

**A.    McGowan Fails to State a Civil RICO Claim.**

Congress enacted RICO in 1970 "to seek the eradication of organized crime in the United States."  Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922, 923 (1970).  The statute's applications all involve situations where criminal acts are a "regular way" of conducting a business.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 243, 245 (1989).  Under the provisions of RICO that McGowan has invoked, it is unlawful "to conduct . . . [an] enterprise's affairs through a pattern of racketeering activity" (Count I), or "to conspire" to do so (Count II).  18 U.S.C. § 1962(c)–(d).  "To state a claim under [these provisions], a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) (citation omitted).

This Court previously dismissed McGowan's Civil RICO claims because she failed to allege a continuous "pattern" of racketeering activity.  *See* Dismissal Op., ECF 66, at 14.  McGowan's Amended Complaint fares no better: regarding the RICO claims, it alleges essentially the same facts involving the same players over the same time period.  Just as before, McGowan has failed to plead the sort of "*continuing* racketeering activity*" that is necessary for a successful RICO claim.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989).  In addition, McGowan has failed to allege

that she was "injured in her business or property by reason of" a RICO violation so as to support RICO standing.  18 U.S.C. § 1964(c).

### 1.  McGowan has not alleged a "pattern of racketeering activity."

The Amended Complaint misleadingly describes McGowan's RICO claims as though they arise from a sprawling "Weinstein Protection Enterprise" that allegedly operated for decades with "countless victims." Compl. ¶ 156.  But as with the original Complaint, the real thrust of the alleged RICO claims is actually much narrower, focusing only on limited sporadic activity that spanned less than a year, with McGowan as the only victim.  Because McGowan's allegations again "reflect only a singular plan and purpose," Dismissal Op. at 11, she has failed to allege a pattern of racketeering activity.

A focused effort of less than a year, with a fixed end point, is not a "pattern" of racketeering activity.  18 U.S.C. § 1962(c).  Establishing a "pattern" under RICO requires showing that predicate criminal acts "amount to, or . . . otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc.*, 492 U.S. at 240 (emphasis in original).  A RICO plaintiff must show either predicate criminal activity that "by its nature projects into the future with a threat of repetition" ("open-ended" continuity), or "a series of related predicates extending over a substantial period of time" ("closed-ended" continuity). *Id.* at 241–42.

There can be no "open-ended" continuity here because (a) the objective of the alleged wire fraud was necessarily time-limited and (b) there is no plausible threat of ongoing racketeering activity.  *See Turner v. Cook*, 362 F.3d 1219, 1230 (9th Cir. 2004) (finding no open-ended continuity where alleged objective of collecting an outstanding judgment was "finite in nature" and "would cease once appellees collected" the judgment).  As the Court observed regarding the original Complaint, "[n]either of Defendants' purported goals—keeping Weinstein's misconduct secret from the public or obtaining a copy of *Brave* before it was published—could be

1    pursued anew." Dismissal Op. at 14. Nothing in the Amended Complaint gives

2    reason to conclude any differently.

3         Nor has McGowan alleged "closed-ended" continuity. Just as in the original

4    Complaint, McGowan has alleged at most "a single alleged fraud with a single

5    victim." Dismissal Op. at 11 (quoting *Medallion Television Enters., Inc. v. SelecTV*

6    *of Cal., Inc.*, 833 F.2d 1360, 1364 (9th Cir. 1987)). Although McGowan attempted

7    to identify additional victims, none of her new allegations points to any conceivable

8    victim of the scheme alleged in the Complaint other than herself. For example,

9    McGowan has added new allegations of an incident in 2015 involving an Italian

10   model named Ambra Gutierrez, Compl. ¶¶ 30–35, during which Weinstein and Boies

11   allegedly "communicate[d] by wire to further the aims of their racketeering

12   enterprise." Compl. ¶ 35. But although McGowan identifies Gutierrez as a victim of

13   a sexual assault by Weinstein, she never identifies Gutierrez as a victim of *fraud—*

14   the RICO predicate on which her claim relies. *See* Compl. ¶ 158.

