BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Eric M. George (State Bar No. 166403)
  egeorge@bgrfirm.com
Noah S. Helpern (State Bar No. 254023)
  nhelpern@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Defendants Lisa Bloom and
The Bloom Firm

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ROSE MCGOWAN,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>HARVEY WEINSTEIN, DAVID BOIES, BOIES SCHILLER FLEXNER LLP, LISA BLOOM, THE BLOOM FIRM, B.C. STRATEGIES LTD. D/B/A BLACK CUBE,<br><br>　　　　Defendants. | Case No. 2:19-cv-9105-ODW(JPRx)<br><br>The Hon. Otis D. Wright, II<br><br>**DEFENDANTS LISA BLOOM AND THE BLOOM FIRM'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS I, II, V, VI, VII, AND VIII OF THE FIRST AMENDED COMPLAINT [Fed. R. Civ. P. 12(b)(6)]; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[[Proposed] Order Submitted Concurrently Herewith]*<br><br>Date:　　June 14, 2021<br>Time:　　1:30 p.m.<br>Courtroom: 5D<br><br>Complaint Filed: Oct. 23, 2019<br>Trial Date:  None Set |

1783780.2

**<u>NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 14, 2021, at 1:30 p.m., or as soon thereafter as may be heard in Courtroom 5D of the above-entitled Court, located at 350 West 1st Street, Los Angeles, CA 90012, Defendants Lisa Bloom and The Bloom Firm (together, "Bloom" or the "Bloom Defendants") will and hereby do move for an Order dismissing Counts I, II, V, VI, VII, and VIII of Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that each of these Counts fails to state a claim upon which relief can be granted.

This Motion is based on the following grounds, which are discussed more fully in the concurrently-filed Memorandum of Points and Authorities:

1.  Plaintiff has not stated claims under the federal RICO laws because Plaintiff has not alleged two RICO predicate acts as to the Bloom Defendants; Plaintiff has not alleged but-for and proximate causation; Plaintiff has not alleged concrete financial losses cognizable under the RICO laws; Plaintiff cannot show a pattern of racketeering activity; Plaintiff fails to sufficiently allege the existence of an enterprise or the Bloom Defendants' role within the alleged enterprise; and Plaintiff has not alleged fraud with the required specificity under Rule 9.

2.  Plaintiff has failed to sufficiently allege the existence of a RICO conspiracy.

3.  Plaintiff has failed to state a claim under the state-law theories advanced in Counts V, VI, VII, or VIII against the Bloom Defendants, whether pleaded under theories of vicarious or primary liability.

The Motion is made following a conference between counsel for Plaintiff and counsel for the Bloom Defendants pursuant to Local Rule 7-3 on March 12, 2021.

The Motion is based on this Notice of Motion and Motion, the pleadings on

1   file in this matter, the Memorandum of Points and Authorities filed concurrently

2   herewith, and any further argument the Court might allow.

3

4   DATED:  March 23, 2021                    BROWNE GEORGE ROSS
                                              O'BRIEN ANNAGUEY & ELLIS LLP
5                                                 Eric M. George
6                                                 Noah S. Helpern

7

8                                             By:   _____/s/ Noah S. Helpern_____
9                                                      Noah S. Helpern
10                                            Attorneys for Defendants Lisa Bloom and The
                                              Bloom Firm
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.     PRELIMINARY STATEMENT ............................................................. 1

II.    RELEVANT FACTS AS ALLEGED IN THE FAC ...................................... 2

    A.   Prefatory Statement ............................................................... 2

    B.   Plaintiff Publishes A Book Discussing Her Alleged Rape ..................... 3

    C.   Weinstein Attempts To Avoid Publication Of *Brave* And Minimize Negative Publicity And Legal Exposure ............................. 3

    D.   Weinstein Engages Lisa Bloom And Her Law Firm ........................... 4

    E.   Black Cube Allegedly Engages In Work On Weinstein's Behalf .......... 5

    F.   Plaintiff Releases Her Book But Cancels Her Book Tour .................... 5

III.   ARGUMENT ...................................................................................... 5

    A.   Legal Standard ..................................................................... 5

    B.   Plaintiff Fails To Plead A Cognizable Civil RICO Claim.................... 6

       1.   Plaintiff Has Not Pleaded A Pattern Of Racketeering Activity As To Bloom ...................................................... 6

       2.   Plaintiff Does Not Allege Bloom's Supposed Wire Fraud With Particularity...................................................... 9

       3.   Plaintiff Cannot Assert Purported RICO Claims Based On The Alleged Injury .......................................... 10

       4.   The FAC Lacks Sufficient Enterprise Allegations .................... 13

       5.   Plaintiff's RICO Conspiracy Claim (Count II) Fails.................. 15

    C.   None Of The At-Issue State Law Claims Has Merit ........................... 16

       1.   Plaintiff Has Failed To State A Claim Against Bloom For Invasion Of Privacy (Count V)...................................... 16

       2.   Plaintiff Has Failed To State A Claim Against Bloom For Computer Crimes (Count VI) ...................................... 19

       3.   Plaintiff Has Failed To State A Claim Against Bloom For Intentional Infliction Of Emotional Distress (Count VII) .......... 21

       4.   Plaintiff Has Failed To State A Claim Against Bloom For Negligent Hiring And Supervision (Count VIII)....................... 23

# TABLE OF CONTENTS
### (Continued)

Page

     5.     Bloom Is Not Vicariously Liable For Every Alleged Action Of Black Cube .................................................................. 24

IV.    CONCLUSION ................................................................................ 25

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

**Cases**

4

*Ashcroft v. Iqbal*,
5
 556 U.S. 662 (2009) .................................................................................5

6

*Baumer v. Pachl*,
7
 8 F.3d 1341 (9th Cir. 1993) .................................................................14

8

*Bell Atl. Corp. v. Twombly*,
9
 550 U.S. 544 (2007) .................................................................................5

10

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
 637 F.3d 1047 (9th Cir. 2011) ...............................................................6
11

12

*Camarillo v. City of Maywood*,
 No. CV 07-3469 ODW, 2008 WL 4056994 (C.D. Cal. Aug. 27,
13
 2008) (Wright, J.) ...........................................................................12, 13

14

*Craigslist, Inc. v. Mesiab*,
15
 No. C 08-05064 CW (MEJ), 2009 WL 10710286 (N.D. Cal. Sept.
 14, 2009) .............................................................................................19
16

17

*Crest Constr. II, Inc. v. Doe*,
 660 F.3d 346 (8th Cir. 2011) ...........................................................13, 14
18

*Diallo v. Redwood Investments, LLC*,
19
 No. 18-CV-1793 JLS, 2020 WL 6060410 (S.D. Cal. Oct. 14, 2020) .................7

20

*Diaz v. Gates*,
21
 420 F.3d 897 (9th Cir. 2005) .................................................................13

22

*Eaves v. Designs for Fin., Inc.*,
23
 785 F. Supp. 2d 229 (S.D.N.Y. 2011) .....................................................15

24

*Eclectic Prop. E., LLC v. Marcus & Millichap Co.*,
25
 751 F.3d 990 (9th Cir. 2014) .................................................................13

26

*Edwards v. Marin Park, Inc.*,
27
 356 F.3d 1058 (9th Cir. 2004) ...............................................................6

28

1
2

# <u>TABLE OF AUTHORITIES</u>
### (Continued)

<u>Page</u>

3

4

*Encarnacao v. Phase Forward Inc.*,
   No. CV 11-05090 ODW (PLA), 2012 WL 404971 (C.D. Cal. Feb.

