Phyllis Kupferstein, Esq. [SBN 105898]
pk@kupfersteinmanuel.com
Kupferstein Manuel LLP
865 South Figueroa Street
Suite 3338
Los Angeles, California 90017
Telephone: (213) 988-7531
Facsimile: (213) 988-7532

Attorneys for Defendant
Harvey Weinstein

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROSE MCGOWAN,<br><br>Plaintiff,<br><br>vs.<br><br>HARVEY WEINSTEIN, DAVID BOIES, BOIES SCHILLER FLEXNER LLP, LISA BLOOM, THE BLOOM FIRM, B.C. STRATEGIES LTD, D/B/A BLACK CUBE,<br><br>Defendants. | Case No. 2:19-cv-09105-ODW-GJS<br>Honorable Otis D. Wright<br><br>**DEFENDANT HARVEY WEINSTEIN'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Proposed Order Submitted Concurrently Herewith]*<br><br>Date: June 14, 2021<br>Time: 1:30 p.m.<br>Place: Courtroom SD<br><br>Trial Date: None Set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 14, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom SD of this Court,

located at 350 West 1st Street, Los Angeles, California 90012, Defendant Harvey Weinstein ("Weinstein") will and hereby does move this Court for an order dismissing Claims 1, 2, 6 and 7 of the First Amended Complaint filed by Plaintiff Rose McGowan (ECF No. 69).

Weinstein moves on the grounds that, pursuant to Federal Rule of Civil Procedure 12(b)(6), McGowan fails to state any claim against him upon which relief can be granted. This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in support of the Motion filed concurrently herewith, the motions to dismiss of the other defendants (to the extent applicable to the claims against Weinstein), the record in this action, and any evidence and argument that may be presented at or before the hearing on the Motion.

This Motion is made following the conference of counsel required pursuant to Local Rule 7-3, which took place on March 12, 2021.

DATED: March 23, 2021 KUPFERSTEIN MANUEL LLP

By: Phyllis Kupferstein
Phyllis Kupferstein
Attorneys for Defendant
Harvey Weinstein

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. SUMMARY OF THE ACTION .......... 2

III. ARGUMENT .......... 4

A. McGowan's Amended RICO Claims Should Be Dismissed .......... 4

1. McGowan Does Not Satisfy RICO's Continuity Requirement Because She Has Not Properly Alleged That her Newly-Identified Victims Were Victims of Racketeering Activity .......... 4

2. McGowan Lacks RICO Standing Because She Has Not Sustained an Injury to Her Business or Property Directly Caused by the Racketeering Conduct She Alleges .......... 7

3. McGowan's Amended RICO Conspiracy Claim Also Fails .......... 8

B. McGowan's Amended Computer Crimes Claim Fails. .......... 8

C. McGowan's Amended IIED Claim Must Be Dismissed Because She Fails to Allege Facts Showing It Is Not Time Barred .......... 11

D. The Court Should Dismiss Claims 1, 2, 6 and 7 With Prejudice .......... 13

E. This Court Should Decline to Exercise Supplemental Jurisdiction Over Any of Her Surviving State-Law Claims .......... 14

IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

## Cases

*Albrecht v. Lund*, 856 F.2d 111 (9th Cir.), *amended*, 856 F.2d 111 (9th Cir. 1988) ........................ 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................ 4

*Avalos v. Baca*, 596 F.3d 583 (9th Cir. 2010) ........................ 6

*Bell Alt. v. Twombly*, 550 U.S. 544 (2007) ........................ 4, 11

*Berg v. First State Ins. Co.*, 915 F.2d 460 (9th Cir. 1990) ........................ 7

*Camarillo v. Maywood*, 2008 WL 4056994 (C.D. Cal. Aug. 27, 2008) ........................ 7

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) ........................ 14

*Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083 (9th Cir. 2002) ........................ 7

