**O**

# United States District Court
# Central District of California

ROSE MCGOWAN,

                Plaintiff,

    v.

HARVEY WEINSTEIN et al.,

                Defendants.

Case № 2:19-cv-09105-ODW (GJSx)

**ORDER GRANTING IN PART AND DEFERRING IN PART DEFENDANTS' MOTIONS TO DISMISS [77] [78] [79] [80]; ORDER TO SHOW CAUSE RE: AMENDMENT AND SUPPLEMENTAL JURISDICTION**

## I.     INTRODUCTION

Plaintiff Rose McGowan is suing Defendant Harvey Weinstein and his alleged co-conspirators for their various roles in attempting to prevent McGowan from publicly disclosing in her memoir *Brave* that Weinstein raped her.   McGowan's Complaint was previously the subject of four Motions to Dismiss which the Court granted in part and denied in part on December 7, 2020.[1]  (Order Mots. Dismiss, ECF No. 66.)  As part of its disposition, the Court dismissed in their entirety McGowan's first and second claims under the Racketeering Influenced Corrupt Organizations ("RICO") Act and provided McGowan with leave to amend.  (*Id.* at 14.)  Thereafter, McGowan filed her First Amended Complaint ("FAC"), asserting claims for (1) civil

---

[1] *McGowan v. Weinstein*, 505 F. Supp. 3d 1000 (C.D Cal. 2020).

violation of RICO, 18 U.S.C. § 1962(c); (2) civil RICO conspiracy, 18 U.S.C. § 1962(d); (3) fraudulent deceit under California Civil Code section 1709; (4) common law fraud; (5) invasion of privacy; (6) computer crimes under California Penal Code sections 502(c)(2), (c)(7), & (e)(1); (7) intentional infliction of emotional distress; and (8) negligent hiring and supervision. (*See generally* First Am. Compl. ("FAC"), ECF No. 69.)

Defendants again bring four Motions to Dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), directing their arguments against all but one of McGowan's eight claims. (The Court previously found McGowan's fraud claim to be well-pleaded, and no Defendant seeks to disturb that finding at this juncture.) The four motions are filed respectively by: (1) B.C. Strategy Ltd d.b.a. Black Cube; (2) David Boies and Boies Schiller Flexner, LLP ("Boies" or "Boies Defendants"); (3) Lisa Bloom and The Bloom Firm ("Bloom Defendants"); and (4) Weinstein. (*See* Bloom Defs.' Mot. Dismiss ("Bloom MTD"), ECF No. 77; Boies Defs.' Mot. Dismiss ("Boies MTD"), ECF No. 78; Black Cube's Mot. Dismiss ("Black Cube MTD"), ECF No. 79; Weinstein's Mot. Dismiss ("Weinstein MTD"), ECF No. 80.) For the reasons that follow, the Court **GRANTS** each motion **IN PART** by **DISMISSING** McGowan's RICO claims and **ORDERING** the parties **TO SHOW CAUSE** regarding further amendment and supplemental jurisdiction.[2]

## II.        FACTUAL BACKGROUND

The Court recited the key allegations in this case in its previous Order on Defendants' Motions to Dismiss, and to the extent McGowan has repeated those allegations in the FAC, the Court incorporates that recitation by reference here. (Order Mots. Dismiss 2–6.) The present Order turns primarily on whether McGowan has sufficiently alleged a pattern of racketeering activity as required by the RICO statutes. The allegations germane to this issue are as follows, and as before, the Court

---

[2] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

takes all of McGowan's well-pleaded allegations as true. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

In 1997, at the Sundance Film Festival, Weinstein raped McGowan. (FAC ¶ 17.) Weinstein sought a non-disclosure agreement with McGowan, but McGowan refused to sign it. (FAC ¶ 19.)

McGowan "was hardly Weinstein's only victim." (FAC ¶ 20.) In late 1996 or early 1997, Weinstein used false pretenses to summon actress Ashely Judd to his hotel room at the Peninsula Hotel in Beverly Hills. (FAC ¶ 22.) Weinstein propositioned Judd several times, and Judd refused. (*Id.*) In retaliation, Weinstein spread lies about Judd's professionalism, "torpedoing her chance to work on several movies." (*Id.*) A similar incident occurred between Weinstein and actress Rosanna Arquette at a Beverly Hills hotel in the early 1990s. (FAC ¶ 23.) Others—including actors Salma Hayek, Uma Thurman, and Mira Sorvino, along with employees, interns, and aspiring actresses—have publicly recounted similar episodes with Weinstein in which he aggressively propositioned them, they rejected his advances, and they thereafter suffered career setbacks. (FAC ¶¶ 23–24.)