15        McGowan also fails in her attempt to identify various reporters as victims of

16   Defendants' supposed scheme. *See* Compl. ¶ 158 (alleging that scheme sought to

17   obtain not only McGowan's book, but also "intellectual property contained within

18   various newspapers and magazines"). The facts that McGowan alleges related to

19   reporters make clear that none of them was a victim: reporter Ben Wallace "stopped

20   taking . . . calls" from one alleged Black Cube agent, Compl. ¶ 52, and "halted [his]

21   conversations" with another, Compl. ¶ 54, without revealing any confidential

22   information. Reporter Ronan Farrow likewise "declined to give details of his work"

23   in a conversation with an alleged Black Cube agent. Compl. ¶ 58. Even if these

24   reporters *had* become victims of fraud, at most McGowan still has alleged only "a

25   single fraudulent effort, implemented by several fraudulent acts," which does not

26   amount to a pattern of racketeering activity. Dismissal Op. at 11 (citation omitted).

27        McGowan also has not alleged "closed-ended continuity" because the supposed

28   scheme that she identified was too short in duration and too sporadic to constitute a

"pattern" under RICO. "Congress was concerned in RICO with long-term criminal conduct," and so "[p]redicate acts extending over a few weeks or months" will not suffice. *Id.* Although "there is no strict one-year rule," *Howard v. Am. Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000), the Ninth Circuit "ha[s] found no case in which a court has held the requirement to be satisfied by a pattern of activity lasting less than a year." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366–67 (9th Cir. 1992); *see also id.* at 366 (holding that six-month period was insufficient and citing Third Circuit case holding that eight-month period was insufficient); *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 474 (7th Cir. 2007) (ten-month period involving only a few predicate acts was too short); *Prime Partners IPA of Temecula Inc. v. Chaudhuri*, No. 5:11-cv-1860-ODW, 2012 WL 1669726, at *7 n.4 (C.D. Cal. May 14, 2012) (finding no closed-ended continuity where "neither of the criminal schemes [p]laintiffs allege[d] lasted more than a year"). Even activity spanning a full year can fail to establish closed-ended continuity if it is too sporadic. *See Turner*, 362 F.3d at 1231 (finding no closed-ended continuity in a flurry of activity over a two-month period after sporadic activity over the preceding year).

Here, the alleged RICO predicates do not amount to a continuous pattern. As with the original Complaint, "notably, every alleged predicate act of wire fraud identified in the Complaint was committed between October 28, 2016, and October 23, 2017." Dismissal Op. at 10. RICO's remedies are reserved for cases where a defendant engages in a sustained, continuous pattern of racketeering activity that is entirely absent here. The Complaint still fails to allege the "continuing racketeering activity" necessary for a successful RICO claim. *H.J. Inc.*, 492 U.S. at 241.[1]

---

[1] Black Cube does not concede that the facts alleged in the Complaint amount to racketeering activity at all, continuous or otherwise.

### 2.  McGowan has not alleged economic injury "by reason of a [RICO] violation."

Only a "person injured in h[er] business or property by reason of a [RICO] violation" may file a civil RICO lawsuit. 18 U.S.C. § 1964(c).  "To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008).  An injury to business or property requires "concrete financial loss."  *Id.* at 975.

McGowan's only theory of injury relies on emotional distress as a necessary link, which is forbidden under RICO.  A "personal injury," like emotional distress, does not implicate "business or property" and is not compensable under RICO, even if it results in some measurable financial loss.  *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc); *see also Kearney v. Foley & Lardner, LLP*, 747 F. App'x 478, 481 n.3 (9th Cir. 2018) ("Emotional distress damages are personal injuries that are not compensable under RICO.").  Similarly, and crucially, monetary losses that are "*derivatives* of . . . emotional distress" are "personal injuries" that do not qualify as injuries to business or property under RICO.  *Diaz*, 420 F.3d at 900 (citation omitted; emphasis added).