5
   7, 2012) ............................................................................................................ 12

6

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal.4th 797 (2005) .............................................................................. 17, 18

7

8

*Gill v. Hearst Pub. Co.*,
   40 Cal. 2d 224 (1953) ..................................................................................... 19

9

*Giron v. Hong Kong & Shanghai Bank Co.*,
   No. 2:15-cv-08869-ODW-JC, 2016 WL 6662726 (C.D. Cal. June

10

11
   29, 2016) .......................................................................................................... 10

12

*Grimmett v. Brown*,
   75 F.3d 506 (9th Cir. 1996) .............................................................................. 6

13

14

*Gross v. Waywell*,
   628 F. Supp. 2d 475 (S.D.N.Y 2009) ............................................................... 8

15

16

*GSI Tech. v. United Memories, Inc.*,
   No. 5:13-cv-01081-PSG, 2014 WL 1572358 (N.D. Cal. Apr. 18,

17
   2014) .................................................................................................................. 8

18

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) .......................................................................................... 7

19

20

*Harmoni Int'l Spice, Inc. v. Hume*,
   914 F.3d 648 (9th Cir. 2019) .......................................................................... 12

21

22

*Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*,
   955 F. Supp. 248 (S.D.N.Y. 1997) ................................................................. 14

23

24

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010) ............................................................................................ 11

25

26

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   7 Cal. 4th 1 (1994) ......................................................................................... 19

27

*Hill v. Opus Corp.*,
   841 F. Supp. 2d 1070 (C.D. Cal. 2011) ........................................................... 9

28

**TABLE OF AUTHORITIES**
(Continued)

Page

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992) ............................................................... 11

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ....................................... 7, 8, 15

*Jarvis v. Regan*,
   833 F.2d 149 (9th Cir. 1987) ............................................... 7

*Kaldis v. Wells Fargo Bank, N.A.*,
   263 F. Supp. 3d 856 (C.D. Cal. 2017) ............................... 23

*Maheu v. CBS, Inc.*,
   201 Cal. App. 3d 662 (1988) ............................................ 16

*Mattel, Inc. v. MGA Entm't, Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011) .............................. 15

*McMahon v. Craig*,
   176 Cal. App. 4th 1502 (2009) ........................................ 22

*Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*,
   833 F.2d 1360 (9th Cir. 1987) ........................................... 8

*Nally v. Grace Cmty. Church*,
   47 Cal. 3d 278 (1988) ...................................................... 21

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*,
   790 F. Supp. 2d 1134 (C.D. Cal. 2011) ............................. 9

*Perez v. DirecTV Grp. Holdings, LLC*,
   No. 16-cv-1440, 2019 WL 6362471 (C.D. Cal. July 23, 2019) ........................... 7

*Phillips v. TLC Plumbing, Inc.*,
   172 Cal. App. 4th 1133 (2009) ........................................ 23

*Prime Partners IPA of Temecula, Inc. v. Chaudhuri*,
   No. 5:11-cv-01860-ODW, 2012 WL 1669726 (C.D. Cal. May 14,
   2012) ................................................................ 11, 12, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**
### **(Continued)**

**Page**

*Quan v. Smithkline Beecham Corp.*,
  149 F. App'x 668 (9th Cir. 2005) ............................................................. 16, 17

*Religious Tech. Ctr. v. Wollersheim*,
  971 F.2d 364 (9th Cir. 1992) ........................................................................ 8

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ................................................................................... 14

*Rice v. U.S. Bank Nat'l Ass'n*,
  No. CV 11-6214-GW, 2012 WL 10423291 (C.D. Cal. Jan. 23,
  2012) ............................................................................................................ 6

*Richards v. Cty. of Los Angeles*,
  No. CV 17-400 BRO, 2017 WL 7411159 (C.D. Cal. Mar. 31, 2017) ................ 7

*Sanford v. MemberWorks, Inc.*,
  625 F.3d 550 (9th Cir. 2010) ........................................................................ 9

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*,
  806 F.2d 1393 (9th Cir. 1986) ............................................................... 6, 9, 10

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985) ................................................................................... 11

*Stewart v. Wachowski*,
  No. CV 03-2873-MMM-(VBKx), 2005 WL 6184235 (C.D. Cal.
  June 14, 2005) ............................................................................................ 16

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011) .............................................................................. 20

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ...................................................................... 14

*Tatung Co. v. Shu Tze Hsu*,
  217 F. Supp. 3d 1138 (C.D. Cal. 2016) ......................................................... 9

*Turner v. Cook*,
  362 F.3d 1219 (9th Cir. 2004) ...................................................................... 8

1
2

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

<u>Page</u>

3
4

*United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.*,
    837 F.2d 356 (9th Cir. 1988) .................................................................. 8

5
6
7

*United Food & Commercial Workers Unions & Emp'rs Midwest
    Health Benefits Fund v. Walgreen Co.*,
    719 F.3d 849 (7th Cir. 2013) ................................................................ 13

8
9

*United States v. Miller*,
    2020 WL 1317275 (9th Cir. Mar. 20, 2020) ....................................... 10

10

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ................................................................ 17

11
12

*Van't Rood v. County of Santa Clara*,
    113 Cal. App. 4th 549 (2003) ......................................................... 24, 25

13
14
15

*Vega v. Ocwen Fin. Corp.*,
    No. 2:14-cv-04408-ODW, 2015 WL 1383241 (C.D. Cal. Mar. 24,
    2015) .................................................................................................... 11

16
17

*Wassmann v. S. Orange Cty. Cmty. Coll. Dist.*,
    24 Cal. App. 5th 825 (2018) ................................................................. 21

18
19

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011) ................................................. 7

20

*Yau v. Santa Margarita Ford, Inc.*,
    229 Cal. App. 4th 144 (2014) ............................................................... 22

21

**Statutes**

22
23

18 U.S.C. §96 (RICO) ..............................................................................passim

24

18 U.S.C. § 1962(c)(d) ............................................................................... 6, 9

25

Cal. Civ. Code § 2295 .................................................................................. 24

26

Cal. Penal Code §502 ............................................................................. 19, 20

27
28

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

<u>Page</u>

**Rules**

Fed. R. Civ. Proc. 10(c) .................................................................................... 17

Fed. R. Civ. Proc. 9(b) ................................................................................passim

Fed. R. Civ. Proc. 12(b)(6) ............................................................................... 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

This action—largely already dismissed once by this Court—remains a prime example of misuse of civil RICO by an overreaching plaintiff who seeks to gain leverage by invoking the extraordinary remedy Congress enacted to combat organized crime.  Federal Courts firmly reject the use of RICO in this way and require plaintiffs to plead and prove facts that adhere strictly to RICO's precise elements or face dismissal.  The instant case shows exactly how civil RICO can be abused.  The First Amended Complaint ("FAC") does not cure the original complaint's defects.  Instead, it still improperly shoehorns myriad unrelated and unsupported claims against numerous individuals together under the umbrella of civil RICO.  Plaintiff's attempt to fit dozens of square pegs into a single round hole fails, and the FAC's amended claims should be dismissed, this time with prejudice.

Plaintiff Rose McGowan, an activist and actress, alleges she was raped by Hollywood executive Harvey Weinstein in 1997.  Those allegations are not at issue in this case.  Rather, the FAC alleges that, twenty years later, Weinstein directed attorneys and investigators to try to prevent mention of Weinstein in a book by McGowan and minimize the potential impact to him of any such mention.  Even taking the FAC's allegations at face value, defendants Lisa Bloom and The Bloom Firm (collectively, "Bloom" or the "Bloom Defendants") played a peripheral role that did not include hiring or contracting with Weinstein's investigators on whose conduct the FAC focuses.  The FAC's new allegations fall far short of stating any cognizable claim for relief against Bloom.

The FAC lumps Weinstein together with over a dozen people and entities allegedly associated with him (including Bloom) into a supposed organization Plaintiff dubs the "Weinstein-Protection Enterprise."  Plaintiff makes sweeping, vague, and conclusory allegations that members of the supposed enterprise committed wire fraud to protect Weinstein.  Plaintiff's "shotgun" pleading approach

makes it impossible to discern what allegations relate to which defendants, which claims are asserted based on primary versus secondary liability theories, and what supposed misconduct is purportedly actionable.