*Curry v. Yelp Inc.*, 875 F.3d 1219 (9th Cir. 2017) ........................ 13

*Cwick v. Life Time Fitness, Inc.*, 2004 WL 2065063 (D. Minn. Sept. 2, 2004) ........................ 6

*Doe v. Roe*, 958 F.2d 763 (7th Cir. 1992) ........................ 7

*E.G. by & through Lepe v. Maldonado*, 2014 WL 5472654 (N.D. Cal. Oct. 28, 2014) ........................ 14

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005) ........................ 11, 12

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) ........................ 5, 6

*Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (1988) ........................ 12

*Kelly v. United States*, 140 S. Ct. 1565 (2020) ........................ 6

*Lenk v. Monolithic Power Sys., Inc.*, 2017 WL 4586832 (N.D. Cal. June 1, 2017) ........................ 14

*Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, 2012 WL 1669726 (C.D. Cal. May 14, 2012)....................2

*Rich v. Shrader*, 823 F.3d 1205 (9th Cir. 2016)....................13

*Ritchie v. Sempra Energy*, 2013 WL 12171757 (S.D. Cal. Oct. 15, 2013)....................6

*Sanford v. Member Works, Inc.*, 625 F.3d 550 (9th Cir. 2010)....................8

*Sedima, S.P.R.I v. Imrex Co.*, 473 U.S. 479 (1985)....................4

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)....................4

*TMI Prods., Inc. v. Rosen Entm't Sys. L.P.*, 2014 WL 12601062 (C.D. Cal. May 9, 2014)....................14

*United States v. Botsvynyuk*, 552 F. App'x 178 (3d Cir. 2014)....................6

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015)....................9

*United States v. Holmes*, 2020 WL 66656 (N.D. Cal. Feb. 11, 2020)....................6

*United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020)....................6

*Unruh-Haxton v. Regents of Univ. of Calif.*, 162 Cal. App. 4th 343 (2008)....................11

*W. Assocs. Ltd. P'ship, ex rel. v. Market Square Assocs.*, 235 F.3d 629 (D.C. Cir. 2001)....................5

*Wegner v. Wells Fargo Bank, N.A.*, 791 F. App'x 669 (9th Cir. 2020)....................6

**Statutes and Rules**

18 U.S.C. § 1962(c)-(d)....................4

18 U.S.C. § 1962(d)....................8

Cal. Civ. Proc. Code § 335.1....................11

Cal. Civ. Code § 502....................3, 8, 9, 10

Rule 12(b)(6)....................4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On December 7, 2020, this Court dismissed all but two of plaintiff's original claims, including all of her federal claims (ECF No. 66, "Order"). The Order described the threshold deficiencies in her claims,[1] specifying the type of factual allegations that were missing and explaining the legal standards that must be met were she to attempt to replead those claims. Plaintiff's First Amended Complaint (ECF No. 69) ("FAC") fails to cure those deficiencies. Although she has embellished her prior recitation of alleged facts, she has added little of substance, and certainly not enough to state a viable claim for relief.

Thus, McGowan's restated RICO claim (Claim 1) still fails because, despite the inclusion of allegations involving newly-identified individuals, she still (1) alleges only a single alleged wire fraud with a single victim, and thus does not establish a closed-ended pattern of, or open-ended and ongoing, racketeering activity; and (2) fails to establish RICO standing as she does not allege an injury directly caused by racketeering activity. Her RICO conspiracy claim (Claim 2) likewise fails given the inadequacy of her substantive RICO claim.

McGowan's state law claim for alleged unlawful computer access (Claim 6) fails because her speculation does not establish the threshold element of "access" to "a computer, computer system, or computer network," required to state such a claim. Plaintiff's IIED claim (Claim 7) remains untimely, as she still fails to plead facts establishing delayed discovery to toll the statute of limitations.