David Boies has worked with Weinstein since 2001, providing Weinstein primarily with legal and reputation-management services.[3] (FAC ¶¶ 27, 29.) For example, in 2002, Boies was involved with Weinstein's efforts to convince *The New Yorker* not to publish stories about Weinstein's alleged 1998 sexual assault of a former employee of Weinstein's production company. (FAC ¶ 29.) More recently, in 2015, Boies was involved in Weinstein's efforts to avoid consequences following Weinstein's sexual assault of Italian model Ambra Battilana Gutierrez. (FAC ¶¶ 30–35.) Gutierrez had involved the police and had recorded Weinstein's second attempt

---

[3] As alleged, Boies worked with Weinstein in both an individual capacity and through his law firm, Boies Schiller Flexner LLP. (FAC ¶¶ 12–13.) Throughout the FAC, McGowan makes little distinction between the actions of Boies as an individual and the actions of Boies' firm. (*See, e.g.*, FAC ¶ 33.) The Court follows suit in this Order by using "Boies" to refer to both Mr. Boies and his firm.

to assault her.  (FAC ¶ 31.)  The police began investigating Weinstein, who, with the help of Boies and others, set out to (1) investigate Gutierrez; (2) discredit and otherwise talk to the press about Gutierrez; and (3) convince reporters not to publish a story about Weinstein's history of sexual abuse.  (FAC ¶ 33.)

The remaining allegations involve the conduct of Weinstein and the other Defendants during the time McGowan was preparing to publish her memoir *Brave*. (FAC ¶¶ 36–153.)  In 2016 and 2017, Weinstein set out to obtain, and was partially successful in obtaining, information about *Brave*.  (FAC ¶¶ 83–103, 118–131.)  He was assisted by longtime co-conspirator Boies in this endeavor, and together, they brought the Bloom Defendants and Black Cube onto their team, to assist both with silencing McGowan and with managing Weinstein's reputation in general.  (FAC ¶¶ 46–50, 68–74.)  With the aid of texts, emails, and other forms of electronic communication, Weinstein and his co-conspirators hired (1) an operative to intimidate McGowan, (FAC ¶¶ 84–86), and (2) an impersonator to gain McGowan's trust and obtain information about *Brave*, (FAC ¶¶ 89–100, 116, 121–129).

Weinstein also used his power in the entertainment industry to interfere with McGowan's film projects, (FAC ¶¶ 62–64), and at one point he offered her $1 million not to publish *Brave*, (FAC ¶ 132).  Throughout this same time period, Weinstein and his team also made extensive efforts to keep the press from investigating him and publishing negative articles about him.  (*See, e.g.*, FAC ¶¶ 99–108.)  The FAC also tells of how, in 2017, McGowan was framed and indicted for drug possession on an airplane, but McGowan stops short of directly accusing Weinstein of orchestrating this particular scheme.  (FAC ¶¶ 75–82.)

### III.        LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a dismissal motion, a complaint need only satisfy the "minimal notice

pleading requirements" of Rule 8(a)(2). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim must be "plausible on its face" to avoid dismissal).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679. However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("Leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

# IV.     DISCUSSION

As the following discussion indicates, McGowan's RICO claims against all Defendants fail due to the lack of a pattern of racketeering activity.  The Court dismisses the RICO claims and orders additional briefing on the subjects of amendment of the RICO claims and supplemental jurisdiction.

## A.     RICO Claims

McGowan brings her first claim under subpart (c) of the civil RICO statute, which prohibits any person employed by or associated with an enterprise engaged in interstate commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity.   18 U.S.C. § 1962(c); *United Bhd. of Carpenters & Joiners v. Bldg. & Const. Trades Dep't*, 770 F.3d 834, 837 (9th Cir. 2014) ("The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property.")  McGowan's second claim is a RICO conspiracy claim brought under 18 U.S.C. § 1962(d).  Defendants all move to dismiss these two RICO claims on the grounds that the racketeering activity McGowan alleges does not form a pattern.[4]   (Bloom MTD 6–8; Boies MTD 9–12; Black Cube MTD 6–8; Weinstein MTD 4–6.)  Defendants are correct.