McGowan's Complaint makes plain that all of her asserted injuries must be "derivatives of emotional distress," otherwise, they have no connection whatsoever with the alleged RICO violation.  The *only* connection McGowan attempts to draw between the Defendants' alleged fraud and her injuries is that the asserted fraud "caused significant emotional trauma," which in turn precipitated McGowan's alleged monetary injuries.  Compl. ¶ 151.

For example, McGowan alleges that, around the time of her planned book release and book tour, the revelation of Defendants' alleged conduct "took a substantial toll on McGowan's mental health and wellbeing," which caused

McGowan to "ha[ve] a mental breakdown" and "cancel[] the [book] tour." Compl. ¶ 149. McGowan then cites the cancelled book tour as the source for many of her supposed monetary injuries. *See* Compl. ¶ 165 (noting "the interruption of McGowan's book tour and resulting interference with her publisher and the many retailers involved in the book tour"). Some of McGowan's other asserted monetary injuries likewise appear to be products of the cancelled book tour or McGowan's emotional distress more generally. *See id.* ("decreased book sales"). Alleged injuries that flowed from McGowan's emotional distress are "personal injuries" and cannot support a RICO claim.

The only supposed monetary injuries connected to Defendants' alleged wire fraud are plainly "derivatives of emotional distress." The alleged wire fraud has no plausible connection to McGowan's other asserted injuries: "fees and costs paid to McGowan's literary agents," "legal fees and costs," "lost employment opportunities; lost commercial opportunities including film, television, book, and other media projects; and harm to McGowan's business reputation." *Id.* Nowhere does McGowan plead that these injuries "were the direct result" of a RICO violation, as she was required to do. *Harmoni v. Int'l Spice, Inc. v. Hume*, 914 F.3d 648, 654 (9th Cir. 2019).

For example, as to her claims of lost employment opportunities, lost commercial opportunities, and reputational harm, nowhere does McGowan describe the sort of detailed causal connection required under binding Ninth Circuit precedent. In *Harmoni*, the Ninth Circuit concluded that the RICO plaintiff "d[id] not plausibly allege proximate cause with respect to damages for lost sales or harm to [the plaintiff's] business reputation," because the complaint contained no facts showing that these harms "were the direct result" of the asserted RICO violation (which included false public accusations about the plaintiff). 914 F.3d at 653–54. The Court specifically identified the sort of detail that would be required to support RICO standing based on lost sales and reputational harm: "the circumstances under which

[the plaintiff's] customers learned of the defendants' false accusations and, in reliance on that false information, canceled purchases they were otherwise planning to make." *Id.* at 654. McGowan never describes the circumstances of how any employment or commercial opportunity was lost as a result of Defendants' alleged fraud—indeed, she never even identifies a specific lost employment or commercial opportunity at all. This deficiency is fatal.[2]

As to her other asserted injuries—fees paid to literary agents and lawyers—McGowan again never explains their causal connection to Defendants' alleged fraud. To the contrary, McGowan alleges that she hired her literary agent (and presumably began incurring fees) around May 2016, Compl. ¶¶ 38–39, months before she says she was first contacted in January 2017 in connection with efforts to obtain her book, Compl. ¶ 83. And McGowan alleges that she hired her attorney to defend her drug possession charges around June 2018, Compl. ¶ 80, months after her book was published in January 2018, Compl. ¶ 6.[3]

Even in her own telling, none of McGowan's asserted monetary injuries resulted from Defendants' alleged RICO violations. The only connection McGowan even attempts makes clear that her injuries, as pled, are "derivatives of emotional distress" and thus cannot support RICO standing.

*     *     *

McGowan has not pleaded that Defendants' investigative efforts amounted to a "pattern of racketeering activity," nor has she pleaded that she was "injured in h[er]

---

[2] Harm to McGowan's business reputation would not support RICO standing even if she had pled that such harm was directly caused by a RICO violation. "[R]eputational harm does not constitute an injury to a business or property interest sufficient to support RICO standing." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 820 (N.D. Cal. 2016). *But see Harmoni*, 914 F.3d at 653 (leaving this issue undecided).