As detailed below, Plaintiff's RICO claims should be dismissed for the following reasons:

- The FAC fails to properly allege a RICO enterprise or pattern.
- As to Bloom, the FAC fails to identify two predicate acts, and generally fails to allege wire fraud with the specificity required by Rule 9(b).
- Plaintiff does not sufficiently allege causation or damages under the RICO statute. Indeed, to the extent Plaintiff alleges an injury to her professional reputation, that is not a recognized injury under RICO and occurred as a result of her choice to cancel her book tour.
- The FAC does not allege that Bloom occupied the operational and management role required of each RICO defendant.

In addition, each of the amended state law claims (Counts V, VI, VII, and VIII) should be dismissed by the Court for lack of merit, including because the statute of limitations has run and because Plaintiff has failed to plead essential elements of any of the claims.

## II.    RELEVANT FACTS AS ALLEGED IN THE FAC

### A.    Prefatory Statement

Bloom briefly represented Weinstein as his attorney, beginning in December 2016. She believed at the time that he was innocent of any illegal conduct and that the only credible allegations against him were for improper language, for which he was willing to apologize and refrain from using in the future. At that time, no woman had publicly accused him of sexual assault. In early October 2017, Bloom learned that several women had spoken with reporter Ronan Farrow and accused Weinstein of sexual assault. Bloom immediately and publicly resigned and expressed regret for ever having been associated with Weinstein. Now faced with

this lawsuit, Bloom has no choice but to defend herself.

Bloom flatly denies nearly all of the allegations and insinuations in the FAC relating to her. Plaintiff has a history of public misstatements, and Plaintiff has previously had to retract false statements about Bloom. However, solely for the purpose of this Motion and only to the extent mandated by the Federal Rules of Civil Procedure, Plaintiff's baseless allegations are accepted at face value (subject to applicable pleading standards).

### B.    Plaintiff Publishes A Book Discussing Her Alleged Rape

Plaintiff alleges that Weinstein raped her in 1997. (FAC, ¶¶ 4, 17.) Plaintiff and Weinstein reached a settlement with respect to those allegations. (*Id*., ¶¶ 4, 19.) In 2016, nearly two decades after the alleged rape, Plaintiff began work on a book about her life called *Brave*, which included her experience with Weinstein. (*Id*., ¶ 6.) Plaintiff publicly announced she was writing this book in June 2016. (*Id*., ¶ 40.) *Brave* was published in January 2018. (*Id*., ¶¶ 6, 148.)

### C.    Weinstein Attempts To Avoid Publication Of *Brave* And Minimize Negative Publicity And Legal Exposure

When Weinstein learned of the impending publication of Plaintiff's book, he sought to avoid mention of him in the book and to minimize the negative impact to him. (*Id*., ¶ 7.) Weinstein was concerned that his misconduct would be revealed and that women other than Plaintiff might "potentially report his sexual assault." (*Id*.) As a result, Weinstein hired several professionals to assist him with minimizing potential damage. (*Id*., ¶ 8.)

In October 2016, Weinstein engaged defendants David Boies and his law firm, Boies Schiller Flexner LLP (collectively, "Boies"), with respect to Weinstein's potential exposure from Plaintiff's expected disclosures. (*Id*., ¶ 42.) Boies has worked with Weinstein in various capacities since 2001. (*Id*., ¶¶ 27-29.)

Also in October 2016, Boies, on Weinstein's behalf, allegedly engaged defendant Black Cube, an intelligence firm that conducts investigations on behalf of

1   its clients.  (*Id.*, ¶¶ 46-47.)  Black Cube's "agreements with clients stated that

2   attorneys vetted its tactics and that it would conduct itself lawfully."  (*Id.*, ¶ 47.)

3   Boies allegedly made an initial payment to Black Cube on October 28, 2016, and

4   Black Cube's work on Weinstein's behalf began.  (*Id.*, ¶ 50.)  A second contract

5   between Black Cube and Boies (again, on Weinstein's behalf) was allegedly entered

6   into in July 2017.  (*Id.*, ¶ 118.)  Boies allegedly made additional payments on

7   Weinstein's behalf to Black Cube.  (*Id.*, ¶¶ 109, 111.)

8        **D.**    <u>**Weinstein Engages Lisa Bloom And Her Law Firm**</u>

9        In December 2016, well after Boies and Black Cube were already working

10   with Weinstein, Weinstein engaged Bloom, "a well-known civil-rights attorney and

11   a self-proclaimed women's advocate."  (*Id.*, ¶ 68.)  Bloom was not engaged until

12   after Black Cube had begun working on Weinstein's behalf.  (*Id.*)  Bloom's

13   engagement was facilitated by Boies.  (*Id.*, ¶¶ 73, 74.)

14        Also in December 2016, Bloom allegedly emailed a letter to Weinstein

15   describing the services she might provide on his behalf if engaged by him.  (*Id.*, ¶¶

16   71, 72.)  Bloom proposed taking steps to bolster Weinstein's reputation and

17   minimize the impact of Plaintiff's disclosures as part of Bloom's representation of

18   Weinstein.  (*Id.*)  Plaintiff, while not disputing that Bloom is a practicing attorney,

19   alleges conclusorily that Bloom did not provide legal advice, but offers no facts to

20   support that conclusion.  (*Id.*)

21        Plaintiff does not allege that Bloom signed, negotiated, paid for, or was a

22   party to any agreement with Black Cube.  At various points, Plaintiff claims that

23   Bloom (a) received information and records about Plaintiff from Black Cube (*id.*, ¶¶

24   97, 117, 130), (b) met *on a single occasion* with a Black Cube representative and

25   "discussed [the representative's] activities" (*id.*, ¶ 121), and (c) generally "oversaw

26   and guided" Black Cube's work (*id.*, ¶ 160(c)).  The FAC contains no factual

27   allegations (but only speculation and conclusion) suggesting that Bloom hired,

28   directed, or instructed Black Cube to engage in any of the conduct alleged in the

FAC, or that Bloom exercised any control over Black Cube.

### E.   Black Cube Allegedly Engages In Work On Weinstein's Behalf

Black Cube—retained by Boies prior to Bloom's involvement—was allegedly engaged to help Weinstein "bury" Plaintiff's book and put "a stop to the negative campaign" against Weinstein.  (*Id*., ¶¶ 45, 49.)  Black Cube allegedly undertook a variety of tactics to gather information about Plaintiff and her book.  Plaintiff advances no factual allegations that Bloom controlled or directed Black Cube's alleged activities on behalf of Weinstein.

### F.   Plaintiff Releases Her Book But Cancels Her Book Tour

Plaintiff's book *Brave* was released in January 2018.  (*Id*., ¶ 148.)  Plaintiff planned a book tour to promote sales of *Brave*.  (*Id*., ¶ 149.)  Plaintiff claims she experienced "odd and disturbing encounters" at the beginning of that tour but does not describe those encounters.  (*Id*.)  Plaintiff suspected Weinstein was "planting hecklers" at her book tour events, although she does not allege her suspicion was founded on any information or that she ever learned it to be true.  (*Id*.)  Plaintiff alleges that these events "took a substantial toll" on her "mental health and wellbeing."  (*Id*.)  Plaintiff decided to cancel her book tour.  (*Id*.)  As a result of the cancellation, Plaintiff alleges she suffered "concrete economic losses."  (*Id*., ¶ 152.)

## III.   ARGUMENT

### A.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  It requires "more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks and citation omitted).  "[M]ere conclusory statements" or "legal conclusions" do not

1   suffice—"they must be supported by factual allegations." *Id*. at 678–79.

2       The heightened pleading standard of Federal Rule 9(b) applies to civil RICO

3   claims when the predicate offenses involve fraud. *See Edwards v. Marin Park, Inc*.,

4   356 F.3d 1058, 1065–66 (9th Cir. 2004). The "circumstances" required by Rule

5   9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Cafasso,*

6   *U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)

7   (internal quotation mark and citation omitted). In addition, the allegations must set

8   forth "what is false or misleading about [a] statement, and why it is false." *Id.*

9   Claims made "on information and belief" are usually insufficient under Rule 9(b).

10  *Rice v. U.S. Bank Nat'l Ass'n*, No. CV 11-6214-GW (SSx), 2012 WL 10423291, at

11  *5 (C.D. Cal. Jan. 23, 2012) (holding that plaintiff's "upon information and belief"

12  allegations were insufficient to plead fraud).