Despite the Court's clear directions, plaintiff's second attempt to plead legally and factually proper claims fails. This failure confirms that the deficiencies

[1] The Court did not address all of the issues raised in the motions to dismiss the original complaint filed by Weinstein and the other defendants, finding that substantial threshold defects in the dismissed claims did not require analysis of additional reasons why plaintiff's claims merited dismissal. Order Granting in Part and Denying in Part Defs.' Mot. to Dismiss, at 22 n.12, 31 n.16 (Dec. 7, 2020), Dkt. No. 66 (hereinafter, "Order"). Such issues not previously addressed by the Court are raised anew here.

in McGowan's claims cannot be cured and further amendment would be futile. *Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, 2012 WL 1669726, at *12 (C.D. Cal. May 14, 2012) (Wright, J.) (dismissing with prejudice where plaintiffs were "aware of the significant pleading deficiencies" but "made only meager factual amendments," thereby indicating "that any attempt to amend . . . would be futile"). Accordingly, this Court should dismiss with prejudice McGowan's lone remaining federal claims (Claims 1 and 2), as well as her state-law based claims for improper computer access and intentional infliction of emotional distress (Claims 6 and 7).

## II. SUMMARY OF THE ACTION

Plaintiff's original complaint asserted several claims against Harvey Weinstein ("Weinstein"), his lawyers, and an investigative firm, alleging that over a period of less than a year, they had engaged in a scheme to defraud her and invade her privacy, all for the alleged purpose of obtaining insight into her then-unpublished and unfinished memoir (which was published in January 2018). (ECF No. 1, ¶¶ 64-67, 70-72, 75-77, 97, 103-05, 107-10, 121-22, 127.)

On December 7, 2020, this Court granted a motion to dismiss all of McGowan's federal claims and all but two of her supplemental state claims. The Court found McGowan's original RICO claims fatally defective because she did not allege that defendants had engaged in a pattern of racketeering activity that had either the "closed-ended" or "open-ended" continuity mandated under RICO. Order at 8-14. Specifically, McGowan had failed to allege "closed-ended continuity" because her allegations involved a single plan, a single purpose, and a single goal, namely, "to protect Weinstein's reputation by silencing and/or discrediting McGowan" (*id*. at 11-12), and failed to allege "open-ended continuity" because the purported goal of silencing her through the single alleged wire fraud scheme reached an endpoint when the book, which was purportedly the target of the scheme, was published. *Id*. at 13-14.

With regard to the supplemental state claims McGowan repleads in the FAC, the Court ruled that (1) McGowan's CDAFA claim was deficient because she failed to allege that the Defendants altered, damaged, deleted, or destroyed any computer data, as required to prove a violation of Section 502(c)(1) (*id*. at 22-25); and (2) her IIED and negligent hiring claims failed because both were barred by the applicable two-year statute of limitations and she failed to allege a basis for tolling the statute of limitations. *Id*. at 28-31.

Despite the Order providing plaintiff with a clear roadmap of what she must allege to reassert the dismissed claims, the FAC fails to plead properly the factual and legal basis for the claims she chose to replead.[2] She continues to allege only a single fraudulent scheme with a single victim, and no predicate acts beyond the previously alleged discrete fraud by Black Cube to obtain access to information about McGowan's book prior to its publication in January 2018.

Instead, the FAC adds allegations that: (i) Weinstein sexually harassed and assaulted women in addition to McGowan, conduct which is neither racketeering activity nor which allegedly involved any other defendant (FAC ¶¶ 22-25, 30-32); (ii) his attorneys "knew that Weinstein had entered into legal settlements with women who had accused Weinstein of sexual assault" and tried to convince reporters not to publish stories about Weinstein's alleged sexual misconduct, assembled evidence to impeach Weinstein's accusers, those who were accusing Weinstein of wrongdoing, and met with the District Attorney's Office to discuss the allegations against Weinstein—all alleged conduct that was not remotely unlawful, let alone undertaken in violation of RICO (FAC ¶¶ 29, 33-34); and alleged conversations and a "demand[] for a meeting" with journalists. (FAC ¶¶ 51-54, 57, 59-61.)