"'[R]acketeering activity' includes, *inter alia*, 'any act which is indictable' under the Hobbs Act, 18 U.S.C. § 1951, or 'any act or threat involving . . . extortion, . . . which is chargeable under State law.'"  *Carpenters & Joiners*, 770 F.3d at 837 (quoting 18 U.S.C. § 1961(1)(A), (B)).   "A 'pattern of racketeering activity' requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), within a period of ten years."  *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008).  While at least two predicate acts are necessary to indicate a pattern, two predicate acts are not necessarily sufficient.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989) ("[RICO] does not so much define a pattern of

---

[4] All other grounds for dismissal are, for the moment, disregarded.

racketeering activity as state a minimum necessary condition for the existence of such a pattern.").

Moreover, these predicate acts must form a pattern—that is, they must be "ordered" or "arranged." *Id.* at 238. "[T]he mere fact that there are a number of predicates is no guarantee that they fall into any arrangement or order. It is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them ordered or arranged." *Id.* (internal quotation marks omitted). To show that racketeering activity is patterned, the plaintiff must show "[1] that the racketeering predicates are related, *and* [2] that they amount to or pose a threat of continued criminal activity." *Id.* at 239.

Here, the parties agree that the racketeering activity at issue is wire fraud. McGowan alleges thirty-eight specific instances of wire fraud—Defendants' phone calls, emails, texts, and wire transfers that facilitated Defendants' use of an impersonator and other operatives to commit fraud upon McGowan. (FAC ¶ 161.) Most of these uses of the wires were related in that they were part of a coordinated effort to keep McGowan from speaking or publishing her book and otherwise silencing her. *See Medallion Television Enters., Inc. v. SelecTV of Cal. Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987), ("Whether the predicate acts alleged or proven are sufficiently related is seldom at issue."), *cert. denied*, 492 U.S. 917 (1989). The dispositive issue here, however, is not whether Defendants' predicate acts were sufficiently related; it is whether "involve a distinct threat of long-term racketeering activity, either implicit or explicit"—that is, whether they are continuous. *H.J. Inc.*, 492 U.S. at 242.

### 1. Continuity Requirement; Prior Dismissals

Continuity of racketeering activity may be shown "in a variety of ways." *H.J. Inc.*, 492 U.S. at 241. Continuity may refer "to a closed period of repeated conduct" (closed-ended continuity) "or to past conduct that by its nature projects into the future with a threat of repetition" (open-ended continuity). *Id.* at 241–42; *Metaxas v. Lee*,

503 F. Supp. 3d 923, 941 (N.D. Cal. 2020).  Continuity does not necessarily "require a showing that the defendants engaged in more than one 'scheme' or 'criminal episode.'"  *SelecTV*, 833 F.2d at 1363.  "The circumstances of the case, however, must suggest that the predicate acts are indicative of a threat [of] continuing activity."  *Id.*

Closed-ended continuity may be established by "a series of related predicates extending over a substantial period of time."  *H.J. Inc.*, 492 U.S. at 242.  Factors courts consider include "(1) the number and variety of predicate acts; (2) the presence of separate schemes; (3) the number of victims; and (4) the occurrence of distinct injuries."  *NSI Tech. Servs. Corp. v. Nat'l Aeronautics & Space Admin.*, No. 95-20559 SW, 1996 WL 263646, at *3 (N.D. Cal. Apr. 13, 1996).

Because "Congress was concerned in RICO with long-term criminal conduct," "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."  *H.J. Inc.*, 492 U.S. at 242.  That said, the mere fact that predicate acts extend over a long period of time does not establish continuity; the predicate acts, whatever their frequency and duration, be patterned.  *See Buran Equip. Co., Inc. v. Hydro Elec. Constructors, Inc.*, 656 F. Supp. 864, 866 (N.D. Cal. 1987) ("It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a 'pattern of racketeering activity.'"); *see also Medallion Television*, 833 F.2d at 1364 (finding no closed-ended pattern of racketeering activity in a single alleged scheme with single victim, even though scheme involved several fraudulent acts); *NSI Tech. Servs.*, 1996 WL 263646, at *3 ("A single plan with a singular purpose and effect does not constitute a [closed-ended] 'pattern' of racketeering activity.").