[3] The Complaint references another unnamed attorney, to whom an attorney of Weinstein's directed an offer of $1 million for McGowan to drop publication of her forthcoming book. Compl. ¶ 132. McGowan never explains how any fees she paid to this attorney were plausibly a direct result of Defendants' alleged RICO violations.

business or property by reason of" any RICO violation. Her RICO claims must be dismissed with prejudice.[4]

### B.   The Court Should Decline to Exercise Supplemental Jurisdiction Over McGowan's Remaining State Law Claims.

A district court "may decline to exercise supplemental jurisdiction" over any remaining state law claims if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citation omitted).

If the Court dismisses McGowan's RICO claims, no federal claims will remain over which the Court has original jurisdiction.  With only state claims remaining, and with the case still in its earliest stages, "the interests of comity and fairness" support dismissal of the remainder of the Complaint.  *Munoz v. Shorter*, No. 2:18-cv-9054-ODW, 2019 WL 6310265, at *3 (C.D. Cal. Nov. 25, 2019) (declining to exercise supplemental jurisdiction after resolving federal claim on summary judgment); *see also, e.g.*, *Stissi v. Bag Fund, LLC*, No. 5:17-cv-534-ODW, 2018 WL 354611, at *5 (C.D. Cal. Jan. 10, 2018) (declining to exercise supplemental jurisdiction after granting motion to dismiss federal claims); *Rosenblatt v. City of Santa Monica*, No. 2:16-CV-04481-ODW, 2017 WL 2909404, at *1 (C.D. Cal. May 24, 2017), *aff'd*, 940 F.3d 439 (9th Cir. 2019) (same, even after finding that one of plaintiff's state law claims was well-pled).

---

[4] Because McGowan fails to state a RICO claim under 18 U.S.C. § 1962(c), her RICO conspiracy claim under § 1962(d) must be dismissed as well.  *See Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

**II.    If the Court Exercises Supplemental Jurisdiction Over McGowan's Remaining State Claims, They Should Be Dismissed with Prejudice.**

    **A.    McGowan Fails to State a Claim Under CDAFA.**

To protect "computer data and computer systems," Cal. Penal Code § 502(a), California's Computer Data Access and Fraud Act ("CDAFA") prohibits 14 specified types of computer access, *see id.* § 502(c)(1)–(14).  McGowan previously failed to state a claim based on one type of prohibited access, and now she tries two others. *See* Compl. at 50 (citing Cal. Penal Code § 502(c)(2), (c)(7)).  Even as amended, McGowan's Complaint fails to state a claim under CDAFA for two reasons: (1) she has not sufficiently alleged a CDAFA violation because she did not allege that her computer was "accessed" within the meaning of the statute; and (2) she has not pleaded (or actually suffered) the sort of damage or loss that is actionable under CDAFA's civil remedy provision.

First, McGowan fails to allege an "access" under CDAFA.  Both of the CDAFA prohibitions now at issue require that the defendant must have "accesse[d]" the plaintiff's computer.  Cal. Penal Code § 502(c)(2), (c)(7).  McGowan alleges that she "allowed [a Black Cube agent] to read part of the book on McGowan's laptop" on May 13, 2017.  Compl. ¶ 96; *see also* Compl. ¶ 202.[5]  But "accessing" a computer under CDAFA requires more than just looking at visible information on a computer screen.  The statute defines "access" to mean "gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer."  Cal. Penal Code § 502(b)(1).  Per this statutory definition, "access" under CDAFA requires some sort

---

[5] The other supposed "accesses" that McGowan references in the Complaint are pleaded as pure speculation.  *See* Compl. ¶ 122 (alleging that "McGowan now believes" that a Black Cube agent stole information from her computer while she was in the bathroom during a meeting in July 2017); Compl. ¶ 129 (alleging without any factual context or detail that McGowan "believes that Defendants knowingly accessed [her] computer again" during a meeting in September 2017).  As the Court noted previously, "a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences."  Dismissal Op. at 7.

of *interaction* between the computer and the person accessing it. *See Lateral Link Grp., LLC v. Springut*, No. CV14-5696-JAK, 2015 WL 12778396, at *8 (C.D. Cal. Sept. 22, 2015) (dismissing CDAFA claim based on statutory definition of "access"); *see also, e.g.*, *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *7 (N.D. Cal. July 20, 2010) (unauthorized access requires overcoming "technical or code-based barriers"). Simply reading visible information on a computer screen does not constitute "accessing" the computer under CDAFA, and thus McGowan has failed to plead a CDAFA violation.