13      A court may deny leave to amend when it "determines that the allegation of

14  other facts consistent with the challenged pleading could not possibly cure the

15  deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393,

16  1401 (9th Cir. 1986).

17      **B.    Plaintiff Fails To Plead A Cognizable Civil RICO Claim**

18      To properly plead a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff

19  must allege facts supporting the following elements with the required specificity:

20  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity

21  (known as predicate acts) (5) causing injury to plaintiff's business or property."

22  *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (internal quotation marks

23  omitted). Plaintiff fails to adequately plead (1) a pattern of racketeering; (2)

24  standing/causation; (3) wire fraud predicate acts by Bloom; or (4) the existence of

25  an enterprise.

26          1.    Plaintiff Has Not Pleaded A Pattern Of Racketeering Activity As

27                To Bloom

28      A "pattern" is defined as "at least two acts of racketeering activity" within a

ten-year period that are "related" and "amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237-39 (1989).  A RICO plaintiff "must allege at least two predicate acts by each defendant" to show a "pattern" of "racketeering" activity.  *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) (emphasis omitted); *Diallo v. Redwood Investments, LLC*, No. 18-CV-1793 JLS, 2020 WL 6060410, at *6 (S.D. Cal. Oct. 14, 2020) ("[W]here a plaintiff alleges RICO claims against multiple defendants, the plaintiff must allege at least two predicate acts by each defendant.") (internal quotation marks omitted); *Perez v. DirecTV Grp. Holdings, LLC*, No. 16-cv-1440, 2019 WL 6362471, at *3 (C.D. Cal. July 23, 2019) (plaintiff must adequately plead two predicate acts as to each defendant); *Richards v. Cty. of Los Angeles*, No. CV 17-400 BRO, 2017 WL 7411159, at *5-6 (C.D. Cal. Mar. 31, 2017) (dismissing RICO claim where "Plaintiff has not alleged facts that describe how each of the Defendants . . . committed two predicate acts in furtherance of that enterprise").  Here, paragraph 161 of the FAC lists all the alleged RICO predicate acts.  **Only one of these alleged acts involves Bloom (the email referenced in Paragraph 161(d)).  This alone is fatal to Plaintiff's RICO claims against Bloom.**

        Even if Plaintiff had alleged that Bloom engaged in at least two predicate acts of "racketeering" (which Plaintiff has not), the pattern allegations are still insufficient as matter of law.  Multiple RICO offenses, if arising from a single event or for a single purpose, are insufficient to establish a *pattern* of racketeering.  *See Howard v. Am. Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000) (a "'flurry' of false and misleading advertising" and other "repeated fraudulent schemes" were insufficient to show a pattern of racketeering because it all related to AOL's flat-fee program, a single business campaign); *Jarvis v. Regan*, 833 F.2d 149, 152-53 (9th Cir. 1987) (affirming dismissal of a RICO claim where the alleged pattern consisted of three acts of mail and wire fraud committed by legal aid organizations in

1    obtaining a single federal grant); *United Energy Owners Comm., Inc. v. U.S. Energy*
2    *Mgmt. Sys., Inc*., 837 F.2d 356, 360 (9th Cir. 1988) ("RICO's continuity
3    requirement is not satisfied if plaintiffs have merely alleged 'a single fraud
4    perpetrated on a single victim'") (citations omitted); *GSI Tech. v. United Memories,*
5    *Inc*., No. 5:13-cv-01081-PSG, 2014 WL 1572358, at *5 (N.D. Cal. Apr. 18, 2014)
6    (alleged series of predicate acts of mail and wire fraud were all operated with a
7    single goal—the acquisition of a contract to design a memory chip).

8         Here, Plaintiff alleges the wires—*i.e.*, the only actions alleged in the FAC that
9    are ostensibly prohibited by the RICO laws—were done over a brief period of time
10   and primarily for a single goal (at which defendants allegedly failed): to protect
11   Weinstein from negative public allegations.  (FAC, ¶ 161.)  This is insufficient.  *See*
12   *Turner v. Cook*, 362 F.3d 1219, 1230 (9th Cir. 2004) (affirming dismissal where
13   alleged actions "were finite in nature" and the alleged enterprise had ceased
14   activity); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992)
15   (where the only "goal" of the defendants was the successful prosecution of a state
16   court tort suit, "there was no threat of activity continuing beyond the conclusion of
17   that suit"); *id.* at 367 ("A pattern of activity lasting only a few months does not
18   reflect the 'long term criminal conduct' to which RICO was intended to apply.");
19   *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc*., 833 F.2d 1360, 1364 (9th
20   Cir. 1987) (where fraud was a joint venture to obtain broadcast rights, the threat
21   ended once the rights were obtained); *Howard*, 208 F.3d at 750 ("Activity that lasts
22   only a few months is not sufficiently continuous.").  With respect to Bloom in
23   particular, her actions took place over an extremely brief period—less than even a
24   few months—and that is what is relevant.  *See Gross v. Waywell*, 628 F. Supp. 2d
25   475, 495 (S.D.N.Y 2009) (complaint must demonstrate the RICO elements as to
26   each defendant individually).  Plaintiff's RICO claim against Bloom should
27   therefore be dismissed.

28

2. <u>Plaintiff Does Not Allege Bloom's Supposed Wire Fraud With Particularity</u>

To satisfy Rule 9(b) on a wire fraud-based RICO claim, a plaintiff must allege when the wires were used and how that use furthered a scheme to defraud. *See Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134, 1148-49 (C.D. Cal. 2011). A plaintiff must also identify the parties to the misrepresentations constituting the fraud. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (wire fraud allegations failed because plaintiffs did not allege which of the defendants made the telephone calls to purchase alleged bait products). In assessing if a pleading sufficiently pleads a claim under section 1962(c), courts "have been particularly sensitive to [Rule] 9(b)'s pleading requirements in RICO cases in which the 'predicate acts' are mail fraud and wire fraud, and have further required specific allegations as to which defendant caused what to be mailed (or made which telephone calls), and when and how each mailing (or telephone call) furthered the fraudulent scheme." *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1089 (C.D. Cal. 2011) (citation omitted). Applied here, Plaintiff's allegations fail to plead wire fraud because she has not alleged with specificity that Bloom "formed a scheme" to defraud, used the wires in furtherance of a scheme, sent particular documents via wire, or had the "specific intent to deceive or defraud." *Schreiber*, 806 F.2d at 1400.

Rather, the FAC alleges only a single purported improper use of the wires by Bloom.[1] (FAC, ¶ 161(d).) That allegation is pleaded on information and belief and

---

[1] Plaintiff must specifically allege that each named defendant committed the alleged RICO predicate acts. General allegations that a defendant was involved in a supposedly fraudulent enterprise as a "conspirator" are not sufficient. *Tatung Co. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1169-70 (C.D. Cal. 2016) (plaintiff's allegations that defendant was "the architect of many facets of fraud," and another party "took direction" from the defendant, were insufficient to infer that this defendant actually committed the predicate acts). Therefore, to the extent Plaintiff purports to plead claims against Bloom based on the alleged conduct of other defendants, those allegations as a matter of law do not support a RICO claim.

is generally alleged to have occurred in December 2016.  (*Id*.)  Plaintiff fails to allege any way in which this alleged email was fraudulent, or even who was supposedly defrauded—this email was not sent to Plaintiff and is not alleged to contain any false or illegal content.  Wire fraud requires that a defendant engage in a fraudulent scheme "to obtain money or property from another person."  *United States v. Miller*, 2020 WL 1317275, at *4-5 (9th Cir. Mar. 20, 2020) (internal citations omitted).