---

[2] In the FAC, McGowan abandons the federal wiretap, Bane Act, and conversion claims asserted in her initial complaint and previously dismissed by this Court.

None of these new allegations assert that any of the defendants obtained any money or property from these newly-named persons as a result of any act of fraud or deception, negating the notion that any of these individuals were victims of a wire fraud. And, even in McGowan's own case, the FAC persists in failing to allege facts demonstrating that her purported economic losses were directly caused by the racketeering conduct she alleges.

## III. ARGUMENT

A cause of action cannot survive a Rule 12(b)(6) motion without "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations must contain "more than labels and conclusions," (*id*. at 555), and a court should not accept "unreasonable inferences" or "unwarranted deductions of fact." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 13 988 (9th Cir. 2001); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

### A. McGowan's Amended RICO Claims Should Be Dismissed

To state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)-(d), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's "business or property." *Sedima, S.P.R.I v. Imrex Co.*, 473 U.S. 479, 496 (1985).

#### 1. McGowan Does Not Satisfy RICO's Continuity Requirement Because She Has Not Properly Alleged That Her Newly-Identified Victims Were Victims of Racketeering Activity.

As explained in the Order at 8:

"[T]he term pattern itself requires the showing of a relationship between the predicates, and of the threat of continuing activity. It is

> this factor of *continuity plus relationship* which combines to produce a pattern." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (citations, brackets, and internal quotation marks omitted) ("RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.").

The Court ruled that the non-conclusory allegations in McGowan's original complaint failed to establish a pattern of racketeering activity. The Court found that McGowan (i) failed to allege facts supporting closed-ended continuity because her complaint "le[ft] no question that [her] allegations relate to a singular plan and purpose regarding McGowan and her book" rather than a multi-faceted scheme involving multiple victims needed to establish closed-ended continuity; and (ii) failed to allege facts supporting open-ended continuity because her allegations addressed conduct that was not ongoing and that could not be repeated in the future. *See* Order at 11-12 ("Defendants' scheme as alleged in the Complaint had a single victim and a single goal—to protect Weinstein's reputation by silencing and/or discrediting McGowan via wire fraud"); *id.* at 14 ("Defendants operated with a singular goal, to protect Weinstein's reputation by stopping the publication of *Brave* and attempting to discredit McGowan," conduct which "could [not] be pursued anew").

Although the FAC adds numerous allegations concerning Weinstein's alleged sexual assaults of other women, legal settlements with some of his accusers, and efforts by defendants to protect his reputation (*see, e.g.*, FAC ¶¶ 22-25, 29-35, 51-61, 158, these new allegations are "merely a cosmetic disguise of a single scheme." *W. Assocs. Ltd. P'ship, ex rel. v. Market Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001) (affirming dismissal of amended RICO claim). None of the new allegations allege that the additional individuals were victims of wire

fraud, the only type of predicate act alleged, or indeed victims of any other type of racketeering activity.[3] Thus, the FAC suffers from the same fatal flaw as her original complaint: the failure to allege racketeering predicate acts that "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. at 239.

To state a claim for wire fraud, McGowan was required to allege not only that Defendants "engaged in deception," but also that their deceit "had the '***object' of obtaining*** [the victim's] money or property." *Kelly v. United States*, 140 S. Ct. 1565, 1571-72 (2020); *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020). It is not enough that a loss of money or property occurred as an "incidental byproduct" of the fraud. *Kelly*, 140 S. Ct. at 1573. A conclusory, "bare-bones recitation that Defendants intended to deprive [the victims] of money or property" will not suffice. *United States v. Holmes*, 2020 WL 66656, at *19 (N.D. Cal. Feb. 11, 2020). The FAC fails to cure McGowan's failure to allege a pattern of racketeering activity because none of her new allegations show that Weinstein or any of the other defendants engaged in a deceptive scheme with the object of obtaining the additional purported victims' money or property.