Previously, the Court found no closed-ended continuity in this case because "Defendants' scheme as alleged in the Complaint had a single victim and a single goal—to protect Weinstein's reputation by silencing and/or discrediting McGowan via wire fraud."  (Order Mots. Dismiss 12 (citing *Richardson v. Reliance Nat'l Indem. Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *9 (N.D. Cal. Mar. 9, 2000) (citation

omitted)).)  That Defendants "used several different tactics to achieve their single goal" did not turn their enterprise "into one with multiple goals and/or victims" as is typically the case with a closed-ended racketeering pattern.  (*Id.*)

Continuity can also be open-ended, by way of "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241.  Under this approach, "proof of a single scheme can be sufficient," *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004), but "[t]he circumstances of the case . . . must suggest that the predicate acts are indicative of a threat of continuing activity." *Medallion Television,* 833 F.2d at 1363.  Moreover, because a threat of repetition is required, a "plaintiff cannot demonstrate open-ended continuity if the racketeering activity has a built-in ending point." *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 319 (4th Cir. 2010) (internal quotation marks omitted) (collecting cases); *Steinberg Moorad & Dunn Inc. v. Dunn*, 136 F. App'x 6, 11 (9th Cir. 2005) (finding no open-ended continuity where threat of racketeering would necessarily end when underlying litigation ended).  This is so "even if the purported scheme takes several years to unfold, involves a variety of criminal acts, and targets more than one victim." *Gamboa v. Velez*, 457 F.3d 703, 709 (7th Cir. 2006) (collecting cases); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (drawing distinction between "a single episode" of racketeering with a "singular purpose" and "a series of separate, related acts" of racketeering).

In ruling on the prior Motion to Dismiss, the Court pointed out that, although McGowan had facially alleged a broader RICO enterprise (namely, Weinstein's ongoing enterprise to protect his reputation and to silence victims and advocates over several decades), the specific factual allegations "in the seventy-two-page Complaint clearly set forth a more-narrow pattern and scheme: to obtain a copy of McGowan's then-forthcoming book via a series of wire frauds and deceit, with the ultimate goal of protecting Weinstein's public image."  (Order Mots. Dismiss 10.)  The Court noted that the predicate acts set forth in the original Complaint—the many instances of wire

1  fraud—were all wire fraud that happened in the context of the effort to silence
2  McGowan in particular, rather than as part of the broader campaign to protect
3  Weinstein's reputation.  (*Id.*)  Because the well-pleaded factual allegations were
4  limited to the putative enterprise involving silencing McGowan in particular, the
5  Court focused its inquiry on the period of time when Defendants undertook to silence
6  McGowan and inquired whether Defendants' actions during this time period indicated
7  continuity.

8       The Court answered this question in the negative.  (*Id.* at 14.)  Whether the goal
9  of Defendants' enterprise was viewed as obtaining a copy of *Brave* or more generally
10 as silencing and retaliating against McGowan, there was "no risk that the manner in
11 which the predicate acts occurred could recur indefinitely.  Neither of Defendants'
12 purported goals—keeping Weinstein's misconduct secret from the public or obtaining
13 a copy of *Brave* before it was published—could be pursued anew."  (*Id.* (citation and
14 internal quotation marks omitted).)

15      2.   *Continuity in the FAC*

16      To determine whether McGowan's amendments address the foregoing
17 concerns, the Court first examines whether McGowan's amended allegations about
18 the period of time when Defendants undertook to silence her are sufficient to indicate
19 a pattern of wire fraud that threatened to continue beyond that time period.  The Court
20 then examines whether McGowan's amended allegations about Weinstein's broader,
21 multi-decade campaign to protect his reputation are sufficient to contextualize
22 Weinstein's specific effort to silence McGowan as part of a broader pattern of wire
23 fraud.  The Court answers both these questions in the negative, necessitating dismissal
24 of both RICO claims.