Second, even if McGowan had properly alleged a CDAFA violation, CDAFA grants a civil remedy only to one who "suffers damage or loss by reason of a violation." Cal. Penal Code § 502(e)(1). With the phrase "by reason of a violation," CDAFA demands that the plaintiff's damage or loss must have been proximately caused by the prohibited computer access. *Cf. Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (holding that RICO's "by reason of a violation" language imposes a proximate cause requirement). A civil action under CDAFA may seek "compensatory damages,"[6] and the statute clarifies that "[c]ompensatory damages shall include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(e)(1). Actionable losses under CDAFA are generally rooted in the costs of investigating and remedying a computer intrusion and not the kind of ephemeral losses McGowan alleges. *See, e.g.*, *Ticketmaster L.L.C. v. Prestige Entm't West, Inc.*, 315 F. Supp. 3d 1147, 1173 (C.D. Cal. 2018) (costs of "expanding security to identify and block bots" and "hiring third-party consultants to implement additional bot mitigation measures"); *Mintz v. Mark Bartelstein and Assocs., Inc.*, 906 F. Supp. 2d 1017, 1032

---

[6] The statute also permits non-monetary remedies—"injunctive relief or other equitable relief." Cal. Penal Code § 502(e)(1).

(C.D. Cal. 2012) (time spent restoring password and investigating who had hacked email account).

Even if the losses that McGowan has alleged are appropriate under CDAFA, they are far too vague, and far too distant from the alleged computer access, to have been proximately caused by a CDAFA violation.  In her CDAFA claim, McGowan alleges that "Defendants' conduct caused a loss to McGowan, because it enabled them to obtain sensitive, non-public information that prepared Defendants to discredit and malign McGowan publicly, undermining her book, commercial projects, and reputation."  Compl. ¶ 206.

But McGowan never alleges any instance in which any Defendant actually discredited or maligned her publicly using information obtained from her book.  In one paragraph McGowan alleges that Defendants Weinstein and Bloom, in conversations with reporters, "*attempted* to use the information gained by Defendants' conspiracy to paint McGowan as mentally unstable and completely incredible," Compl. ¶ 138 (emphasis added), but crucially, McGowan concedes that "the[se] efforts *were unsuccessful*."  Compl. ¶ 139 (emphasis added).  Elsewhere McGowan alleges that Weinstein attempted to discredit her publicly, but not with any information that was plausibly obtained from her book manuscript.  *See* Compl. ¶ 133 (alleging that, in September 2017, "Weinstein and his agents discussed leaking a story about McGowan's drug charges," but indicating that McGowan was not otherwise planning to disclose the charges herself—i.e., that the information did not come from her book manuscript); Compl. ¶ 148 (alleging that Weinstein released a statement asserting that two witnesses disputed McGowan's rape allegations and providing photos of McGowan and Weinstein together in public).

Without ever alleging that any Defendant used information from her computer to publicly malign or discredit her, McGowan cannot use such circumstances as a theory of how she was injured by reason of a CDAFA violation.  *See, e.g.*, *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 949–51 (N.D. Cal. 2014)

(dismissing CDAFA claim because allegations of loss were "entirely speculative" and "devoid of any specific details from which a factfinder could calculate an amount of loss").

### B.  McGowan Fails to State a Claim for Intentional Infliction of Emotional Distress.

McGowan has reasserted a claim for IIED based on allegations of Defendants "lying to her [and] causing her to be lied to, seeking to gain and abuse her trust." Compl. ¶ 209.  As in her original Complaint, McGowan's IIED claim "is untimely on its face" because it "relies on actions that occurred before October 23, 2017"—two years before she filed this lawsuit. Dismissal Op. at 29; *see Kaldis v. Wells Fargo Bank, N.A.*, 263 F. Supp. 3d 856, 867 (C.D. Cal. 2017) ("An IIED claim is subject to a two-year statute of limitations.").