Here, Plaintiff merely alleges that Bloom sent an email to Weinstein—not to Plaintiff—in which she "pitched her reputation management services."  (FAC, ¶¶ 71, 161(d).)  That email, standing alone, does not constitute wire fraud, and certainly does not constitute fraud as to Plaintiff.  Plaintiff does not factually allege that Bloom had any specific intent to deceive or defraud Plaintiff at the time of the December 2016 email.  To the extent Plaintiff claims the email was in support of some broader fraud scheme, that is never alleged in the FAC.  Indeed, Plaintiff does not allege that the December 2016 email referenced the *Brave* manuscript that was supposedly the target of defendants' actions, that Bloom was aware of the manuscript's existence in December 2016, or that Bloom had any knowledge of Black Cube's involvement.  Simply put, this single email does not qualify as a wire fraud predicate act and cannot serve as the foundation for a RICO claim against Bloom.  Accordingly, Plaintiff has not satisfied her pleading requirements.  *Giron v. Hong Kong & Shanghai Bank Co.*, No. 2:15-cv-08869-ODW-JC, 2016 WL 6662726, at *6 (C.D. Cal. June 29, 2016) (Wright, J.) (dismissing RICO claim without leave to amend because, *inter alia*, plaintiff failed to sufficiently allege "any specific intent to deceive or defraud").

        3.      <u>Plaintiff Cannot Assert Purported RICO Claims Based On The Alleged Injury</u>

        a.      *Plaintiff Fails To Allege Causation*

"Statutory standing under RICO is narrower than injury-in-fact standing

under Article III." *Vega v. Ocwen Fin. Corp.*, No. 2:14-cv-04408-ODW (PLAx), 2015 WL 1383241, at \*11 (C.D. Cal. Mar. 24, 2015) (Wright, J.).  RICO confers standing on a plaintiff only if the alleged predicate offenses were both the "but for" *and* proximate cause of an injury to plaintiff's business or property.  *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 496 (1985) ("[P]laintiff only has standing if . . . he has been injured in his business or property by the conduct constituting the violation."); *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) ("[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a "but for" cause of his injury, but was the proximate cause as well.'") (quoting *Holmes v. Sec. Inv'r Prot. Corp.,* 503 U.S. 258, 268 (1992)).  The causation requirement is "stringent."  *Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, No. 5:11-cv-01860-ODW (FMOx), 2012 WL 1669726, at \*8 (C.D. Cal. May 14, 2012) (Wright, J.).

Plaintiff fails to allege a causal link between Bloom's supposed RICO predicate acts and any claimed injury.  Accordingly to Plaintiff, the chain of causation is: (1) Weinstein hires an investigator; (2) through the investigator, Weinstein obtains a copy of Plaintiff's unpublished manuscript and other information about Plaintiff; (3) news articles are published about Weinstein; (4) Plaintiff's book is released in January 2018; (5) Weinstein releases a statement the same day as the book's release disputing Plaintiff's account of events; (6) Plaintiff begins her book tour; (7) Plaintiff experiences some unspecified "odd and disturbing encounters right at the tour's beginning," though she does not describe those encounters; (8) Plaintiff becomes "concerned that WEINSTEIN was planting hecklers" at her book tour events (although she does not allege that this actually took place, only that she was "concerned"); (9) Plaintiff takes no steps to determine if that concern was merited; (10) Plaintiff cancels her book tour; and, finally, (11) as a result of Plaintiff's decision to cancel her book tour, her book-related income and relationships in the literary community suffer.  (FAC, ¶¶ 131-143, 149, 165.)

1    This attenuated chain of causation punctuated by a conclusory allegation of

2    proximate causation is far more remote than what is recognized under RICO.  *See*

3    *Harmoni Int'l Spice, Inc. v. Hume,* 914 F.3d 648, 653–54 (9th Cir. 2019) (A

4    "complaint does not plausibly allege proximate cause [under RICO] with respect to

5    damages for lost sales or harm to its business reputation [where it] merely asserts the

6    bare conclusion that it suffered these damages as a result of the defendants'

7    predicate acts of mail and wire fraud."); *Prime Partners*, 2012 WL 1669726, at *10

8    ("'[T]he general tendency of the law, in regard to damages at least, is not to go

9    beyond the first step,' and that 'general tendency' applies with full force to

10   proximate cause inquiries under RICO.").  Plaintiff's alleged injuries resulted from

11   her decision to cancel her book tour, not from anything Bloom did.  Any connection

12   between the alleged interstate use of wires and her subsequent claimed injuries

13   resulting from that cancellation is simply "too remote" to satisfy proximate

14   causation.  *Encarnacao v. Phase Forward Inc*., No. CV 11-05090 ODW (PLA),

15   2012 WL 404971, at *3–4 (C.D. Cal. Feb. 7, 2012) (Wright, J.) (dismissing RICO

16   claim with prejudice because it did "not appear that Plaintiff could plead any set of

17   facts plausibly establishing the requisite causal relationship between Plaintiff's

18   alleged fraud claim and his resulting injury to constitute a viable RICO claim").

19                              b.   *Plaintiff Fails To Sufficiently Allege Any Concrete*

20                                   *Financial Loss*

21   Plaintiff also lacks standing because the FAC fails to allege facts

22   demonstrating a concrete financial loss  "[A] RICO injury must be a concrete

23   financial loss, and not mere injury to a valuable intangible property interest.  A

24   plaintiff cannot maintain a RICO claim where the loss he has suffered is purely

25   speculative." *Camarillo v. City of Maywood*, No. CV 07-3469 ODW (SHx), 2008

26   WL 4056994, at *2 (C.D. Cal. Aug. 27, 2008) (Wright, J.) (citations and quotation

27   marks omitted).  Here, Plaintiff has only alleged purported injury to intangible

28   property interests and speculative injuries.

1    Plaintiff alleges that her damages consist of, for example, "interference with

2    her relationships with her publisher and the many retailers involved in [her] book

3    tour" that she cancelled.  (FAC, ¶ 165.)  Plaintiff complains of "decreased book

4    sales," "lost commercial opportunities," and "fees and costs paid to [her] literary

5    agents."  (*Id*.)  None of these speculative complaints suffices to establish a

6    cognizable RICO damages claim.  It is true that, under certain circumstances, loss of

7    employment opportunities may form the basis of a RICO claim.  *See Diaz v. Gates*,

8    420 F.3d 897, 901 (9th Cir. 2005).  However, that general rule does not save

9    Plaintiff's claim, given that Plaintiff does not identify any supposed "lost

10   employment opportunities," and all alleged economic loss derives directly from

11   claimed reputational damage resulting from Plaintiff's decision to cancel her book

12   tour.  (FAC, ¶ 165.)  *See Camarillo*, 2008 WL 4056994, at *2 (dismissing RICO

13   claim with prejudice because, *inter alia*, plaintiff "offer[ed] no *facts* capable of

14   supporting his property injury").

15                    4.    The FAC Lacks Sufficient Enterprise Allegations

16                To properly plead a RICO claim, a plaintiff must also allege the existence of

17   an enterprise, *i.e.*, she "must plead that the enterprise has (A) a common purpose,

18   (B) a structure or organization, and (C) longevity necessary to accomplish the

19   purpose."  *Eclectic Prop. E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 997

20   (9th Cir. 2014).  The commonality and coordination must go beyond the level of

21   cooperation inherent in typical commercial relationships.  *See*, *e.g.*, *United Food &*

22   *Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen*

23   *Co*., 719 F.3d 849, 854-55 (7th Cir. 2013) ("enterprise" allegations failed to show

24   that the defendants involved themselves in each other's business beyond their usual

25   commercial relationship).  A RICO enterprise must also exist separately from the

26   purported pattern of racketeering activity.  *Crest Constr. II, Inc. v. Doe*, 660 F.3d

27   346, 354-55 (8th Cir. 2011) ("In deciding whether an alleged RICO enterprise has

28   an ascertainable structure distinct from the pattern of racketeering activity, we must

determine if the enterprise would still exist were the predicate acts removed from the equation.") (citation and internal quotation marks omitted).