---

[3] Defamation is not a RICO predicate. *Wegner v. Wells Fargo Bank, N.A.*, 791 F. App'x 669, 671 (9th Cir. 2020) ("[plaintiff's] first RICO cause of action was properly dismissed because it is based on defamation, which is not a predicate act under RICO"); *Ritchie v. Sempra Energy*, 2013 WL 12171757, at *4 (S.D. Cal. Oct. 15, 2013) (finding "alleged 'smear campaign,'" assumed true, stated a claim for defamation, but that "[d]efamation is not an enumerated predicate RICO offence"). Nor is sexual assault or harassment. *United States v. Botsvynyuk*, 552 F. App'x 178, 183-84 (3d Cir. 2014) (sexual assault may not be considered a racketeering activity); *Cwick v. Life Time Fitness, Inc.*, 2004 WL 2065063, at *3 (D. Minn. Sept. 2, 2004) ("sexual harassment and criminal sexual assault are not predicate acts under RICO"). Similarly, entering into "legal settlements" or meeting with opposing counsel is not illegal, let alone a RICO predicate act. *See Avalos v. Baca*, 596 F.3d 583, 593 (9th Cir. 2010) (procuring a settlement or waiver is not a RICO predicate act). And although she confusingly alleges defendants "obtain[ed] the printing of intellectual property" or "stopp[ed] the printing of intellectual property" (FAC ¶ 158), defendants did not and could not take any money or property in connection with any efforts to convince reporters not to write unflattering articles about Weinstein. Therefore, their actions cannot amount to a wire fraud.

**2. McGowan Lacks RICO Standing Because She Has Not Sustained an Injury to Her Business or Property Directly Caused by the Racketeering Conduct She Alleges.**

Not all harms confer standing to assert a RICO claim. A wide class of intangible harms, such as personal injuries, are not compensable under RICO because they are not injuries to one's "business or property." *Id*. at 783. For instance, reputational harm, mental anguish, and pain and suffering are not injuries to "business or property" that confer standing to sue under RICO. *See, e.g., Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) (reputational harms are not "concrete financial loss[es]" compensable under RICO); *Berg v. First State Ins. Co*., 915 F.2d 460, 463-64 (9th Cir. 1990) (personal injuries, including emotional distress that results in pecuniary losses, are not compensable under RICO). McGowan also cannot rely upon financial losses that are derivative of harms not compensable under RICO to establish standing. *See Doe v. Roe*, 958 F.2d 763, 766 (7th Cir. 1992) (plaintiff who claimed to have suffered financial losses compensable under RICO, including "expenses for increased personal security," lacked standing, as such expenses were "derivative" of her lost sense of security and thus "reflect[ed] personal injuries which are not compensable under RICO"). As this Court has recognized, standing to pursue a RICO claim is only available to plaintiffs who suffer a "concrete financial loss," and a "plaintiff cannot maintain a RICO claim where the loss [s]he has suffered is 'purely speculative.'" *Camarillo v. Maywood*, 2008 WL 4056994, at *2 (C.D. Cal. Aug. 27, 2008) (citations omitted).

Furthermore, to the extent McGowan's purported injuries could be measurable in any "concrete" way, they are purely derivative of injuries she allegedly suffered that are not compensable under RICO, such as the purported damage to her emotional state and reputation. McGowan's claim that she sustained harm as a result of the interruption of her book tour, that she lost job opportunities, and that she lost book sales all fall in this category of purported

harms derivative of her claim that she sustained harm to her mental health and reputation as a result of alleged efforts to surreptitiously obtain information from her about her book prior to its publication. (FAC ¶¶ 149, 152).

As discussed above, the FAC's new allegations do not allege conduct that amounts to wire fraud or any other RICO predicate act. This necessarily means McGowan has not alleged any purported harm that was directly caused by any newly-alleged racketeering activity. With respect to McGowan's remaining original allegations—which concern "a singular plan and purpose regarding McGowan and her book" (*see* Order at 11-12)—she fails to plead any direct causal connection between the alleged racketeering activity and the injuries she claims to have sustained. For example, the FAC fails to explain how any purported act of deception by Black Cube directly resulted in any "lost commercial opportunities" for her, impacted her book sales, or damaged business relationships she had with others. Independent of the claim's other failures, because McGowan has not alleged any injury directly caused by the racketeering conduct she alleges, her RICO claims fail.