25           i.   *Efforts to Silence McGowan as Indicative of Pattern*

26      The Court first examines whether Defendants' efforts to silence McGowan and
27 related efforts taken during this more limited period are indicative of a pattern of
28 racketeering activity, without reference to the broader reputation-protecting activities

that preceded these efforts.  This is the approach the Court previously used.  The Court found that the effort to silence McGowan—whether the goal of that effort was to obtain a copy of *Brave* or keep McGowan from publishing *Brave*—had a single goal and a final ending point and thus was not continuous (in a closed-ended sense, an open-ended sense, or otherwise).

For two independent reasons, this particular finding is not disturbed by any of the new allegations in the FAC.  First, the wire fraud McGowan alleges does not form a pattern.  Second, nothing that happened during this narrower period suggests a threat of continuing racketeering activity.  As will be seen, this finding mandates dismissal of the substantive RICO claim against the Bloom Defendants and Black Cube, because these Defendants only became involved with the enterprise during this more limited period.

First, McGowan fails to allege facts showing that the wire fraud underlying the efforts to silence and discredit her formed a pattern.  For example, nothing in the FAC indicates that Weinstein also hired the Bloom Defendants and Black Cube to commit wire fraud upon other individuals Weinstein was seeking to silence.  McGowan does briefly allege that, in 2016 or 2017, Black Cube contacted Annabella Sciorra, another actress whom Weinstein had raped, but the allegation is underdeveloped and fails to set forth a particular act of wire fraud committed upon Sciorra.  (FAC ¶ 61.) Furthermore, to the extent Weinstein's enterprise used texts or phone calls to commit fraud on journalists, (*See, e.g.*, FAC ¶ 58), these allegations do not appear to support wire fraud because no Defendant ever intended to deprive a journalist of money or property.[5]  *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020) ("The wire fraud statute . . . prohibits only deceptive schemes to deprive the victim of money or property." (brackets and internal quotation marks omitted)).  Even if Defendants used the wires to attempt to somehow deprive certain journalists of intellectual property—

---

[5] The Court finds McGowan's assertion that the FAC contains allegations that Defendants were "try[ing] to steal as much . . . work product as possible" from journalists to be an inaccurate characterization of the FAC.  (Opp'n Mots. Dismiss 9, ECF No. 85.)

an allegation which itself is already quite a reach, (FAC ¶ 158)—any such wire fraud is too different from what Defendants did to McGowan to form an actionable pattern. McGowan was a victim and a primary source of information about Weinstein's conduct, and Defendants used the wires to trick her into giving up information about a firsthand-knowledge book she was preparing to publish.  The journalists, on the other hand, were not primary sources; moreover, McGowan does not allege that Defendants hired an impersonator to gain the trust of any journalist, or that Defendants sought to discredit a journalist by planting evidence and framing them as a criminal, as McGowan suggests Weinstein did to her.  The efforts to silence McGowan, the communications with Sciorra, and the efforts to influence journalists reporting on Weinstein may be part of the same enterprise, but the specific predicate acts supporting those efforts—the acts of wire fraud—are not sufficiently patterned.

Second, there is no threat of continuing racketeering activity.  Weinstein, together with the Boies Defendants, hired the Bloom Defendants and Black Cube as part of his project to silence McGowan.  (FAC ¶¶ 46, 70–74.)  Absent any additional allegations, no plausible basis exists for concluding that this project and its underlying pattern of wire fraud, had it been successful, would have continued with these same actors in substantially the same way with different victims.  Defendants' effort to silence McGowan was a single, unified project with an end goal and an end date.  Thus, it is not the sort of continuous effort that is prohibited by RICO.  *See Turner*, 362 F.3d at 1230 (finding no open-ended continuity where fraudulent mailings and telephone calls would cease once the defendants achieved their goal of collecting an outstanding tort judgment against the victim); *Howard v. Am. Online, Inc.*, 208 F.3d 741, 750 (9th Cir. 2000) (finding no pattern in a "'flurry' of false and misleading advertising," all of which related to and arose from a one-time change in pricing structure).