Although McGowan has added new allegations regarding when she learned certain facts, she still has not done enough to excuse her untimeliness under the "discovery rule."  To pursue an otherwise time-barred IIED claim, McGowan "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Plumlee v. Pfizer, Inc.*, 664 F. App'x 651, 653 (9th Cir. 2016) (citation and italics omitted).  The critical date for purposes of the discovery rule, when the statute of limitations begins to run, is "when the plaintiff suspects or should suspect" a factual basis for the elements of the cause of action.  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988).

McGowan fails to specifically plead when she first suspected, or had reason to suspect, the alleged wrong underlying her IIED claim—i.e. that individuals working with Weinstein were lying to her in order to gain her trust.  For example, nowhere in the Complaint does McGowan indicate when she first suspected, or had reason to suspect, that individuals working with Weinstein were using deceptive investigatory tactics.  Nowhere does McGowan indicate when she first suspected, or had reason to

suspect, that Weinstein was seeking information related to her accusations against him.  Nowhere does McGowan allege when she first suffered emotional distress as a result of Weinstein's investigative efforts.

McGowan's new allegations regarding the timing of discovery are carefully limited to narrow facts and do not address when she first suspected, or had reason to suspect, the main thrust of her IIED claim.  McGowan alleges that November 5–6, 2017, was when she first learned the *identity* of the Black Cube agent.  Compl. ¶ 143.  But the identity of the defendant is immaterial to whether McGowan can invoke the discovery rule.  *See Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 399 (1999) ("[F]ailure to discover, or have reason to discover, the identity of the defendant does not postpone the accrual of a cause of action, whereas a like failure concerning the cause of action itself does.").  McGowan also alleges that November 5–6, 2017 was when she first learned that "she had been *recorded* without her consent," and thus that Weinstein had obtained portions of her book.  Compl. ¶ 143 (emphasis added).  But the fact of having been recorded, while relevant, is not essential to the crux of McGowan's IIED claim, which focuses on Defendants allegedly "lying to her, causing her to be lied to, [and] seeking to gain and abuse her trust."  Compl. ¶ 209.

McGowan appears to have drafted carefully and deliberately in limiting her discovery allegations to these two facts—the identity of the Black Cube agent and the fact that she had been recorded.  In McGowan's original Complaint, she also alleged that she did not learn those two specific facts "until November 2017."  ECF 1 at ¶ 73 ("What McGowan did not know then, and would not learn until November 2017, is that Filip was actually a former Israeli intelligence officer who worked for Black Cube."); *id.* ¶ 78 ("McGowan did not know at that time, and would not learn until November 2017, that Filip was recording McGowan throughout these meetings without her consent in order to compile hours of information that were then shared with Weinstein, Boies, Bloom, and others.").  In both versions of her Complaint, McGowan never explains more broadly when she first suspected the main thrust of

her IIED claim.  If McGowan truly had no reason to suspect, until November 5–6 2017, that individuals working with Weinstein were using deception to learn about and prevent her planned public accusations against him, she needed to say so in her Complaint in order to satisfy her burden under the discovery rule.

Far from meeting that burden, McGowan pleads facts affirmatively suggesting that she *did* have reason to suspect, before October 23, 2017,  that individuals working with Weinstein were seeking to learn about and prevent publication of her book. McGowan alleges that, in March 2017, she was asked if she would speak with Lisa Bloom, who wanted to "convince" her that Weinstein was a changed man, presumably so that she would decide not to air her allegations against him.  Compl. ¶ 88.  And sometime before "summer turned to fall" in 2017, Compl. ¶ 133, McGowan was approached by an attorney who offered her $1 million "to drop publication of the book and to enter into a non-disclosure agreement with Weinstein."  Compl. ¶ 132.  Then, in September 2017, McGowan alleges that Ronan Farrow learned that Bloom was working with Weinstein, Compl. ¶ 134–36, and "[i]n late October 2017" (on an unspecified date), she alleges that Farrow "learned from Seth Freedman of the existence and involvement of Israeli spy company Black Cube in Weinstein's efforts to silence victims." Compl. ¶ 142.  The timing of Farrow's discoveries is particularly significant because McGowan and Farrow were in touch about Weinstein beginning in January 2017.  *See* Ronan Farrow, *Catch and Kill* at 36 (Little, Brown & Co. 2019).[7]