Here, Plaintiff lumps all defendants (plus other non-defendant individuals) into an amorphous entity she calls the "Weinstein-Protection Enterprise." (FAC, ¶ 156.) This falls far short of what is required. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant.") (cleaned up); *Crest*, 660 F.3d at 355 (holding that bare allegations of interrelation and association between companies was insufficient to plead a RICO enterprise). Absent from the FAC are factual allegations showing "the requisite *connection* between [Bloom's] association with the enterprise and [Bloom's] participation in the alleged criminal activity. That missing connection is how each individual Defendant exploited his or its participation in the criminal activity as a means *to participate in the operation or management* of the enterprise with which each Defendant was associated." *Prime Partners*, 2012 WL 1669726 at *12 (emphasis in original).

The absence of these allegations is particularly significant here, where Bloom is a licensed and practicing attorney. In order to "participate, directly or indirectly, in the conduct of [an] enterprise's affairs, one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (internal quotation marks omitted). Because Bloom provided professional services to Weinstein, Plaintiff's generalized allegations of some kind of association are insufficient. *See Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (attorney's legal work spanning multiple years was insufficient to impute RICO liability because, *inter alia*, the attorney's work did not begin until after the inception of the enterprise, the attorney held no "formal position" in the organization, and the attorney did not play a part in "directing the affairs of the enterprise"); *see also Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248, 254

(S.D.N.Y. 1997) ("[I]t is well established that the provision of professional services by outsiders, such as accountants, to a racketeering enterprise, is insufficient to satisfy the participation requirement of RICO, since participation requires some part in directing the affairs of the enterprise itself.").

Plaintiff has not alleged any ascertainable structure or decision-making process distinct from the acts that allegedly constitute a pattern of racketeering activity.  Merely repeating the word "enterprise" does not convert various individuals and organizations into a structure that falls under RICO.  *See Mattel, Inc. v. MGA Entm't, Inc*., 782 F. Supp. 2d 911, 1041 (C.D. Cal. 2011) (enterprise allegations failed due to absence of allegations regarding a shared common purpose or operation as a continuing unit); *Eaves v. Designs for Fin., Inc*., 785 F. Supp. 2d 229, 263 (S.D.N.Y. 2011) (dismissing RICO claim where plaintiff failed to "allege any details regarding the hierarchy or organization of the alleged enterprise, or to advance any facts suggesting that the constituent members of the alleged enterprise functioned as a unit").  Plaintiff's RICO claim should therefore be dismissed.

### 5.   Plaintiff's RICO Conspiracy Claim (Count II) Fails

Because Plaintiff fails to state a claim for primary violations of RICO under section 1962(c), her RICO conspiracy claim under section 1962(d) must also be dismissed.  *See Howard*, 208 F.3d at 751 ("Even if Plaintiffs properly claimed that the defendants agreed to be a part of an enterprise, the failure to allege substantive violations precludes their claim that there was a conspiracy to violate RICO.").  But even assuming *arguendo* that Plaintiff properly pleaded a primary RICO violation, she has still insufficiently alleged a RICO conspiracy pursuant to 18 U.S.C. § 1962(d).  To plead a RICO conspiracy, a plaintiff must allege either an agreement to violate the substantive provisions of RICO, or that the defendants agreed to commit or participate in the commission of two or more predicate offenses.  *See id*. at 751 (affirming dismissal of RICO conspiracy claim).  Conclusory statements that all defendants conspired to engage in all the substantive offenses fail to state a claim.

*See Stewart v. Wachowski*, No. CV 03-2873-MMM-(VBKx), 2005 WL 6184235, at *14 n.73 (C.D. Cal. June 14, 2005).  Plaintiff's conclusory allegations do not satisfy these requirements.

### C. None Of The At-Issue State Law Claims Has Merit

#### 1. Plaintiff Has Failed To State A Claim Against Bloom For Invasion Of Privacy (Count V)

##### a. *The Invasion of Privacy Claim Fails On Statute of Limitations Grounds*

As she did in her original complaint, Plaintiff alleges in the FAC that various supposed invasions of privacy took place in the spring and summer of 2017.  (FAC, ¶¶ 94-96, 122.)  Yet Plaintiff did not file her original complaint until October 23, 2019.  Therefore, Plaintiff's invasion of privacy claim is time-barred, whether a one-year or two-year statute of limitations applies.  *See Maheu v. CBS, Inc*., 201 Cal. App. 3d 662, 676 (1988) (describing one-year limitations period); *Quan v. Smithkline Beecham Corp*., 149 F. App'x 668, 670 (9th Cir. 2005) (indicating that the applicable statute of limitations changed from one year to two years in 2003).  Plaintiff attempts to salvage this time-barred claim by adding new allegations to the FAC that are meant to demonstrate why the limitations period did not begin to run, as to Bloom, until September 2019.  But these new allegations actually have the opposite effect—they emphasize that, as to Bloom, the limitations period began to run, at the latest, in early October 2017, more than two years before the original complaint was filed.

According to the FAC, Plaintiff's literary agent and alleged member of the "Weinstein-Protection Enterprise" Lacy Lynch reached out to her in March 2017 to communicate that Bloom wanted to speak to Plaintiff.  (FAC, ¶¶ 88, 156.)  Plaintiff alleges she believed at the time (March 2017) that Bloom "wanted an opportunity to convince MCGOWAN that WEINSTEIN had changed, and he was now a family man who wanted to make amends."  (*Id.*)  In other words, **Plaintiff, by her own**

1  **admission, believed in March 2017 that Bloom was taking actions for**

2  **Weinstein's benefit via Plaintiff's literary agent (who was also allegedly a**

3  **Weinstein co-conspirator).**  McGowan further alleges that "BLOOM did not reveal

4  that she was actually on retainer as WEINSTEIN's reputation manager and advising

5  him about how to discredit MCGOWAN."  (*Id.*)  Bloom admits, however, that

6  **Bloom's "involvement on WEINSTEIN's team did become publicly known in**

7  **October 2017**."  (*Id.*, ¶ 146.)  In other words, even according to Plaintiff, **she**

8  **believed in March 2017 that Bloom was reaching out to her by proxy for**

9  **Weinstein's benefit and learned by October 2017 at the latest that Bloom had**

10  **allegedly been secretly working for Weinstein at the time of the March 2017**

11  **overtures made via Plaintiff's literary agent/Weinstein's co-conspirator**.  By

12  any reasonable interpretation, the statute of limitations on Plaintiff's claims began to

13  run at that point, when Plaintiff learned that Bloom was (according to Plaintiff) a

14  secret member of Weinstein's "team" and "advisor to WEINSTEIN" who had been

15  using her skills to benefit Weinstein at Plaintiff's expense.

16  　　　Plaintiff artfully avoids alleging the particular date in October 2017 on which

17  Bloom's work for Weinstein became publicly known, ostensibly in order to create

18  ambiguity as to whether or not it was more than two years before she filed her

19  October 23, 2019 complaint.  This ambiguity is, in itself, fatal to Plaintiff's claim;

20  the delayed discovery rule only applies where a plaintiff specifically pleads the

21  "time and manner" of discovery.  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th

22  797, 815 (2005).  However, the news articles incorporated by reference into the

23  FAC fill that gap and show that the statute of limitations has definitively run.[2]  For

---

[2] "Certain written instruments attached to pleadings may be considered part of the pleading."
*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing Fed. R. Civ. P. 10(c)). "Even if
a document is not attached to a complaint, it may be incorporated by reference into a complaint if
the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's
claim." *Id.*  "[T]he district court may treat such a document as part of the complaint, and thus may
assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*

example, the FAC quotes a public statement by Bloom that she advised Weinstein: "don't go after the women."  (FAC, ¶ 144.)  That public statement by Bloom— "don't go after the women"—is contained in an October 19, 2017, article in the Los Angeles Times.[3]  The FAC further quotes a public statement by Bloom that she would not be "digging up dirt" on Weinstein's accusers.  (FAC, ¶ 144.)  That statement was made in an October 6, 2017 televised interview on Good Morning America that was widely reported across numerous media outlets.[4]  Accordingly, based on the FAC's own allegations, Bloom's work on Weinstein's behalf became public more than two years prior to the filing of the original complaint, and Plaintiff believed by then that Bloom had targeted her on Weinstein's behalf by way of her literary agent.  Plaintiff's FAC contains no allegations of any supposed "reasonable diligence" she conducted after Bloom's role became known to her.  *Fox*, 35 Cal. 4th at 815.  The invasion of privacy claim must therefore be dismissed.