**3. McGowan's RICO Conspiracy Claim Also Fails**

As the Court found in its Order, "[b]ecause McGowan fails to plead the elements of a substantive RICO offense, her RICO conspiracy claim . . . fails as well." Order at 14. *See also Sanford v. Member Works, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) ("plaintiffs cannot claim that a conspiracy to violate RICO [pursuant to 18 U.S.C. § 1962(d)] existed if they do not adequately plead a substantive violation of RICO") (citation omitted). Accordingly, McGowan's second claim should be dismissed with prejudice in conjunction with her first claim.

**B. McGowan's Amended Computer Crimes Claim Fails**

In her original complaint, McGowan alleged a violation of California Penal Code Section 502(c)(1) (misidentified as a violation of the California Civil Code),

claiming that Defendants "reviewed excerpts of [her] book" and "t[ook] information" from her computer. Compl. ¶¶ 194-95. Dismissing her prior claim, this Court held that McGowan failed to allege that Defendants "alter[ed]," "damage[d]," "delete[d]," or "destroy[ed]" McGowan's unpublished manuscript as required to trigger liability under Section 502(c)(1) because "viewing and copying are categorically distinct from altering and destroying." Order at 24-25.

McGowan amended her complaint to allege unlawful computer access under different subsections of Section 502—this time under Sections 502(c)(2) and (c)(7) (again misidentifying these as violations of the California Civil Code), speculating that her computer was "accessed" by people working for Black Cube. McGowan's speculation in this regard is not supported by anything more than "labels and conclusions," and certainly does not constitute facts establishing a violation of Section 502. Accordingly, this claim should be dismissed, this time with prejudice.

Section 502 is designed to safeguard against "tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a). A key element of Section 502 is "accessing" a computer: Section 502(c)(2) applies to one who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network," and Section 502(c)(7) prohibits "[k]nowingly and without permission access[ing] or caus[ing] to be accessed any computer, computer system, or computer network."

Section 502 defines "access" as "to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." *Id*. § 502(b)(1). "[A]ccess" "includes logging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly." *United States v. Christensen*, 828 F.3d 763, 789 (9th

Cir. 2015). Courts have required pleadings to satisfy these definitions of "access" to state a Section 502 violation.

Here, McGowan alleges that Defendants "accessed" her computer three times: First, at a May 13, 2017 meeting where, plaintiff alleges, Filip "accessed and made use of data from McGowan's computer when Filip reviewed excerpts of [her] book on McGowan's computer" and where she allowed Filip to "hold and look at information on McGowan's computer" (FAC ¶ 202 (emphasis added)); second, on or around July 19, 2017, where McGowan speculates that Filip "knowingly accessed McGowan's computer again, without permission, wrongfully to take information from the computer, including portions of McGowan's unpublished book" (FAC ¶ 203); and finally, on September 22, 2017, where McGowan alleges she met with Filip and Laurent and "had her laptop with her during that meeting" and therefore "believes that Defendants knowingly accessed McGowan's computer again." FAC ¶ 204.

None of these incidents sufficiently pleads "access" under Section 502. The May 2017 allegation fails because physically "holding" a computer and "looking at" information on its screen do not constitute "access" under Section 502, as such conduct did not require any interaction with the internal workings of McGowan's computer at all, including any "logical, arithmetical, or memory function resources." McGowan's allegation that in July 2017 she had her computer at a meeting and that Filip "knowingly accessed [it] . . . to take information" substitutes rank, conclusory speculation in favor of pleading facts that show "access." And McGowan's claim about the September 2017 meeting—that she "had her laptop with her during that meeting" and therefore "believes that Defendants knowingly accessed [her] computer" (FAC ¶ 204)—fails to provide any facts establishing that there was any access to her computer, including when, where, and how it occurred.