Because the Bloom Defendants and Black Cube joined the enterprise only after Weinstein undertook to silence McGowan, these observations are fatal to the

§ 1962(c) substantive RICO claim against the Bloom Defendants and Black Cube.  If the Bloom Defendants and Black Cube joined the enterprise only for a single, non-patterned, finite project, then their participation in the project cannot possibly be a part of a pattern of racketeering activity.  Moreover, even after guidance from the Court, McGowan's efforts to state viable RICO claims against the Bloom Defendants and Black Cube did not result in any appreciable improvement to the viability of these claims.  For these reasons, the Court finds that any further amendment of the § 1962(c) substantive RICO claim against the Bloom Defendants and Black Cube would be futile.  The Court accordingly **DISMISSES** the first claim as against the Bloom Defendants and Black Cube, this time **without leave to amend**.  *Carrico*, 656 F.3d at 1008.

As for Weinstein and the Boies Defendants, because they are further alleged to have conducted a reputation-management enterprise extending (both in time and in scope) beyond Weinstein's efforts against McGowan in particular, the Court next considers whether McGowan has alleged that these Defendants conducted this broader enterprise through a pattern of racketeering activity.

ii.   *Broader Reputation Management Campaign as Indicative of Pattern*

The remaining Defendants are Weinstein and the Boies Defendants.  Unlike the Complaint, the FAC contains sufficient allegations regarding the conduct and effort of these Defendants to protect Weinstein's reputation over the decades, such that it is appropriate to consider whether this broader campaign indicates a racketeering pattern.  The inquiry, properly focused, is whether McGowan's allegations of Weinstein's and the Boies Defendants' broader campaign to protect Weinstein's reputation constitute a pattern of racketeering activity.

The first important observation in this regard is that Boies and Weinstein did not begin working together until 2001.  (FAC ¶ 27.)  Therefore, any conduct on the

part of Weinstein that occurred before 2001 cannot form the basis for a pattern of racketeering activity.

As for conduct of Weinstein and Boies that occurred after 2001, first, McGowan alleges Weinstein and Boies worked together in 2002 to convince *The New Yorker* not to publish stories about Weinstein's alleged 1998 sexual assault of a former Miramax employee.  (FAC ¶ 29.)  Boies "met with" the reporter on the story "on Weinstein's[6] behalf," (*id.*), though the FAC does not specify what Boies said to the reporter or what resulted from the conversation.  This episode adds nothing material to McGowan's pattern allegations for two reasons.  Nowhere in paragraph twenty-nine does McGowan allege Weinstein or Boies committed any wire fraud in convincing *The New Yorker* not to publish a story.  Thus, while the inclusion of this episode supports McGowan's allegation of a "Weinstein-Protection Enterprise," (*see* FAC ¶ 156), the episode does not support the contention that the Weinstein-Protection Enterprise operated *through a pattern of racketeering activity*.  Moreover, and independently, Boies's role in this episode is entirely unclear.  Without any allegations of what Boies in fact did to assist in keeping *The New Yorker* from publishing the story, no basis exists to conclude that Boies was participating in the Weinstein-Protection Enterprise, much less that he (or his firm) were conducting said enterprise through a pattern of racketeering activity.

McGowan also includes detailed allegations of a 2015 incident with Italian actress Ambra Battilana Gutierrez.  Gutierrez, like McGowan, was assaulted by Weinstein.  With the help of the police, Gutierrez later recorded Weinstein, and the police began investigating Weinstein to consider pressing charges.  McGowan describes how Weinstein and Boies mobilized against Gutierrez as follows:

> Weinstein, knowing that law enforcement was now actively investigating him, enlisted Boies and other lawyers. An investigative agency, K2 Intelligence, was hired to discredit Gutierrez. K2 operatives fanned out in

---

[6] Throughout this Order, in quoting the FAC, the Court has modified the capitalization of parties for readability and consistency.

Gutierrez's home country of Italy to investigate the victim. In the weeks that followed, Weinstein's fixers—including Boies, other lawyers, and K2 employees—met with the District Attorney's office, talked to the press about Gutierrez, and convinced reporters not to publish a story about Weinstein's sexual-abuse history.