Especially in light of these allegations, which affirmatively suggest that McGowan may have had reason to suspect (or even been told) that individuals working with Weinstein were seeking to learn about and prevent publication of her book (including through deception), McGowan was required to specifically plead

---

[7] McGowan's Complaint is based in part on the contents of this book, as she acknowledges.  Compl. ¶ 153.  Its contents are thus incorporated by reference and are fairly considered on a motion to dismiss.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

facts establishing when she first had reason to suspect the basis for her IIED claim. Because she has again failed to do so, her IIED claim should be dismissed as untimely.

Even if the claim were timely (it is not), McGowan has failed to adequately state a claim for IIED.  A claim for IIED requires: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard for the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). "[T]he defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." *Id.* at 1051 (citation omitted).

As in her original Complaint, McGowan has failed to allege "extreme and outrageous" conduct by Black Cube with intentional or reckless disregard for her emotional well-being.  McGowan repeats wholesale from her original Complaint and accuses Defendants of "lying to her" and "seeking to gain and abuse her trust"— conduct that she alleges caused her emotional distress by "shatter[ing] [her] trust in others."  Compl. ¶¶ 209, 214.  But lying to somebody—even about a matter of deep emotional concern—generally does not alone support an IIED claim.  *See, e.g.*, *McMahon v. Craig*, 176 Cal. App. 4th 1502, 1517 (2009) (affirming dismissal of IIED claim where veterinarian, who "knew of [the plaintiff's] close attachment" to her dog, allegedly lied to the plaintiff to conceal that the veterinarian's malpractice had caused the dog's death).  McGowan alleges that her emotional distress resulted not from any lie itself, but from *discovering* that she had been lied to, Compl. ¶ 149, a result which Defendants obviously did not intend (or recklessly allow).

In particular, deception in the context of an undercover investigation generally does not support an IIED claim.  *See Ouderkirk v. People for Ethical Treatment of Animals, Inc.*, No. 05-10111, 2007 WL 1035093, at *23 (E.D. Mich. Mar. 29, 2007) (collecting cases).  As the court in *Ouderkirk* explained:

> Undercover investigations are one of the main ways our criminal justice system operates. In addition, television shows like PrimeTime Live and Dateline often conduct undercover investigations to reveal improper, unethical, or criminal behavior. *Often, these investigations involve misrepresentations and deception by the investigators.  The Court cannot conclude that an undercover investigation is "intolerable" in contemporary society.*

*Id.*  (emphasis added); *see also, e.g.*, *Creel v. I.C.E. & Assocs.*, 771 N.E.2d 1276, (Ind. Ct. App. 2002) (rejecting IIED claim where employee of private detective agency, while investigating possible insurance fraud, lied in order to enter church during worship services so as to covertly videotape the plaintiff).  In short, even if McGowan could overcome the statute of limitations, she cannot overcome the fatal deficiencies in her IIED claim.  It should be dismissed.

**CONCLUSION**

For the foregoing reasons, McGowan's RICO claims should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). The remainder of the Complaint should be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

DATED: March 23, 2021                Respectfully submitted,


By:   _____*/s/ Katherine B. Farkas*_____
        Katherine B. Farkas
        WINSTON & STRAWN, LLP
        333 South Grand Avenue, 38th Floor
        Los Angeles, California 90071

        Catherine S. Duval
        Ezra B. Marcus
        Ariella E. Muller
        ZUCKERMAN SPAEDER LLP
        1800 M Street NW, Suite 1000
        Washington, DC 20036-5807

        *Attorneys for Defendant B.C. Strategy Ltd.*
        *d/b/a Black Cube*