> b.  *The Invasion of Privacy Claim Fails Because Plaintiff Has Failed to Plead the Basic Elements of the Claim*

Plaintiff fails to sufficiently plead against Bloom the basic elements of an invasion of privacy claim.  Plaintiff admits that she chose by 2016—well before any alleged invasion of privacy—to widely publish the information contained in the *Brave* manuscript, including detailed information about "the painful episode in her life involving WEINSTEIN."  (FAC, ¶ 6.)  That book, with all the supposedly "private" information, was in fact published in 2018.  (*Id*.)  Plaintiff further admits that in May 2017 she voluntarily gave Filip (a Black Cube agent) access to the draft *Brave* manuscript on her computer.  (*Id*., ¶ 202.)  Plaintiff voluntarily spoke with

---

[3] Amy Kaufman, *Harvey Weinstein is done.  But what about Lisa Bloom?*, L.A. Times, Oct. 19, 2017, 3:30 a.m. PT, *available at* https://www.latimes.com/entertainment/movies/la-et-mn-lisa-bloom-20171019-story.html

[4] Andrew Kirell, *ABC Grills Lisa Bloom Over Why She's Aiding Harvey Weinstein*, The Daily Beast, Oct. 6, 2017, 12:50 p.m. ET, *available at*  https://www.thedailybeast.com/abc-grills-lisa-bloom-over-why-shes-aiding-harvey-weinstein

1 Filip and revealed information.  (*Id*., ¶ 96.)

2          These circumstances and decisions do not support an invasion of privacy

3 claim, which fundamentally requires an "actual expectation of privacy."  *Hill v.*

4 *Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994) ("[T]he plaintiff in an

5 invasion of privacy case must have conducted himself or herself in a manner

6 consistent with an actual expectation of privacy, *i.e*., he or she must not have

7 manifested by his or her conduct a voluntary consent to the invasive actions of

8 defendant.") (citation and internal quotation marks omitted).  Plaintiff could not

9 have had an actual expectation of privacy in information that she had chosen in 2016

10 to publish to the world and did in fact publish in 2018.  *See Gill v. Hearst Pub. Co*.,

11 40 Cal. 2d 224, 230 (1953) (plaintiff waived right of privacy in "pose voluntarily

12 assumed in a public market place").  Plaintiff's invasion of privacy claim must

13 therefore be dismissed.  In addition, to the extent this claim is based on a vicarious

14 liability theory, it also must be dismissed because Plaintiff has failed to sufficiently

15 allege the existence of a principal-agent relationship between Bloom and Black

16 Cube as to the facts underlying this claim.

17          2.   <u>Plaintiff Has Failed To State A Claim Against Bloom For</u>

18                <u>Computer Crimes (Count VI)</u>

19          Plaintiff alleges that all defendants engaged in computer crimes in violation of

20 "Cal. Civ. Code. § 502(c)(2), (c)(7), and (e)(1)."  (FAC, Count VI.)  Plaintiff likely

21 intended to reference Section 502 of the Penal Code, not the Civil Code.  Section

22 502 prohibits certain access to computers "without permission" in order to protect

23 "computer data and computer systems."  Cal. Penal Code § 502(a), (c).  The Rule

24 9(b) heightened pleading standard applies to this claim.  *Craigslist, Inc. v. Mesiab*,

25 No. C 08-05064 CW (MEJ), 2009 WL 10710286, at *10 (N.D. Cal. Sept. 14, 2009)

26 ("Claims for violations of Section 502 are subject to Federal Rule 9(b)'s heightened

27 pleading requirement."), *adopted by* No. 08-05064 CW, 2009 WL 10710276 (N.D.

28 Cal. Oct. 19, 2009).

1       Plaintiff's Section 502 claim fails as a matter of law.  Plaintiff acknowledges

2   that *she gave permission* to access the information in question on her computer in

3   May 2017.  (FAC, ¶ 202.)  Any other instances of allegedly unauthorized access are

4   pleaded entirely on information and belief without any factual specificity or

5   reference to technical breaches and, as such, they do not satisfy the Rule 9(b)

6   standard.  (*Id*., ¶¶ 122, 203, 204.)  In addition, the supposed violations that took

7   place in New York (*id*., ¶¶ 122, 195) are outside the territorial reach of this

8   California statute.  *Sullivan v. Oracle Corp*., 51 Cal. 4th 1191, 1207 (2011) ("[W]e

9   presume the Legislature did not intend a statute to be operative, with respect to

10  occurrences outside the state, . . . unless such intention is clearly expressed or

11  reasonably to be inferred from the language of the act or from its purpose, subject

12  matter or history.") (omission in original) (citation and internal quotation marks

13  omitted).

14      Plaintiff also fails to plead any damage or loss "by reason of" any prohibited

15  activity.  Section 502 creates a civil remedy for the owner of a computer "who

16  suffers damage or loss by reason of a violation" of that section.  Cal. Penal Code §

17  502(e)(1).  The civil remedy created by Section 502(e) provides allows (though not

18  exclusively) damages for "any expenditure reasonably and necessarily incurred by

19  the owner or lessee to verify that a computer system, computer network, computer

20  program, or data was or was not altered, damaged, or deleted by the access."  *Id*.

21  The FAC does not identify any such expenditure, or any other damage or loss

22  resulting directly from the alleged violation.  Rather, Plaintiff only alleges that the

23  supposed violation allowed defendants to be "prepared . . . to discredit and malign

24  MCGOWAN publicly."  (FAC, ¶ 206.)  This alleged harm is entirely ambiguous

25  and far too remote from the supposed intrusion to support a cause of action under

26  Section 502.

27      Finally, since Bloom is not alleged to have accessed Plaintiff's computer, this

28  claim must be based entirely on a vicarious liability theory.  Plaintiff has not alleged

facts sufficient to show that Bloom is vicariously liable for Black Cube's alleged conduct with respect to the conduct at issue in Count VI.  Further, to the extent this claim is dismissed as to the Black Cube defendants, it must also be dismissed as to Bloom.

3. <u>Plaintiff Has Failed To State A Claim Against Bloom For Intentional Infliction Of Emotional Distress (Count VII)</u>

a. *Plaintiff's Claim for IIED Is Barred By The Two-Year Statute Of Limitations*

Simply put, the two-year statute of limitations has run on Plaintiff's emotional distress claim.  *Wassmann v. S. Orange Cty. Cmty. Coll. Dist.*, 24 Cal. App. 5th 825, 852–53 (2018) (the relevant statute of limitations is two years).  As to Bloom, Plaintiff alleges that a third party (her literary agent and Weinstein's alleged co-conspirator Lacy Lynch) made an overture to Plaintiff on Bloom's behalf took place in March 2017, which allegedly caused emotional distress.  (FAC, ¶¶ 88, 156, 213.) That is as close as Plaintiff comes to alleging contact between herself and Bloom. Of that conversation, Plaintiff alleges she understood that "that BLOOM wanted an opportunity to convince MCGOWAN that WEINSTEIN had changed, and he was now a family man who wanted to make amends."  (*Id.*)  However, as described in detail above (*supra* § III(C)(1)(a)), Plaintiff's own allegations demonstrate that she knew more than two years prior to filing of the complaint that Bloom had been working for Weinstein, allegedly in a covert manner.  The two-year statute of limitations has therefore run as to Bloom.

b. *Plaintiff Fails To Allege The Elements Of An IIED Claim*

"The elements of a cause of action for intentional infliction of emotional distress are (i) outrageous conduct by defendant, (ii) an intention by defendant to cause, or reckless disregard of the probability of causing, emotional distress, (iii) severe emotional distress, and (iv) an actual and proximate causal link between the tortious conduct and the emotional distress."  *Nally v. Grace Cmty. Church*, 47 Cal.