The Court was clear when dismissing most of the claims in McGowan's initial complaint: she must plead facts to support any conclusions she alleges, and

the Court "need not accept merely conclusory allegations as true." Order at 6-7, 10; see also *Twombly*, 550 U.S. at 555 (a plaintiff must support her conclusions with factual allegations sufficient to "raise a right to relief above the speculative level"). Yet McGowan has not pled any facts to support her bald conclusion about Defendants' alleged "access" to her computer in July and September 2017, and the facts she suggests regarding the May 2017 meeting do not meet the definition of access. Having twice failed to plead her Section 502 claim properly, it should now be dismissed with prejudice.

### C. McGowan's Amended IIED Claim Must Be Dismissed Because She Fails to Allege Facts Showing It Is Not Time-Barred

The statute of limitations for an intentional infliction of emotional distress ("IIED") claim is two years and begins to accrue "when the cause of action is complete with all of its elements." Cal. Civ. Proc. Code § 335.1; *Unruh-Haxton v. Regents of Univ. of Calif.*, 162 Cal. App. 4th 343, 357 (2008). A plaintiff may only pursue a claim outside this limitations period under the "discovery rule," which extends accrual until the plaintiff knows, or has reason to know, of the cause of action. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806-07 (2005). To rely upon the discovery rule to assert an otherwise time-barred claim, a plaintiff must "specifically plead facts to show (1) the time and manner of discovery; and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808. McGowan alleges the defendants intentionally inflicted emotional distress on her by utilizing deceit to obtain a preview of parts of her memoir prior to its publication. (FAC ¶¶ 209-10, 212-214). She alleges that her manuscript was stolen, at the very latest, on July 19, 2017 (FAC ¶ 122), but she did not file this action until more than two years later.

In her original complaint, McGowan asserted a myriad of alleged acts by Weinstein and the other defendants which she claimed were intended to cause her emotional distress. *See, e.g.*, Comp. ¶¶ 204-05, 207, 209. She further alleged she

learned "in connection with [Ronan Farrow's] November 6, 2017 New Yorker article," that "Filip was actually a Black Cube agent, working against McGowan," "that she had been recorded without her consent and that those audio files had made their way to Weinstein," and "that Weinstein had tried and succeeded to steal Brave before its publication." Id. ¶ 124.

The Court dismissed McGowan's IIED claim, finding it was "untimely on its face" because McGowan filed her complaint on October 23, 2019, but her claim "relie[d] on actions that occurred before October 23, 2017." Order at 29. The Court, noting that McGowan's comments were included in the article, found that the New Yorker article "clearly shows McGowan learned of Defendants' conduct prior to the Article's publication." Id. at 29-30.

In an attempt to get around the Court's ruling, McGowan now claims that November 5 (the day before the article was published) or November 6, 2017, was when she first learned Filip was "a Black Cube agent" "from Farrow and the magazine's fact checkers." FAC ¶ 143; see also ¶¶ 145, 218. This new allegation is not nearly enough to bring her claim within the statute of limitations because McGowan's new "delayed discovery" allegation addresses only a narrow subset of the bases on which she brings her IIED claim, and fails to excuse her alleged inability, despite due diligence, to discover the basis for her claim against Weinstein and the other defendants.

In actions in which the delayed discovery rule may apply, the statute of limitations period begins to run once the plaintiff has notice of the facts that form the basis of the claim. *Fox*, 35 Cal. 4th at 807. Notice may be actual or constructive, and inquiry notice is triggered by "suspicion." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988) ("Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her"). Moreover, ignorance

of the identity of the defendant does not justify invoking the delayed discovery rule. *Id*. at 1114 (collecting cases).