(FAC ¶ 33.)  This allegation, like the allegations about the 2002 *New Yorker* article, leave the Court wanting for significantly more detail about Boies's role in the incident; without more detail, the Court cannot tell if Boies was participating in a pattern of racketeering activity.  Second, and more fundamentally, this allegation leaves the Court wondering about exactly *what* the effort was: to discredit or silence Gutierrez (indeed, it is not even clear if Gutierrez was attempting to speak out or testify), to avoid charges, or something else entirely.  In any case, none of these efforts are similar to the effort Weinstein and Boies undertook against McGowan here. McGowan sought to publish a book containing her firsthand knowledge, and the enterprise's goals were to obtain as much information about the book as possible and stop it from being published.  And even assuming—perhaps too generously—that McGowan has sufficiently alleged the drug possession framing incident was masterminded by Weinstein, (FAC ¶¶ 75–82), this incident is too different from whatever generalized suggestions of discrediting exist in paragraph thirty-three of the FAC.  Third, nowhere in the allegations regarding the Gutierrez incident has McGowan alleged any acts of wire fraud on Weinstein's or Boies's part.  These observations compel the Court to find no pattern of racketeering activity.

Accordingly, the Court **DISMISSES** the section 1962(c) substantive RICO claim against Weinstein, David Boies, and Boies Schiller Flexner LLP.  Because McGowan has not alleged a substantive RICO violation against any Defendant, McGowan has not alleged a RICO conspiracy against any Defendant.  *See Howard*, 208 F.3d at 751 ("[T]he failure to adequately plead a substantive violation of RICO precludes a claim for [RICO] conspiracy.").  Accordingly, McGowan's second claim—§ 1962(d)   RICO   conspiracy   against   all   Defendants—is   likewise

**DISMISSED**.  Moreover, the Court finds it highly unlikely that further amendment would change this result.  Before finalizing this determination, however, the Court will provide McGowan with one more opportunity to be heard on this issue.

**B.   Order to Show Cause re: Leave to Amend and Supplemental Jurisdiction**

The Court will allow McGowan an additional opportunity to review this Order and suggest how the FAC might be amended to state a substantive RICO claim (against Weinstein and the Boies Defendants) and a RICO conspiracy claim (against all Defendants).  As directed below, McGowan is to submit a brief that describes the proposed changes to the FAC and explains why those changes will cure the deficiencies in the RICO claims.  A proposed amended pleading should <u>not</u> be submitted.

If the Court finds leave to amend should not be granted, however, then the RICO claims will be dismissed with prejudice, leaving the Court with only supplemental jurisdiction over McGowan's remaining state-law claims.  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice.").  This appears to be the usual case, meaning the Court would then decline supplemental jurisdiction and dismiss the remainder of the action without prejudice.  McGowan did not contest this potential outcome in her Opposition brief.  The Court will provide McGowan an opportunity to do so.

## V.   CONCLUSION

Defendants' four Motions to Dismiss are each **GRANTED IN PART**.  (ECF Nos. 77, 78, 79, 80.)  McGowan's first claim is **DISMISSED WITHOUT LEAVE**

**TO AMEND** as against the Bloom Defendants and Black Cube and is **DISMISSED** as against Weinstein and the Boies Defendants.  McGowan's second claim is **DISMISSED** as against all Defendants.  The Court **DEFERS** determining whether to grant these two latter dismissals with or without leave to amend.

The Court **DEFERS** ruling on the remainder of the Motions to Dismiss and **ORDERS** the parties **TO SHOW CAUSE**, in writing only, as follows.  No later than **fourteen (14) days** from the date of this Order, McGowan shall file a Supplemental Brief indicating (1) how, if at all, she intends to amend her substantive RICO claim against Weinstein and the Boies Defendants and her RICO conspiracy claim against all Defendants; and (2) if the Court ultimately dismisses all RICO claims without leave to amend, why the Court should exercise supplemental jurisdiction over the remaining state-law claims.  The Supplemental Brief may be up to <u>eight (8) pages</u>. Each of the four Defendant groups may file a Supplemental Opposition of up to <u>three (3) pages</u>, or, if all four Defendant groups stipulate to work together, they may file a Joint Supplemental Opposition of up to <u>eight (8) pages</u>, with supplemental oppositions due in any case no later than **twenty-one (21) days** from the date of this Order.  No reply briefing is requested or permitted.

IT IS SO ORDERED.

November 9, 2021

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**