3d 278, 300 (1988).  In order to avoid dismissal of an IIED claim, "the plaintiff must allege with great specificity the acts which he or she believes are so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Yau v. Santa Margarita Ford, Inc*., 229 Cal. App. 4th 144, 160–61 (2014).  Here, Plaintiff's allegations against Bloom are too vague to satisfy even the most basic pleading standard and demonstrate neither "outrageous conduct" nor wrongful intent.

Plaintiff alleges Bloom is liable for intentional infliction of emotional distress because she "tried to put on a friendly face toward [Plaintiff], as a supposed ally, when really the approach was part of BLOOM's explicit plan to find out what [Plaintiff] wanted and silence her."  (FAC, ¶ 213.)  Putting on a "friendly face," even if disingenuous, is not "outrageous conduct."  *Yau*, 229 Cal. App. 4th at 160–61 ("Conduct, to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized society.").  Indeed, even outright lying cannot support an IIED claim.  *See McMahon v. Craig*, 176 Cal. App. 4th 1502, 1517 (2009) (affirming dismissal of IIED claim where veterinarian, who "knew of [the plaintiff's] close attachment" to her dog, allegedly lied to the plaintiff to conceal that malpractice had caused dog's death).

Moreover, in the absence of any actual contact between Plaintiff and Bloom—all that is alleged is one overture, by proxy—Plaintiff cannot demonstrate Bloom's supposed intent to harm, let alone an actual and proximate link between Bloom's alleged conduct and any claimed damages, both of which are essential elements of this claim.  Plaintiff's IIED claim must therefore be dismissed.  In addition, to the extent this claim is based on a vicarious liability theory, it must be dismissed because Plaintiff has failed to sufficiently allege the existence of a principal-agent relationship between Bloom and Black Cube as to the facts underlying this claim, and must also be dismissed as to Bloom if it is dismissed as to Black Cube.

4. <u>Plaintiff Has Failed To State A Claim Against Bloom For Negligent Hiring And Supervision (Count VIII)</u>

    a. *Plaintiffs' Negligent Hiring And Supervision Claim Is Barred By The Two-Year Statute Of Limitations*

As discussed in detail above (*supra* § III(C)(1)(a)), the FAC demonstrates that Plaintiff believed, for more than two years prior to filing her original complaint, that Bloom was using third-party agents to make overtures to Plaintiff while secretly working for Weinstein.  Count VIII is based entirely on this same alleged conduct— Bloom's supposed clandestine direction of third-party agents.  Accordingly, the two-year statute of limitations period has run on the negligent hiring and supervision claim.  *See Kaldis v. Wells Fargo Bank, N.A.*, 263 F. Supp. 3d 856, 867 (C.D. Cal. 2017) (citing Cal. Code Civ. Proc. § 335.1).

    b. *Plaintiff Fails To Allege Essential Elements Of A Claim For Negligent Hiring And Supervision*

Even beyond being time-barred, Plaintiff's negligent hiring and supervision claim fails on the merits.  Plaintiff alleges that Bloom violated a duty "not to hire or rely upon agents" who acted improperly and to "properly . . . supervise and monitor the activities of agents [she] hired and used."  (FAC, ¶¶ 221-222.)  But Plaintiff offers no support for the premise that Bloom hired or supervised Black Cube or that she could have reasonably foreseen any injury.  *See Phillips v. TLC Plumbing, Inc*., 172 Cal. App. 4th 1133, 1142 (2009) (There are "two elements necessary for a duty to arise in negligent hiring and negligent retention cases—the existence of an employment relationship *and* foreseeability of injury.").  According to the FAC, Black Cube performed work on behalf of Weinstein (FAC, ¶¶ 48, 108-109, 113-114); was hired by Boies on Weinstein's behalf (*id*., ¶¶ 46, 48, 108, 118); was paid by Boies (*id*., ¶¶ 50, 109, 111); began its work before Bloom was engaged (*id*., ¶¶ 46, 68); and had minimal contact with Bloom (*id*., ¶ 121).  Notably, Plaintiff does not allege Bloom entered into an employment contract with Black Cube.  Nor does

the FAC explain how Bloom could have known or reasonably foreseen that Black Cube would use improper tactics. **The FAC acknowledges that "the agency's agreements with clients stated that attorneys vetted its tactics and that it would conduct itself lawfully."** (*Id.*, ¶ 47.) Plaintiff also does not identify any way in which the alleged negligent hiring—as opposed to Plaintiff's choice to cancel her book tour—proximately caused any injury. (*Id.*, ¶ 225.) Plaintiff's allegations are therefore insufficient under California law.

### 5. Bloom Is Not Vicariously Liable For Every Alleged Action Of Black Cube

Plaintiff's at-issue state law claims against Bloom are pleaded primarily on theories of vicarious liability. As to Bloom, Plaintiff appears to base Counts V, VI, and VII on a vicarious liability theory (at least in part). Yet, no pleaded facts as to these Counts demonstrate a principal-agent relationship between Bloom and Black Cube (or between Bloom and anyone else); they must therefore be dismissed.[5]

"An agent is one who represents another . . . in dealings with third persons." Cal. Civ. Code § 2295. It "is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Van't Rood v. County of Santa Clara*, 113 Cal. App. 4th 549, 571 (2003) (citation and internal quotation mark omitted). "[F]ormation of an agency relationship is a bilateral matter. Words or conduct by both principal and agent are necessary to create the relationship." *Id.* (citation and internal quotation marks omitted). "In the absence of the essential characteristic of the right of control, there is no true agency." *Id.* at 572 (citation

---

[5] The Court has previously found that vicariously liability was sufficiently pleaded with respect to the state-law fraud claims (Counts III and IV) only. (ECF No. 66 at 17.) The remaining state-law claims are based on different alleged facts and different conduct by Black Cube, including new and different allegations contained in the First Amended Complaint. The sufficiency of the vicarious liability allegations in Plaintiff's First Amended Complaint as to Counts V, VI, and VII has therefore not yet been determined.

1  and internal quotation marks omitted).

2       Here, the FAC contains no factual allegations that Black Cube acted as

3  Bloom's agent in connection with Counts V, VI, or VII.  To the contrary, Plaintiff

4  alleges that Black Cube worked on Weinstein's behalf (FAC, ¶¶ 48, 108-109, 113-

5  114); Black Cube was engaged on Weinstein's behalf by Boies (*id*., ¶¶ 46, 48, 108,

6  118); Black Cube was paid by Boies (*id*., ¶¶ 50, 109, 111); and Black Cube's work

7  began before Bloom had any involvement with Weinstein or Boies (*id*., ¶¶ 46, 68).

8  Plaintiff alleges only a single meeting between Bloom and Black Cube—the date of

9  which is unspecified—during which Black Cube's work was "discussed" (as

10 opposed to "directed"). (*Id*., ¶ 121.)  Absent are any facts showing the manifestation

11 of a principal-agent relationship through which Bloom generally controlled Black

12 Cube's conduct, or even allegations regarding if or when Bloom learned about

13 Black Cube's alleged actions.  Each claim that is based on Bloom's purported

14 liability for Black Cube's actions must be dismissed.

15 **IV.   CONCLUSION**

16      For the foregoing reasons, Bloom respectfully requests that the Court issue an

17 order dismissing Counts I, II, V, VI, VII, and VIII of Plaintiff's First Amended

18 Complaint with prejudice.

19

20 DATED:  March 23, 2021          BROWNE GEORGE ROSS
                                   O'BRIEN ANNAGUEY & ELLIS LLP
21                                   Eric M. George
                                     Noah S. Helpern
22

23                              By:  _/s/Noah S. Helpern_____
24                                   Attorneys for Defendants Lisa Bloom and The
                                     Bloom Firm
25

26

27

28