Here, McGowan's new "delayed discovery" allegations address only when and how McGowan supposedly learned Filip's identity, ignoring that her IIED claim is based on far more expansive conduct. *See, e.g.*, FAC ¶ 210 (Weinstein "caused her projects to be scuttled and used his relationships and leverage to push her to the margins"); id. ¶ 212 (defendants "maligned her to reporters who were on Weinstein's trail in an effort to discredit her"). McGowan does not mention, let alone specify, when or how she discovered these alleged facts. Thus, her amended IIED claim is still time-barred and should be dismissed, this time with prejudice.

**D. The Court Should Dismiss Claims 1, 2, 6 and 7 With Prejudice**.

A district court may deny leave to amend when a plaintiff "fail[s] to remedy the deficiencies" or when amendment would be futile. *Curry v. Yelp Inc.*, 875 F.3d 1219, 1228 (9th Cir. 2017) (when plaintiff has already been granted leave to amend, but amended complaint failed to remedy identified deficiencies, district court did not abuse discretion in concluding that any further amendment would be futile); *Rich v. Shrader*, 823 F.3d 1205, 1209 & n.4 (9th Cir. 2016) (when a district court has already afforded a plaintiff an opportunity to amend, it has "wide discretion" in refusing leave for further amendment). Dismissal without leave to amend is also proper "[i]f the district court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Albrecht v. Lund*, 845 F.2d 193, 195-96 (9th Cir.), *amended*, 856 F.2d 111 (9th Cir. 1988) (affirming denial of leave to amend plaintiff's fraud claims where defendant's representations "could not" constitute a misrepresentation under any circumstances). McGowan has again failed to properly plead Claims 1, 2, and 6, and 7, this time in the face of clear guidance from the Court addressing why her claims, as initially pleaded, were deficient. In light of this fact, there is every indication further amendment would be futile, and this Court should dismiss

McGowan's claims with prejudice.

**E. This Court Should Decline to Exercise Supplemental Jurisdiction Over Any of Her Surviving State-Law Claims.**

As the Supreme Court has held, when "the federal-law claims have dropped out of [a] lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), *superseded on other grounds* by 28 U.S.C. § 1447(c). In determining whether to exercise supplemental jurisdiction over such state claims, a court should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Id*.

Here, plaintiff's RICO claims—the sole federal claims she asserts—are deficient for multiple, independent reasons. Given the absence of any viable federal claim, this Court should decline to exercise supplemental jurisdiction over her remaining state-law claims. This case is in its earliest stage and "[j]udicial economy weighs in favor of dismissing state law claims when federal claims disappear well before trial, because doing so conserves judicial resources." *Lenk v. Monolithic Power Sys., Inc.*, 2017 WL 4586832, at *2 (N.D. Cal. June 1, 2017), report and recommendation adopted, 2017 WL 4581716 (N.D. Cal. June 20, 2017); *TMI Prods., Inc. v. Rosen Entm't Sys. L.P.*, 2014 WL 12601062, at *4 (C.D. Cal. May 9, 2014) (declining to exercise supplemental jurisdiction over state law claims where "it would not require extensive duplication of this Court's effort for a state court to familiarize itself with the facts underlying the [state] claim"). And California offers an adequate forum for McGowan's claims, so "[d]eclining to exercise [supplemental] jurisdiction does not . . . create inconvenience or unfairness." *Lenk*, 2017 WL 4586832 at *3. Finally, "dismissal promotes comity by allowing the California courts to interpret state law concerning the state law claims in the first instance." *E.G. by & through Lepe v. Maldonado*, 2014 WL

5472654, at *11 (N.D. Cal. Oct. 28, 2014). Accordingly, this Court should decline to exercise supplemental jurisdiction over any state claims that remain in this case and should dismiss this action in its entirety.

## IV. CONCLUSION

For the foregoing reasons, McGowan's claims against Weinstein should be dismissed with prejudice.

DATED: March 23, 2021

KUPFERSTEIN MANUEL LLP

By: *Phyllis Kupferstein*

Phyllis Kupferstein
Attorneys for Defendant
Harvey Weinstein